THE LAW FIRM OF RAVI BATRA, P.C.
*Attorneys for plaintiff*
142 Lexington Avenue
New York, N.Y. 10016
Ravi Batra (RB4299)
ravi@ravibatralaw.com
212-545-1993; Fax 212-545-1993; Cell: 914-882-6382

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

LAURA LEE JACOBSON,

        *Plaintiff*,

    -against-

KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE; JUDICIAL SCREENING COMMITTEE FOR THE DEMOCRATIC PARTY IN AND FOR KINGS COUNTY; Hon. FRANK R. SEDDIO Individually and in His Official and Representative Capacity as County Chair of the Kings County Democratic County Committee; MARTIN W. EDELMAN Individually and in His Official and Representative Capacity as Chairperson of the Judicial Screening Committee for the Democratic Party in and for Kings County; STEVEN R. FINKELSTEIN; STEVE DECKER; ABAYOMI O. AJAIYEOBA; and, JOHN AND JANE DOES ## 1-20, so named as their identities are not yet known, intended to represent persons who had access to confidential information and/or records of candidate-Jacobson's screening and results by Judicial Screening Committee for the Democratic Party in and for Kings County pertaining to plaintiff, who disclosed such materials outside of Judicial Screening Committee for the Democratic Party in and for Kings County to Seddio, Kings County Democratic County Committee, Kings County Democratic County Committee's media consultant George Artz, and *inter alia*, members of the public and the media, including, the *New York Post*,

        *Defendants*.

**CIVIL ACTION NO.
16-CV-4809  (LDH) (RML)**

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

1

PLAINTIFF LAURA LEE JACOBSON, by her attorneys THE LAW FIRM OF RAVI

BATRA, P.C., as and for her FIRST AMENDED COMPLAINT against the defendants

KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE ("**KCDCC**"); JUDICIAL

SCREENING COMMITTEE FOR THE DEMOCRATIC PARTY IN AND FOR KINGS

COUNTY ("**Judicial Screening Committee**"); Hon. FRANK R. SEDDIO ("**Seddio**")

Individually and in His Official and Representative Capacity as County Chair of the Kings

County Democratic County Committee; MARTIN W. EDELMAN ("**Edelman**")

Individually and in His Official and Representative Capacity as Chairperson of the Judicial

Screening Committee for the Democratic Party in and for Kings County; STEVEN R.

FINKELSTEIN ("**Finkelstein**"); STEVE DECKER ("**Decker**"); ABAYOMI O.

AJAIYEOBA ("**Ajaiyeoba**"); and, JOHN AND JANE DOES ## 1-20, so named as their

identities are not yet known, intended to represent persons who had access to confidential

information and/or records of candidate-Jacobson's screening and results by the Judicial

Screening Committee pertaining to plaintiff, who disclosed such materials outside of the

Judicial Screening Committee  to Seddio, KCDCC, KCDCC's media consultant George

Artz, and *inter alia*, members of the public and the media, including, the *New York Post*,

alleges as follows:

  1.  By her complaint, Plaintiff seeks compensatory and injunctive relief for

violations of the plaintiff's federal and state constitutional and common law rights by the

defendants, and conspiracy by the individual defendants amongst themselves, and others, to

violate the Plaintiff's civil rights. The plaintiff seeks compensatory and punitive damages, along with injunctive relief as follows:

A.    Federal Counts

    i.    First Count: Violation of Equal Protection of the Law (Against All Defendants)

        <u>Count 1-A</u>.    The Defendants Deprived Plaintiff of Equal Protection by Violations and Breaches of Rule 31.b

        <u>Count 1-B</u>.    The Defendants (Except Finkelstein) Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 20

        <u>Count 1-C</u>.    The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 10; and/or

        <u>Count 1-D</u>.    The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 9

    ii.    Second Count: Conspiracy to Violate Plaintiff's Equal Protection Rights (Against All Defendants Except KCDCC  and Judicial Screening Committee )

    iii.    Third Count: Injunctive Relief (Against All Defendants)

B.    State Law Based Counts

    v.    Fourth Count: Violation of Equal Protection Under the New York State Constitution (Against All Defendants)

Count 4-A. The Defendants Deprived Plaintiff of Equal Protection by Violations and Breaches of Rule 31.b

Count 4-B. The Defendants (Except Finkelstein) Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 20

Count 4-C. The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 10; and/or

Count 4-D. The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 9

vi.  Fifth Count: Breach of Contract/Implied Contract (Against All Defendants)

vii.  Sixth Count: Libel and Slander (Against All Defendants).

3.  This action is not barred by the decision of the Supreme Court of United States *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008). There, with the clearest voice of the late great Justice Antonin Scalia, the High Court essentially said that the KCDCC can play all the politics it wants where political discretion is at play. This case is not about political, governmental or administrative discretion. This case is about malicious violations of mandatory, non-discretionary, Rules and Regulations, promulgated and observed under color of law, in violation of, *inter alia*, plaintiff's right to Equal Protection under the 14th Amendment to the Constitution of the United States of America. It is respectfully alleged that the *Lopez-Torres* Precedent does not permit to occur what has been done to Plaintiff by these defendants and as complained herein. The defendants,

4

*inter alia,* violated Plaintiff's Judicial Screening Committee Rule 31.b right to be treated equally with all of her Comparators (*see*, fn. 2, *infra*) - candidates who applied, were voted down, and timely and properly withdrew, per Rule 31.b, their candidacy "to avoid publication of the [Judicial Screening] Committee's Findings."

4.    Appended hereto, and made a part hereof, are the following exhibits, each of which is a true copy of what it is represented to be:

Exhibit 1:    Plaintiff's curriculum vitae as was presented to the Judicial Screening Committee;

Exhibit 2:    Letter by Hon. Betty Weinberg Ellerin, retired Presiding Justice of the Appellate Division, First Department, dated August 3, 2016;

Exhibit 3:    Various Orders repeatedly appointing Plaintiff to serve as Acting Surrogate of Kings County;

Exhibit 4:    New York Department of State Division of Corporations printout concerning Seddio & Carrone PLLC (inactive 12/10/14);

Exhibit 5:    Temporary Restraining Order concerning Long Island College Hospital issued on August 27, 2014 by Plaintiff; Kings County Supreme Court Justice Baynes' Order of September 21, 2014; E-Mail to Carrone dated September 5, 2014;

Exhibit 6:    Various Orders issued by Plaintiff, in her capacity as Acting Kings County Surrogate, cutting fee's demanded by defendant Finkelstein, in his capacity as counsel to the Kings County Public Administrator;

5

Exhibit 7:      "Rules for the Government of the Kings County Democratic County Committee, As Adopted on September 17, 2014";

Exhibit 8:      "Kings County Democratic County Committee Report on Judicial Screening Procedures, As Amended on December 14, 2011";

Exhibit 9:      "Committee Rules" of the "Judicial Screening Committee for the Democratic Party in and for Kings County, Amended January 23, 2012";

Exhibit 10:     New York City Bar Report on Judicial Selection Methods in the State of New York: A Guide to Understanding and Getting Involved in the Selection Process," dated March 2014;

Exhibit 11:     Blank "Judicial Screening Committee Kings County Democratic Party 2016 Questionnaire for Justice of the Civil/Supreme Court," Revised as of January 28, 2016;

Exhibit 12:     Plaintiff's February 23, 2016 Cover Letter to Edelman which accompanied her Confidential "2016 Questionnaire for Justice of the Civil/Supreme Court";

Exhibit 13:     Plaintiff's May 19, 2016 letter to Sub-Committee with attachment for "Recent Trials";

Exhibit 14:     Edelman's May 26, 2016 letter to Plaintiff informing Plaintiff that the Judicial Screening Committee found her "Not qualified" and recites Plaintiff's Rule 31.b Right to Avoid any Publication of the Committee's Findings, with attachment of same;

6

Exhibit 15:    Plaintiff's June 1, 2016 timely Appeal citing some of the

Mandatory, Non-Discretionary Rules and Procedures violated by the Defendants;

Exhibit 16:    Edelman's June 8, 2016 letter to Plaintiff informing Plaintiff

that her Appeal was Denied and again reciting Plaintiff's Rule 31.b Right to Avoid any

Publication of the Committee's Findings;

Exhibit 17:    Plaintiff's timely June 10, 2016 Facsimile to Edelman, bearing

fax header/footer times of noon and 1:10 p.m., Withdrawing her Application pursuant to

Rule 31.b in Exchange for No-Publication of the Judicial Screening Committee's Findings;

Exhibit 18:    *New York Post* article printed online July 13, 2016 ("City

Judge deemed incompetent in 'unheard of' move"); and in print on July 14, 2016 ("Meet the

City's Dopiest Judge - Ever!");

Exhibit 19:    *New York Post* article printed online July 15, 2016 ("Brooklyn

Judge Blows off Work. . ."); and in print on July 15, 2016 ("Docket! Duck It!");

Exhibit 20:    Letter by Arnie Kriss, dated July 16, 2016, after the New York

Post's Publication of Articles Concerning Plaintiff.

## I.    Overview

5.    By this complaint, Plaintiff Laura Lee Jacobson alleges serious violations of

state and federal law. The defendants violated plaintiff's rights to *inter alia*, equal

protection, guaranteed by the 14th Amendment of the U.S. Constitution[1] (as well as of the New York state Constitution's Equal Protection Clause [Art. 1, § 11]), by denying Plaintiff of the *mandatory*, *non-discretionary* bargained-for benefits guaranteed to her by defendants Edelman and Judicial Screening Committee Rule 31.b ("Rule 31.b") mandating confidentiality and non-publication of the Judicial Screening Committee's findings to the Executive Committee of KCDCC.

6.     The existence of the KCDCC and the Judicial Screening Committee are rooted in the New York State Election Law. By state law, the KCDCC and the Judicial Screening Committee were delegated authority by the state, hence state actors, to designate a slate of approved nominees to be considered at the Judicial Convention held in and for the 2nd Judicial District (Kings County). All of the defendants' actions complained of herein were under color of law.

7.     In violation of mandatory, non-discretionary Rules and Procedures, the defendants, under color of law, impermissibly disclosed their discretionary findings concerning plaintiff to the KCDCC, the press and the public. However, the defendants complied with all of these mandatory rules with respect to Comparators who were

_____

[1]**Amendment XIV §1**: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

essentially identical to plaintiff in all relevant respects.[2] By denying the mandated

_____

[2]Only defendants Judicial Screening Committee and Edelman know the entire list of Plaintiff's Comparators - applicants for consideration by the Judicial Screening Committee who did not receive the Judicial Screening Committee's discretionary findings of "qualified" and "recommended," were voted-down as "Not qualified at this time" and timely and properly exercised their Judicial Screening Committee Rule 31.b Right (or any predecessor rule(s) that had the same effect, no matter how labeled since on or about 2002 and going forward.).These Rules barred the Judicial Screening Committee from publishing that candidate's negative "Not qualified at this time" to the Executive Committee of KCDCC - which then shrouded everything in non-publishable "total confidentiality," per Judicial Screening Committee Rule 13, and further protected by imposing upon Chairman Edelman the obligation to collect back all confidential material, keep a chairman's copy of one set, and destroy all other documents per Judicial Screening Committee Rule 30. The only applicant whom the defendants made negative findings about and then, in violation of their own mandatory rules, publically disseminated such findings, was the plaintiff.

Plaintiff Identifies Her Rule 31.b Comparators: Nevertheless, plaintiff has learned the identity of certain Comparators; however, in an effort to avoid public dissemination of this identifying information - the type of conduct the defendants were prohibited from doing but did anyway so as to harm the plaintiff, uses only initials of these Comparator-Candidates to specifically identify her Comparators (attorneys, judges, justices who applied, were voted down, exercised their Rule 31.b Right, and defendants honored Rule 31.b by giving these Comaparator-Candidates their bargained for non-publication of the Judicial Screening Committee's negative vote to Executive Committee of KCDCC; let alone maliciously, intentionally, and in retaliation savagely disclosing - what is never-to-be-released-in-any-event to anybody ever - any and all issues of candidate-concern to the Judicial Screening Committee as Judicial Screening Committee Rule 13 cloaks its operations and process with total confidentiality. Indeed, Judicial Screening Committee ostensibly takes confidentiality so seriously, that they require  applicants to sign a pledge of total confidentiality - another reason for using only initials of Comparators).

Plaintiff's "Rule 31.b" Comparators are: 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; and 6. RS and 7. AB, with cosmic certainty, albeit, Justice Blackmun stated the law does not require. *Daubert v Merrell Dow Pharm., Inc*., 509 U.S. 579, 590 (1993) ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science") Comparators ##6 and7 went through the Judicial Screening Committee's  process in the same year, 2016, as Plaintiff, and negative information was not broadcast to KCDCC, to the public, or to the media - including the *New York Post*, regarding Comparators  ## 6 and 7.

(continued...)

protections of confidentiality and non-publication, including as promulgated in Judicial Screening Committee Rules 13, 30 and 31.b, only to plaintiff, while affording those same protections to all other nearly identically situated applicants, the defendants denied plaintiff equal protection of the law, as a Rule 31.b <u>Class of One</u>.

8.     This denial of equal protection, while publically disseminating negative findings which were mandated to be kept confidential, was done maliciously, intentionally, vindictively and/or in retaliation for plaintiff's independent and impartial judicial acts and rulings, over her then-14-year term as an elected Justice of the New York State Supreme

---

[2](...continued)
Plaintiff is a "Class of One" as compared to her Comparators identified herein, *infra,* and, *supra*. These Comparators are:

    i.     Rule 31.b Comparators: similarly situated applicants, who, exactly like Plaintiff, exercised their Rule 31.b right to withdraw their Judicial Screening Committee application to avoid publication of any of the Judicial Screening Committee's findings, namely DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS; and, 7. AB;

    ii.     Rule 20 Comparators: every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the respective Sub-Committee identified particular "areas of concern" with respect to their applications;

    iii.     Rule 10 Comparators: other identically situated incumbent Justices of the Supreme Court, who were also applicants for consideration by the Judicial Screening Committee at the same time as Plaintiff, namely: Hon. Mark Partnow and Hon. Leon Ruchelsman;

    iv.     Rule 9 Comparators: every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the Judicial Screening Committee did not find "Qualified."

    The comparison period herein is 2003-2016, when Rule 31.b was in effect.

10

Court,[3] all of which acts and rulings were ***prior*** to her submitting in February 2016 her application to the Judicial Screening Committee.

9.      By filing such application, Plaintiff became an <u>incumbent - Rule 10</u> candidate for re-nomination to fill the vacancy on the New York State Supreme Court created by the expiration of her own 14 year term. Plaintiff sought to be on KCDCC's slate of approved nominees, 1 per each vacancy,  to be considered at the Judicial Convention held in and for the 2nd Judicial District, consisting of County of Kings,  by KCDCC  in September 2016.

10.      By way of the New York State Election Law, the KCDCC, like all other political parties in the state of New York that have a Ballot line[4] in each of New York's current-13 Judicial Districts (J.D.), is provided a direct grant of lawful authority to hold their own party-judicial  district convention (the so-called "Closed Primary Election").[5]

---

[3]Plaintiff's 14 year term of Office ended on December 31, 2016.

[4]If a political party in the last gubernatorial election got 50,000 votes or more, then it earns a spot on the Ballot created by New York State Board of Elections.

[5]"Some of the principal characteristics of the closed primary are that voting at primary elections is restricted to those who have enrolled in a party in the preceding year; that only such entrollees are eligible for election to the various party committees and conventions authorized by the Election Law; that signers of designating petitions are required to affirm that they intend to support the person so designated; that one who participates in a party primary cannot thereafter be the signatory on an independent nominating petition for a candidate for similar office at the same election.".*Ingersoll v Heffernan*, 188 Misc 1047, 1049–1050 (Sup. Ct. N.Y. Cty. 1947), *aff'd*, 297 N.Y. 524 (1947) (*internal citations omitted* ).

11.     The duly nominated candidates at each of these state-authorized and state-mandated Judicial District Conventions, held by each Ballot line-recognized political party in such judicial district, grace the then-next November General Election Ballot political party's line, here, the New York State Democratic party line in the 2nd Judicial District.

12.     There is no greater state action, than the election of Judges and Supreme Court Justices to effectuate *creation* of New York state government, to cause there to be three co-equal branches of government in our cherished American Exceptional governance - separated powers regime - and KCDCC and Judicial Screening Committee are essential and necessary state mechanism for creation of filling vacancies in state government, and to exist constitutionally.

13.     Critically, unlike other counties that have no screening committees (such as Queens County - which maximizes their constitutional discretion to select their nominees as they see fit) or have only advisory screening committees (as Brooklyn used to be up to about 2001, when Jerome Karp was chair of the screening panel, with Edelman as a panel-member), KCDCC, however, in or about 2002 changed its rules - by making the findings of "Qualified" and "Recommended" by its Judicial Screening Committee a pre-condition for the KCDCC to consider a candidate to be supported as a nominee for Justice of the Supreme Court. The applicable rules of the KCDCC (Ex. 7) in effect during the 2016 judicial screening process make the dual findings of "Qualified" and "Recommended" by the KCDCC's duly authorized,

duly created and ***defacto controlled***[6] Judicial   Screening Committee a ***mandatory***

***precondition*** - before any candidate can be considered by the Executive Committee of the

KCDCC to be on it's approved proposed slate to be presented at KCDCC's judicial convention

(a/k/a Democratic 2nd Judicial District Convention). Accordingly, without the screening by the

---

[6]<u>Rules 6L and 16</u> of the Judicial Screening Committee Procedures, provide for Chairman Seddio to appoint 3 members of the Judicial Screening Committee, including, its chairman, thereby gives Chairman Seddio defacto control. Of course, to be a member of a political party's judicial screening committee is a valuable benefit to the member. Being a Member of a screening panel whose's Findings are necessary for the political party to even consider a candidate, makes membership even more valuable and politically powerful, as the political party has shared part of its power of selection with the Judicial Screeners. Of course, most valuable of all is to be the Chair - as defendant Edelman is - as he is first among equals, but with administrative power as well. (Ex. 8 ¶¶ 6[l], 16).

Making Seddio's control over Edelman and Judicial Screening Committee even stronger, to be Master-Servant, is that defendant KCDCC continued to allowed Seddio to violate KCDCC's mandatory Judicial Screening Committee-Membership Residency Requirement - live or work in Brooklyn (Ex. 8 ¶ 7) - which defendant does not do. Edelman's legal practice's office is 61 Broadway, Suite 2220, New York, NY 10006, and Edelman has, for many years, upon information and belief, since the late 1990's lived in Battery Park City in Manhattan. Edelman, therefor does not qualify to be a member of Judicial Screening Committee and must be removed for violation of the KCDCC "residency requirement."

In addition to Seddio enjoying extra-legal control over Edelman, a systemic breach of Judicial Screening Committee's advertised and promised so-called "independence," Seddio's other relevant appointment is defendant Decker, who like Edelman, does not meet KCDCC residency requirement to serve on Judicial Screening Committee (Ex. 8 ¶ 7) as he lives in Queens, which, pursuant to New York Judiciary Law § 140, is the Eleventh Judicial District  and his Office is on Staten Island, which, pursuant to New York Judiciary Law § 140, is the Thirteenth Judicial District  (Decker & Decker, 3 Kermit Avenue, Staten Island, NY 10305). Richmond County is the "thirteenth judicial district;"and he is the happy husband of now-Justice Pam Fisher - whose daughter was a young girl-complainant of then-County Leader Vito Lopez's sexual harassment. Critically, to effectuate defendants' intentional malicious, vindictive and retaliatory motives against Plaintiff, Defendant Decker was appointed by Chairman Edelman to chair Plaintiff's Sub Committee - to help set her up for a vengeful kill, which would deter other judges and justices who wish to be impartial and independent, to honor their Oath and do as the federal and state constitutions require.

Judicial Screening Committee, and dual findings of "Qualified" and "Recommended" by the Judicial Screening Committee, a candidate for Justice of the Supreme Court cannot be voted upon by the separately elected judicial delegates - many of which delegates are also elected officials from Kings County, members of the KCDCC, and/or its recognized political clubs.

14.     In fact, KCDCC "carries the petitions" and collects signatures, so as to have judicial delegates elected, pursuant to state law, that will follow the mandates and wishes of the Chairman of KCDCC.

15.     The savagery by which Plaintiff was denied equal protection of the mandatory, non--discretionary laws (KCDCC's Rules and Regulations and Judicial Screening Committee's Rules and Procedures, all promulgated under color of law), is that by their plain terms these Rules are akin to state regulations of the mechanical and mandatory variety, and not discretionary in nature.

16.     Plaintiff was an exceptionally hardworking judge throughout her 26 year judicial career, with no ethical blemishes, having earned a life-long reputation for judicial excellence, judicial impartiality and independence, giving equal attention to cases big and small, and treating equally regular and powerful people, rich and poor. In support of her 2016 application to the Judicial Screening Committee Plaintiff provided her *Curriculum Vitae.* (Ex. 1). Moreover, further evidencing Plaintiff's background a August 3, 2016 letter issued by one of the most respected women to have ascended to the bench of the New York

state courts, Hon. Betty Weinberg Ellerin, Retired Presiding Justice of the Appellate

Division, First Department. (Ex. 2).

17.    Plaintiff's excellence and hard work was recognized and rewarded by the New

York State Office of Court Administration ("OCA") repeatedly appointing her to be an

Acting Surrogate for Kings County (Ex. 3). These appointments required plaintiff to carry

an additional caseload beyond her heavy and complicated Supreme Court caseload - which

included, complex Medical Malpractice case and *inter alia*, contentious foreclosure cases,

made more difficult due to homeowners' ineffective counsel or inability to afford counsel.

The Kings County Surrogate's Court with a history of being ethically challenged and many a

surrogate has resigned or been removed by New York State Commission on Judicial

Conduct. Indeed, defendant Seddio resigned as Kings County Surrogate some years earlier.

## II.  Factual Timeline of certain defendants' malice, vindictiveness and/or intentional retaliation against Plaintiff,  due to her prior judicial actions and rulings  - and why she is a Class of One[7]

18.     Plaintiff's exercise of her judicial function, with independence and impartiality, prior-to-becoming a candidate on February 23, 2016 included, but not limited to, these adverse rulings for certain defendants:

     A.     On August 25, 2014, over-ruling Seddio's then-partner Frank Carrone's[8] position in the infamous LICH-closing case, by issuing a TRO-Order to delay

---

[7]Plaintiff is a "Class of One" as compared to her Comparators identified herein. These Comparators are:

     i.     Rule 31.b Comparators: similarly situated applicants, who, exactly like Plaintiff, exercised their Rule 31.b right to withdraw their Judicial Screening Committee application to avoid publication of any of the Judicial Screening Committee's findings, namely DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS; and, 7. AB;

     ii.     Rule 20 Comparators: every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the respective Sub-Committee identified particular "areas of concern" with respect to their applications

     iii.     Rule 10 Comparators: other identically situated incumbent Justices of the Supreme Court, who were also applicants for consideration by the Judicial Screening Committee at the same time as Plaintiff, namely: Hon. Mark Partnow and Hon. Leon Ruchelsman

     iv.     Rule 9 Comparators: every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the Judicial Screening Committee did not find "Qualified."

[8]See, Ex. "4" - NYS Department of State - corporation filing by Seddio & Carrone PLLC (inactive 12/10/14).

closure of LICH.[9] (Ex.5). LICH had a history of then-Surrogate Seddio on May 19, 2006,

having *cy pres*-stripped LICH of $133 million left for LICH (by Brooklyn Heights

residents upon their demise, *Dr. Donald Othmer and Mildred Topp Othmer*, to help

insure LICH's continued service to the local community) and moved it to Beth Israel

Medical Center in Manhattan  - then owned by Continuum, who also owned LICH! *See*,

*Matter of Othmer*, 12 Misc.3d. 919 (Sur. Ct. Kings Cty. 2006);

     B.     while Plaintiff honored New York State's strong public policy to

disincentivize real property foreclosures, a fact known to Seddio, but who  represents the

lending community and seeks to make sure they win foreclosure judgments, and that too at

a faster pace, from Kings Supreme;

     C.     Upon information and belief, in or about summer of 2016, Seddio

even solicited an attorney - who worked for a firm that specializes in representing banks

seeking to foreclose - to be hired as a law secretary/court attorney for  Justice Sherman,

sitting in Kings Supreme Foreclosure Part to help the lending community, notwithstanding

state policy;

---

[9]Upon information and belief, LICH's closure was a matter of great interest - political, community opposition and *inter alia*,  real estate developers. LICH was "purchased" by SUNY, absorbing LICH's approximately $300 million debt, from Continuum Health Partners, Inc., which also owned Beth Israel Medical Center in Manhattan, when the approximately $140 million Othmer moneys were moved from LICH to Beth Israel. *See, e.g.*, Denis Hamill, *LICH merged to death*, NEW YORK DAILY NEWS, Feb 17, 2013, *available at*, http://www.nydailynews. com/new-york/hamill-lich-merged -death-article-1.1266344; *last accessed*, Mar. 17, 2017; Mary Frost,  *LICH: Everything you want to know (almost) about the deal to close Long Island College Hospital*, BROOKLYN DAILY EAGLE, Aug. 8, 2016, *available at*, http://www.brooklyneagle.com/ articles/ 2016/8/8/ lich-everything-you-want- know-almost- about-deal-close-long-island-college- hospital; *last accessed*, Mar. 17, 2017.

D.  Edelman, having sat as a member in 2002 on Judicial Screening Committee's predecessor panel, the so-called "Karp Committee," when candidate then-Civil Court Judge Laura Jacobson was interviewed and approved to be a Justice, appeared in Plaintiff's courtroom in or about 2005, with his motion counsel present, seeking an Order from Plaintiff to compel another attorney, to whom Edelman had "referred" a contingency case and upon a successful result in that case said referred-lawyer was refusing to pay Edelman "his 1/3 referral fee," and Plaintiff, upon learning that Edelman had done no work[10] beyond the referral, ruled against Edelman's fee-sharing request. Most disturbingly, some years thereafter, Plaintiff while teaching CLE courses - learned that Edelman was, years after-the-fact, still upset and complaining to *inter alia*, attorney Gary Pillersdorf, a dean of the personal injury bar, who was running the CLE courses, about Jacobson's then-years old fee-sharing Denial Order; and, *inter alia*,

E.  Plaintiff sitting as Acting Surrogate cut down the inflated fee-requests by Steven Finkelstein,[11] serving as "Counsel to the Public Administrator of Kings Surrogate's Court," when he had done little or no legal work in those cases. (Ex. 6).

---

[10]Currently, New York State Rules of Professional Conduct Rule 1.5(g). Previously, DR-2-107.

[11]A predecessor Counsel to the Public Administrator, was former Judge Louis Rosenthal, who was investigated for charging excessive fees, and had served as a member of the advisory-"Karp Committee"; Rosenthal resigned as Counsel to Public Administrator, and was suspended from the Bar, but is now reinstated. *Matter of Rosenthal*, 57 A.D.3d 1085 (3d Dept. 2008), *reinstatement granted*, 88 A.D.3d 1052 (3d Dept. 2011).

18

### III. **KCDCC has its own Rules, and even a Code of Ethics**

19.     Defendant KCDCC maintains its own rules of government. (Ex. 7).

20.     The Party Rules include a Code of Ethics. This Code begins with a "Statement of Principles," which includes a provision that "It is essential that party leadership not be used for private gain." *Id*. at p. 19.

21.     Effective in or about 2003, defendant KCDCC established defendant Judicial Screening Committee and, in state action, delegated to the Judicial Screening Committee KCDCC's state action power, in part, by making the candidate approval for Justice of the Supreme Court mandatory before the KCDCC would consider a candidate and support her.

22.     The Procedures *imposed* upon Judicial Screening Committee, that Judicial Screening Committee must follow,  were instituted by KCDCC. (Ex. 8).

### IV. Mandatory and Non-Discretionary Procedures Imposed upon Judicial Screening Committee by KCDCC

23.     The mandatory and non-discretionary Judicial Screening Committee Procedures imposed upon the Judicial Screening Committee by KCDCC (Ex. 8) provide, in pertinent part:

<u>Candidate-Ratings; Candidate-Withdrawal</u> (root of the Judicial Screening Committee's Rule 31.b)

i.     A newly-constituted screening panel shall be established, effective October 1, 2003. The panel shall review and interview all legally qualified candidates for Judicial Office who request such a review. They ***shall*** judge each candidate as either '*Qualified*' or '*Not Qualified at this time*'. ***The panel may, in its discretion, publish explanatory language in any determination finding a candidate 'Not Qualified at this time.' Prior to the publication of any list of Committee findings, candidates shall be permitted to withdraw their***

19

***candidacies, unequivocally and with prejudice.*** Of the Qualified Candidates the Panel shall report out a limited pool of recommended candidates based on the total number of vacancies for that judicial office (i.e., civil, supreme). The total pool shall be 5 individuals per vacancy for each type of judicial office. For the purposes of determining the size of the Pool, incumbent's seats shall be included." (***Emphasis added***)

*Id*. at ¶ 1;

Judicial Screening Committee determinations must be shared with all members of KCDCC Executive Committee (see also, Judicial Screening Committee Rule 16)

ii.     "***The panel's <u>determination</u> for each and every person interviewed shall be shared with all members of the [KCDCC] Executive Committee prior to an endorsement vote*** . . . In the case of Supreme or Surrogates Court, these findings should be published sixty (60) days before the first day to convene the Judicial Convention or as soon as practical and made available to all Delegates and Alternate Delegates attending the Judicial Convention and to all members of the Executive Committee." (***Emphasis added***)

*Id*. at ¶ 2 (***emphasis added***);

KCDCC cannot endorse any candidate that is not "recommended" by Judicial Screening Committee (Mandatory Judicial Screening = State Actor)

iii.     "***The [KCDCC] Executive Committee <u>may not</u> endorse any candidate for Judicial Office that is not recommended by the Screening Panel. The [KCDCC] Executive Committee <u>may not</u> endorse for nomination by the Judicial Convention any candidate for Supreme Court that is not found to be 'recommended' by the Screening Panel.*** Incumbent Judges seeking re-election to the same office shall be deemed Recommended unless seventy-five percent (75%) of the quorum determines that the Judge should not be reported out as Recommended. For the purposes of these rules Judges appointed to fill interim vacancies shall not be deemed Incumbent Judges."

*Id*. at ¶ 4 (***<u>emphasis added</u>***);

<u>Chairman Seddio appoints 3 members, including Chairman Edelman</u>

iv.    "The [screening] panel shall consist of the following: . . . **Three** members selected by the Chairperson of the Executive Committee of the Kings County Democratic Party, one of whom shall serve as the Chairperson of the Panel."

*Id*. at ¶ 6[L] (**emphasis in original**);

v.    "Every member of the Screening Panel [who is an attorney] must be an admitted member of the Bar of the State of New York in good standing and all members must maintain a residence or employment/practice in the Second Judicial District and be an enrolled member of the Democratic Party."

*Id*. at ¶ 7;

<u>No lobby rule/Judicial Screening Committee Independence Rule</u>

vi.    "**No** candidate or **Member of the Executive Committee may communicate with a member of the Screening Committee regarding the candidacy of any individual proposed for screening**." (*Emphasis added*)

*Id*. at ¶ 11;

<u>Judicial Screening Committee must adopt uniform rules of procedure for candidate-evaluation</u>

vii.    "Before undertaking any candidate evaluations, the Screening Committee shall adopt formal written criteria, upon which all such evaluations shall be based."

*Id*. at ¶ 13;

<u>Edelman is at "at will" appointment of Seddio, and motivated to keep him VERY happy</u>

viii.    "The Chairman of the [Edelman] shall be a voting member of the Screening Committee, should be chosen by the Chairman of the Executive Committee and serve for a two-year renewable term. Notwithstanding this, the **Chairman [Edelman] serve at the pleasure of the Chairman of the Executive Committee and may be dismissed by the Chairman of the Executive Committee at any time**."(**emphasis in original**);

21

*Id.* at ¶ 16.

### V. Mandatory and Non-Discretionary Rules of the Judicial Screening Committee, many mandatory, violated by defendants, including, Smoking Gun violations that exposes defendants' malice, vindictiveness and retaliation to punish Plaintiff's impartial & independent  judicial service to the people of New York

24.     The mandatory, non-discretionary Judicial Screening Committee enacted its own "Committee Rules," which were reportedly amended January 23, 2012.[12] According to defendant Edelman, despite the printed content of the Rules (Ex. 9), they were actually last amended on March 29, 2016.

25.     The mandatory, non-discretionary Judicial Screening Committee Rules provide, in pertinent part, that:

Rule 3: Mandatory Screener-Recusal (attorney cannot use her Screener status to obtain benefit in pending case before Candidate, not seek retribution from candidate-judge for adverse ruling in court) *with* Disclosure to entire Judicial Screening Committee

i.     "Any member of this Committee...,who has a personal, **professional,** political, or other close relationship with a candidate for judicial ... office, **shall recuse himself or herself from participating** in the investigation of, deliberation, and vote on the qualifications of such candidate. . ."

*Id*. at Rule 3; (violated by Edelman, Edelman selecting Sub-Committee and its chair/ reporter, and *inter alia*, Finkletstein given their unhappy professional relationship. There are other Recusal rules at Rule 2 (marriage-recusal), Rule 4 (forced recusal of a member), Rule 7 (*ex parte* communication-disclosure));

---

[12]Predecessor Rules had the same effect as Rule 31.b - regardless of how they were labeled since 2003. The comparison period is 2003-2016.

22

Rule 9: Mandatory, Non-Discretionary Candidate-Ratings: "Qualified" or "Not Qualified at this time"

> i.      "The panel **shall judge each candidate as either 'Qualified' or 'Not qualified at this time.' Of the Qualified Candidates the Panel shall report out a limited pool of recommended candidates based on the total number of vacancies for that judicial office (i.e ., Civil, Supreme)**. The total pool shall be five (5) individuals per vacancy for each type of judicial office. For the purposes of determining the size of the pool, incumbent's seats shall be included."

*Id*. at Rule 9  (**emphasis in original**) (violated);

Smoking Gun: Rule 10: Mandatory, Non-Discretionary  - Incumbent Judges, like Plaintiff, SHALL be deemed "Qualified," unless 75% of Quorum decides they should not be "Recommended"; But, finding Plaintiff "Not Qualified at this time" was NOT an option as she was an incumbent judge "seeking re-election to same office" and automatically "Qualified"!

> ii.      "A quorum shall consist of at least two-thirds (66 2/3 %) of the current members in good standing. A sixty percent (60%) vote of the quorum is required for all decisions, except for the case of incumbent judges. **Incumbent Judges seeking reelection to the same office shall be deemed qualified** unless seventy-five (75%) of the quorum determines that the Judge should not be reported out as 'Recommended.' For the purposes of these rules Judges appointed to fill interim vacancies shall be deemed incumbent Judges. If a candidate is found qualified in any year, the candidate to be found qualified in any successive year need only be found qualified by a majority vote of the quorum."

*Id*. at Rule 10 (**emphasis in original**) (maliciously, vindictively and in retaliation violated

- by Judicial Screening Committee, Edelman, Decker and *inter alia*, Finkelstein, as they

were obligated to find incumbent Plaintiff "Qualified," while retaining the lawful discretion

of not "recommending" her to the Executive Committee of KCDCC);

Emphasized Rule 13: Mandatory, Non-Discretionary Strict Confidentiality - Except for report to Executive Committee of KCDCC, all Strictly Confidential

> iii.      **"Except for the Report to the Executive Committee of the Democratic Party, all proceedings before the panel and all investigative**

**reports shall be treated as strictly confidential**. *Any inquiries concerning such proceedings or reports shall be referred to the Chair of this Committee. In the event that a member violates this provision, the Chair must discharge that member from any further deliberations of the panel."*

*Id*. at Rule 13 (*emphasis added*) (**emphasis in original**); (wholesale violated by

defendants in breach of confidentiality and fabricating derogatory accusations, known to be

false when published);

Candidate shall fill-out Mandatory Uniform Application and provide standard Resume

      iv.   A questionnaire and standard resume will be prepared for the use of the panel.

*Id*. at Rule 14;

      Rule 16: Smoking Gun - Mandatory Report with Mandatory, Non-Discretionary Use of Ratings-Labels: Edelman will issue written report to Executive Committee of KCDCC with candidate name "Qualified" or "Not Qualified at this time," without any explanation (abrogating discretion granted by KCDCC Ex. "9" ¶1)

      v.   "**The report of the panel shall be written, signed by the Chair, and shall name the  candidates found to be 'Qualified'/ 'Not Qualified at this Time**' as well as those found 'Recommended' for the judicial vacancy or vacancies to be filled."

*Id*. at Rule 16; (**emphasis added**);

      Rule 17: Mandatory, Non-Discretionary-confidentiality: Edelman has power to appoint Sub-Committee; Confidentiality of circulated Sub-Committee's pre-screening Reports is Paramount; Report-Destruction mandated

      vi.   "In investigating the qualifications of a candidate, the *Chair shall appoint a subcommittee of one or more members of the Committee (designating one such member as the Reporter for the subcommittee)* to conduct the necessary investigation, and submit a pre-screening report and recommendation to the Committee. **The selection of the sub-committee shall be by lottery. The subcommittee shall conduct a personal interview of the candidate**. All

24

pre-screening reports shall be circulated prior to the interview. *The confidentiality of the report is paramount*. Copies of the report shall be returned to the person or persons who conducted the interview after voting has occurred. In the event the candidate is asked to return for a further interview, the copies of the pre-screening report shall be returned to the person or persons who prepared the pre-screening report and produced at the continuing interview and then returned to the person or persons who prepared the report. After final votes are taken all copies shall be returned to the person or persons who prepared the report. *One copy shall be kept by the Chair and one copy shall be kept by the person or persons who prepared the report. All other copies shall be destroyed. Any committee member who distributes a copy of a pre-screening report without the consent of the Committee shall be immediately suspended from the Committee*."

*Id*. at Rule 17 (**emphasis in original**) (*emphasis added*);

Rule 20: Smoking Gun - Mandatory, Non-Discretionary - IMPORTANT NOTICE candidate to prevent Interview-by-Ambush: IF, Sub-Committee determines there are particular "areas of concern," candidate WILL be informed "orally" & "in the written communication" by Edelman or Sub-Committee member Edelman designates prior to interview with full committee

vii. "**In the event that the sub-committee determines that there are particular areas of concern, the candidate will be orally apprised either by the Chair or a designated member of the sub-committee prior to being interviewed by the full Committee**. The candidate will be requested to be prepared to address before the full Committee the areas of concern detailed in the written communication. The candidate shall be informed that he or she may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues. In the event, the candidate desires to provide additional written materials; the candidate must provide 24 copies of such materials to be distributed to the Committee at the interview of the full Committee."

*Id*. at Rule 20 (**emphasis in original**) (emphasis added);

Rule 22: Mandatory, Non-Discretionary - Candidate-Ratings Labels: Qualified" and "Not Qualified at this time" (see, Rule 9, supra)

viii. "Candidates shall be rated as 'Qualified' or 'Not Qualified at this Time.' If conditions exist to trigger an evaluation as to whether a qualified candidate is deemed to be recommended, such rating will also be provided. In its rating, the Committee shall consider the candidate's possession of such special qualifications

as may be necessary or desirable for the performance of the duties of the office for which he or she is being considered."

*Id.* at Rule 22;

> Rule 30: Mandatory, Non-Discretionary - Applications retrieved and destroyed, except Chair's copy; Confidentiality.
>
>> ix.    "At the end of the deliberative process, all applications of the candidates **shall be retrieved** by the Chair. The Chair **shall make arrangements for the destruction of all copies with the exception of one copy** or original to be kept in the possession of the Chair. **The application shall remain confidential** and shall not be disclosed without a vote of the Committee."

*Id.* at Rule 30 **(Emphasis added)**;

> Rule 31.b: Mandatory, Non-Discretionary - After the Determination of an Appeal the Candidate Must be Given 2 Business Days to Withdraw Candidacy to Avoid any publication of Judicial Screening Committee findings
>
>> x.    The appeal shall be heard within two (2) weeks of the candidate's notice of appeal. The candidate shall be informed within **four** business days of the appearance before the panel. ***The candidate shall then be given an additional two business days to withdraw his/her candidacy unequivocally and with prejudice to avoid publication of the Committee's findings***.

*Id.* at Rule 31.b (**emphasis in orginal**) (*emphasis added*).

26.    In March 2014, the New York City Bar Association Council on Judicial Administration published *Judicial Selection Methods in the State of New York: A Guide to Understanding and Getting Involved in the Selection Process*. (Ex. 10). The City Bar found that "In some counties historically dominated by a single political party (the Democratic Party in all counties except Richmond), the selection of candidates for nomination by that party has been tantamount to election in the general election." (*Id.* at p. 16).

27.     As an inducement to candid participation in the judicial screening process by people seeking nomination and endorsement by KCDCC as judicial candidates, the defendants assure such applicants strict confidentiality so as to be able to access the records of attorney disciplinary/grievance committees and the New York State Commission on Judicial Conduct.

28.     As such assurances are made by the defendants, as part of the awesome powers they are delegated by the state of New York to cause individuals to appears on the ballot for judgeships, and replenish the Third Branch of government, such assurances are made under color of law by delegated state actors.

29.     The questionnaire  that any candidate, including, plaintiff, fills out and submits for screening by the Judicial Screening Committee and endorsement by the KCDCC specifically provides: "Please be advised that all information provided will be kept strictly confidential." (Ex. 11).

30.     The Judicial Screening Committee questionnaire requires that an applicant who is a "sitting Judge" must, as part of the information provided that "will be kept strictly confidential,"  "list all decisions which have been reversed or modified by a higher Court." (*Id*. at Q. 43).

31.     Plaintiff relied to her detriment on the defendants' published, and individualized-by-Edelman assurances of confidentiality.

27

32.     The Rules of the Judicial Screening Committee and the KCDCC provide that the Democratic party in Brooklyn cannot endorse a candidate for a judgship at its Judical Convention who has not been found "Qualified" AND "recommended" by the Judicial Screening Committee.

33.     At all relevant times, the defendants' rules and procedures govern which candidates appear on the ballot for Justice of the Supreme Court and Judge of the Civil Court for elections held in Kings County.

34.     As a matter of near-impossible mitigation, in order to have any practical chance at being elected to the Supreme Court within Kings County, the support and approval of the KCDCC is necessary, unless a candidate decides to forego the KCDCC-process and run a slate of independent judicial delegates pledged to nominate, second and vote for such candidate (*a la "Lopez Torres"* Ballot access right).[13]

35.     The defendants' judicial screening process is conducted under color of law.

36.     As part of the defendants' judicial screening process, all candidates for nomination agree to provide a completed questionnaire and participate in a confidential screening interview.

---

[13]*New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008).

## VI. The factual timeline for the normal Judicial Screening Committee process, since, on or about 2003-2016.

37.     The normal judicial screening process is spelled out in the published rules and regulations of KCDCC (Ex. 7) and the Judicial Screening Committee Procedures (Ex. 8) and Rules (Ex. 9). Like Plaintiff, each applicant is required to complete a questionnaire prepared by the Judicial Screening Committee. (Ex. 11).

38.     Upon information and belief, the following are the practices of Judicial Screening Committee:

A.     Chairman Edelman, in Manhattan, receives candidate-applications by the deadline set and announced by Judicial Screening Committee and KCDCC;

B.     Chairman discretionarily appoints Sub-Committees and assigns a list of candidates for each Sub-Committee, and further appoints a Chair/Reporter of the Sub-Committee; in Plaintiff's case, defendant Decker was appointed Chair of the Sub-Committee by Edelman;

C.     Sub-Committee does its due diligence: reviews applications and contacts persons with knowledge of the candidate; subcommittee visits candidate and orally informs the candidate of any areas of "concern" pursuant to Judicial Screening Committee Rule 20, and solicits the candidate's response; pursuant to Rule 20, Sub-Committee after the interview, sends notice to candidate <u>in writing</u> of any areas of concern which would be raised at the interview by the full committee. In plaintiff's case, <u>no oral or written notice was given</u> as required by Rule 20 if there were <u>any</u> "areas of concern.";

29

D.      interview of the candidate by the full Judicial Screening Committee is held as follows: the Chair makes opening comments and *personal* observations about the candidate;[14] Chair invites the Sub-Committee to report and brief the full committee; members of the full committee are invited to add to the conversation; then the candidate is brought into the room and sits in the candidate's chair, placed at the head of the table next to the Chairman's; questions are posed by the Chair, and then any left over questions are raised by members, which the candidate answers; after the interview is completed the candidate leaves the room, and  a post-interview discussion, led by Chair occurs, followed by a vote (where slips of paper with the candidate's name and a "yea" or "nay" - or however it is characterized currently, such as "Qualified" or "Not qualified at this time" - is passed to every member of the committee to vote; but without writing their name or signing same, the voted-pieces of paper are "folded" for secrecy and passed back to the Chair, who then places all of them in an envelope labeled with the candidate's name and takes escrow-possession of same until the very end of the screening season - when at a final meeting of the Committee all of the candidates' envelopes are opened, votes recorded, and from the qualified-candidates pool the committee selects five qualified-candidates, per vacancy, to be "recommended" to the Executive Committee of KCDCC; the Chairman then fills in the names of the "qualified" and "recommended" candidates, as well as those found "Not

---

[14]The Chair is the "Shepard," generally, with the Chair/Reporter of the Sub-Committee the "specific Shepard," with other members as "sheep," going along and following the strong opinions expressed. Of greatest importance for most members is to know what Seddio wants so that they can give him results politically required (*i.e.*, know the political deals).

Qualified at this time" on a Letter to KCDCC Chairman Seddio, signs it, along with the signatures of every other committee members present at that time, pursuant to Rule 9 and Rule 16.

39.    For Plaintiff's 2016 Judicial Screening Committee Rule 31.b Class of One[15] gauntlet, the mechanical non-discretionary mandatory Rules were violated so as to maliciously, vindictively and in retaliation punish her for her prior judicial actions, and set her up for an inapplicable-negative vote, and then unlike her Comparators, all of whom were also turned down by Judicial Screening Committee and withdrew their candidacy per Rule 31.b, whereby nothing further was heard or disseminated, and the media, including the *New York Post* were not given and did not publish stories, but Plaintiff was denied the benefit of her Rule 31.b "unequivocal withdrawal of her candidacy, with prejudice, to avoid the publication of the Committee's Findings [to KCDCC]," as the defendants impermissibly shared confidential information, including with the New York Post, and the New York Post published that confidential information in stories in July 2016.  (Exs. 18-19).

---

[15]Plaintiff's Comparator period is 2003 (when Rule 31.b [or whatever it was then labeled] was promulgated) until 2016. Plaintiff's Comparator's are listed in fn. 2, *supra*.

31

**VII. Factual Timeline: Plaintiff's interactions with Judicial Screening Committee - from application to withdrawing candidacy per Rule 31.b, and being defamed and denigrated - as a Class of One maliciously and vindictively violated and injured in retaliation of her prior judicial orders and rulings - while her Comparators[16]  - who withdrew per Rule 31.b - were not defamed and kept intact their pre-candidacy <u>reputation without any injury caused by these defendants</u>**

40.     On February 23, 2016, Plaintiff sent a cover letter to Edelman (Ex. 12), with a copy of her approximately 1" thick confidential application, with its attachments.

41.     On May 4, 2016, the 2-person Sub-Committee scheduled interview was held; defendant Decker, Sub-Committee chair/reporter, came an hour late, and the Sub-Committee interview went very nicely without any Rule 20 "areas of concern" being relayed orally, which notification was mandatory, if the Sub-Committee had any concerns; and the Sub-Committee interview ended very pleasantly. At no time did Plaintiff receive Rule 20 Notification - orally or in writing prior to the interview with the full committee on May 25, 2016 - as was mandated by Rule 20 if there were any "areas of concern," <u>confirming</u> that there were no areas of concern for this highly decorated and appointed jurist.

42.     On May 19, 2016, two weeks after the Sub-Committee interview, Plaintiff sent a Letter which recites the "very gracious" nature of same, and how they had put her "at ease." Indeed, she was "look[ing] forward to seeing you both next week at the full committee meeting." (Ex. 13).

---

[16]*See*, fn. 7, *supra*.

43.    Later that same night, May 19th, while Plaintiff was attending the KCDCC annual dinner, Seddio inquired of her and she told Seddio that she "had a very positive interview with my Sub-Committee," to which Seddio responded with disbelief and he said, "You did?" - leaving Plaintiff puzzled as to why Seddio knew anything and why Seddio seemed opposed to her own positive experience with the Sub-Committee interview. Obviously, Judicial Screening Committee-defendants maliciously and vindictively breached the "Strict Confidentiality" of the Judicial Screening Committee process mandated by various Rules including Rules 13 and 17, or Seddio had "given orders" to destroy Plaintiff, deny her Equal Protection of KCDCC and Judicial Screening Committee mandatory Non-discretionary Rules and Regulations, and treat her as a Class of One - in punishment for all that offended these defendants - because Plaintiff dared to be part of a co-equal branch of government, impartial and independent, and not serve on bent knee to politics or the powerful.

44.    <u>Interview-by-Ambush</u>. On May 25, 2016, the Interview with the full Judicial Screening Committee took place, after being adjourned from May 23, 2016. As a Class of One,[17] Plaintiff was subjected to an Interview with no-Recusals (by Edelman, Finkelstein, and Sub-Committee members for violation of mandatory obligation to orally notify candidate if there are any "areas of concern") despite being mandated by Rule 3, and no mandated Rule 20 prior-notice of any "areas of concern," in writing by Edelman, who

_____

[17]*Id.*.

33

violated Rule 20's mandatory notification. Indeed, Edelman chaired the Interview-by-Ambush and raised "areas of concern"[18] to Plaintiff, and the Interview was conducted with participation of defendants Edelman, Decker, Ajaiyeoba, and *inter alia*, Finkelstein. The Interview did not go well, and Plaintiff was ridiculed, humiliated, and injured.

45.     Upon information and belief, soon after Plaintiff's May 25, 2016 interview, Seddio knew the exact vote tally of the Judicial Screening Committee with respect to Plaintiff. It was illegal, unlawful, improper and a violation of the mandatory, non-discretionary Rules and Procedures of the Judicial Screening Committee for Seddio to have been provided such confidential information, to possess such confidential information and for Seddio to further disseminate such confidential information.

46.     Class of One - beyond defalcation of her earned Rule 31.b bar to negative publication - as given to all her Comparators since 2003 - Plaintiff got some more malicious and vindictive punishment: Defalcation of her right to Rule 10 mandatory incumbency-earned "Qualified" finding and instead being given the "Not Qualified" label, which was an inflated injury in violation of Rules 9 and 22's mandatory label of "Not qualified at this time,"albeit inapplicable to Plaintiff who was a Rule 10 "incumbent."On May 26, 2016, the day after the Interview-by-Ambush, Plaintiff received a letter from Edelman - wherein he documented his, and his fellow Judicial Screening Committee-

---

[18] Those issues, while could be viewed as sexist - to object when a woman judge is tough and requires court rules to be followed, but no objection by lawyers when a male judge does the same. Nevertheless, discretionary evaluations are not within the Class of One allegations, but rather just proof of the malicious, vindictive and retaliatory nature of defendants' misconduct of Plaintiff.

members' malicious and vindictive retaliation towards Class of One-Plaintiff - violations

of mandatory Rule 9[19] (and Rule 22) labels and Rule 10 mandatory, non-discretionary

automatic label for incumbent judges, like Plaintiff, of being "Qualified" (But, in any event

"Qualified"!). Edelman, personally, and on behalf of Seddio and *inter alia*,  Finkelstein

cabal, inflates his insulting injury of Judicial Screening Committee's Rule 9 Finding of

"Not Qualified at this time" and <u>tells Plaintiff she was found "Not Qualified."</u> This, of

course, is in added violation of Rule 10, which mandated that Plaintiff be found "Qualified,"

even if Judicial Screening Committee discretionarily chose not to "recommend" her.[20] (Ex.

14).

47.    Then Edelman, in that same malice-driven Class of One Letter,  proceeds to

<u>invite Plaintiff to withdraw her candidacy pursuant to Rule 31.b and promises her that that is</u>

<u>the path for her "to avoid a negative publication..."</u> - when, pursuant to Rule 10, she was

mandatorily entitled to being found "Qualified." The Edelman Letter enclosed 1-page

showing mandatory, non-discretionary "Rule 31.b."

---

[19] Rule 9: "The panel **shall judge each candidate as either 'Qualified' or 'Not qualified at this time.' Of the Qualified Candidates the Panel shall report out a limited pool of recommended candidates based on the total number of vacancies for that judicial office (i.e ., Civil, Supreme)**.

[20] Rule 10: **"Incumbent Judges seeking reelection to the same office shall be deemed qualified** unless seventy-five (75%) of the quorum determines that the Judge should not be reported out as 'Recommended.'"

48.     On or about Saturday, May 28, 2016, Plaintiff, deeply hurt, demoralized and injured, called Edelman to discuss if she should took an appeal or simply withdraw her application per Rule 31.b. Edelman instructed Plaintiff that he had to have the Rule 31.b "unequivocal withdrawal, with prejudice," in writing, if she was to going to stop his letter-report from including her name as a "Not-Qualified"-candidate, before it was sent to the Executive Committee of KCDCC. Edelman said it was her right to appeal, just as it was her right to exercise Rule 31.b then, or after her appeal. Later, that same Saturday, she spoke with Arnie Kriss, then her Treasurer, who said, "no, we are definately going to appeal."

49.     On June 1, 2016, Plaintiff, took and filed her appeal. In her cover letter, she bemoaned the grievous injury with the "Not Qualified" finding, given her unblemished 25 year record of judicial hardwork and excellence. She questioned why the Rule 20 mandatory notification of any areas of concern was not honored. She ended with asking the Screener-defendants to contact a list of judges, who supervise her workproduct administratively or via appeals. (Ex. 15).

50.     On or about June 7, 2016, Plaintiff appeared for her appeal-interview with her then retained appellate counsel Arnie Kriss - who heard defendant Decker tell Plaintiff, in the presence of all, that she was "probably the brightest judge on the bench [in Brooklyn Supreme]...."

51.     On June 8, 2016, day after appeal-interview, Edelman wrote again to bear bad tidings: appeal denied. He then repeated his invitation to Plaintiff to exercise her Rule 31.b Right to prevent him and his Committee to report their negative findings to the

Executive Committee of KCDCC and Seddio, and set a deadline for receipt of same as 5pm
June 10, 2016. (Ex. 16).

52.     On June 10, 2016 (12 noon, per fax imprint footer, or 1:10 pm on
fax imprint header), Plaintiff timely faxed, and Edelman timely received, Jacobson's Rule
31.b Candidacy-Withdrawal in exchange for mandatory non-publication of defendants'
false, malicious and vindictively inflated tortious "Not Qualified" finding. (Ex. 17).

53.     In wholesale intentional and vindictive violations of plaintiff's mandatory
rights under the Rules of the defendants, defendants had a defamation bonfire, at her
expense, that reduced her lifetime professional and social reputation to ashes - when they
sought out the media to publish false professional labels, libel per se under state law, and
*New York Post* published 2 articles, each in print and online, so there were 4 publications in
all. (Exs. 18-19).

54.     On July 16, 2016, Plaintiff's lawyer Arnie Kriss wrote a letter, with
enclosures, to Edelman expressing his outrage. (Ex. 20). Stating the obvious as to
plaintiff's Class of One status: "why Plaintiff was treated differently than all other
applicants [] who withdrew their application [pursuant to Rule 31.b]?" The answer, of
course, is defendants' were motivated by their malice, vindictiveness and sought damning
retribution of maximum economic professional injury and personal pain from Plaintiff,
while to all her identical Comparators, who also withdrew their candidacy per Rule 31.b, or
its predecessor Rule(s), none of them was savagely destroyed professionally and personally
by impermissible dissemination of confidential information to the public and the media,

including inducing the publication of stories containing confidential and false information in the *New York Post*.

55.     **Class of One - Violation of the 14th Amendment Equal Protection Clause of the United States Constitution**. Critically and at the core of this complaint, each *and* every candidate, exactly like Plaintiff, ***had a non-discretionary iron-clad Judicial Screening Committee Rule 31.b Right*** - in the event of being *Lopez Torres-discretionarily* rejected by Judicial Screening Committee as **"Not qualified at this time"** - which when Rule 31.b Right was exercised timely and properly, would mandatorily cause, in effect, to *void* the candidacy *ab initio* and vacate all negative findings by Judicial Screening Committee, and specifically  "avoid publication of the [Judicial Screening Committee] Committee's Findings [to the Executive Committee of KCDCC]."

56.     Unlike her Comparators, identical to plaintiff in all relevant manner, Plaintiff, who timely and properly exercised her Rule 31.b Right - still had her valuable professional reputation destroyed with the illegal publication by Judicial Screening Committee. The Judicial Screening Committee, via its Chairman Edelman and/or one or more members of the Judicial Screening Committee, improperly disseminated and published confidential information,  consisting of malicious, vindictive and retaliatory-caused innuendo and *inter alia*, character assassination discussions during the screening process. This information, improperly published by the defendants, including the negative vote and appeal-denial, was disseminated to one or more members of the Executive Committee of KCDCC, including, Chairman Seddio, and other persons, who were neither

38

members of the Executive Committee of KCDCC or part of Judicial Screening Committee, but part of the lawyer/court/political world attentive to the Brooklyn's Judicial Screening Committee process and results.

57.     New York Post Published Articles - Defendants' Defamation *per se*: Thereafter, the defendants still and further improperly, maliciously and vindictively disclosed confidential information about Plaintiff to reporters, including, *inter alia*, Rich Calder, Emily Saul and Laura Italiano via *inter alia*, KCDCC's retained Public Relations consultant George Artz, resulting in 2 articles, each in an an online-version and a print-version, dated July 13, 2016 and July 14, 2016 (Ex. 18) and  July 15, 2016 (Ex. 19). These two articles, albeit, 4 published versions, injuriously stated:

i.      that Plaintiff was "found unqualified by a Democratic party screening panel";

ii.     "'She's not the brightest bulb in the courthouse to begin with' ***said one party source*** explaining" the decision by Judicial Screening Committee;

iii.    "***said another party official, who like the others asked not to be named***, 'As far as we know, this is the first time in Brooklyn's history the committee did not reappoint a sitting Supreme Court judge - its unheard of.";

iv.     "Approval by the committee ... is usually a routine a rubber stamp for sitting judges such as Jacobson...";

v. "But Jacobson is so disliked and considered so judicially mediocre that the committee found her unqualified, and then rejected her appeal";

vi. "'She fell out of favor with the powers that be,' said one court source. 'It's a clubhouse, and she's not a member in good standing'";

vii. "The 39-page questionnaire asks for detailed list of previous trials..." "But Jacobson's was filled with vague answers, *one court source said*."

58. The articles that appeared in the *New York Post* contained statements that were made with actual malice, knowledge of their falsity and/or with reckless disregard for the truth by "sources" that ought *not* have had *any* information of Plaintiff's Screening-travails with Judicial Screening Committee, given her timely and proper exercise of Rule 31.b Right which mandated, without discretion, no-disclosure and no-publication of information about Plaintiff's then-Rule 31.b-withdrawn candidacy.

59. Yet, because of certain defendants', such as Chairman Seddio's, Judicial Screening Committee Chairman Edelman's and inter alia, Judicial Screening Committee-Screener Steven R. Finkelstein's, actual malice, vindictiveness and in retaliation of Plaintiff's *prior* exercise of her judicial function (*see, e.g.*, § II), which included being an active member of the Kings Supreme Court Justices Foreclosure Committee, the defendants wholesale breached the mandated screening process-confidentiality, **guaranteed in a non-discretionary manner** to *all* candidates that exercise their Rule 31.b Right, so as to savagely destroy Plaintiff's lifetime reputation of judicial excellence and hard work as punishment for Plaintiff's judicial independence.

40

60.     None of the *New York Post's* articles were possible without the Judicial

Screening Committee, in violation of Rule 31.b, disclosing confidential information -

discussions during the screening process as well as the negative-vote, albeit, inflated to

"Unqualified,"  and appeal-denial sourced to the reporters who wrote the twin *New York*

*Post* articles dated July 13, 2016 (Ex. 18) and July 15, 2016 (Ex. 19); and unlike all other

identically-situated Comparator-Candidates from on or about 2003 till July 13, 2016, none

of their negative-vote in Judicial Screening Committee was disclosed to *inter alia,* the *New*

*York Post*. Those Rule 31.b Comparators (exactly like the plaintiff, who applied, got

voted down, exercised their Rule 31.b right-to-withdraw) never had their Judicial Screening

Committee negative vote or confidential information published to the Executive

Committee of  KCDCC, members of the public, and to the press ,as Plaintiff was

vindictively subjected to.

## VIII.    The Parties

61.     Plaintiff Laura Lee Jacobson was born in Long Island College Hospital

(LICH), Brooklyn, New York in 1948, and is currently a resident of Kings County and

Richmond County, each within the Eastern District of New York, and is presently a Justice

of the Supreme Court of the State of New York, in and for Kings County, a judicial position

she was elected to in 2002.

41

62.     Plaintiff brings this action solely in her individual capacity. This action is ***not*** brought in Plaintiff's judicial capacity. In bringing this action, Plaintiff is ***not*** acting as a jurist or as a representative or agent of any court, judicial body, or administrative agency, including but not limited to the New York State Office of Court Administration.

63.     Plaintiff's hard work and dedication are actually evidenced by a photograph published as part of an article in the *New York Post*, the sources of which are subjects of this action. *See*, Rich Calder, Emily Saul and Laura Italiano, *City Judge Deemed Incompetent in 'Unheard Of' Move*, NEW YORK POST, July 13, 2016, 11:23pm, *available at* http://nypost.com/2016/ 07/13/ city- judge- deemed-incompetent-in-unheard-of-move, *last accessed* Aug. 23, 2016. (Ex. 18). Also appended, and made a part hereof, is the print version of the article which appeared on page 9 of the July 14, 2016 edition of the *New York Post*. Critically, the published photograph depicts Plaintiff carrying multiple "big" bags, one of which is slung over her left arm. Clearly visible in that bag on Plaintiff's left arm are motion papers from a pending action. This is because Plaintiff regularly takes work home with her and works on cases even when out of the courthouse during her personal time. (*Id.*).

64.     Much of the content of the July 13, 2016 online/ July 14, 2016 print *New York Post* article (Ex. 18) is  false, misleading and damaging to Plaintiff. The sources of the false and damaging information are defendants KCDCC and, *inter alia*, the Judicial Screening Committee. Such disclosures, and others delineated herein, were made in breach

42

of an agreement of confidentiality.[21] Moreover, such disclosures, and others delineated herein, were made under color of law in vindictive action, in violation of party and committee Rules, to harm Plaintiff maliciously and permanently.

65.    On July 15, 2016, the *New York Post* published yet another article online, and in print, containing  false, misleading and damaging information about Plaintiff. Like the prior article (Ex. 19), the sources of the such false and damaging information were again defendants KCDCC and, *inter alia*, the Judicial Screening Committee. The content of the July 15, 2016 article is also a subject of the instant action. *See*, Rich Calder, Emily Saul and Laura Italiano, *Brooklyn Judge Blows Off Work Amid Being Deemed "Unqualified"*, NEW YORK POST, July 15, 2016, 12:37 a.m., *available at* http://nypost.com/201607/15/ brooklyn-judge-blows-off-work-amid-being- deemed- unqualified, *last accessed* Aug. 23, 2016. (Ex. 19). Also appended, and made a part hereof, is the print version of the article which appeared on page 12 of the July 15, 2016 edition of the *New York Post*. (*Id.*).

---

[21]The Rules of defendants KCDCC and Judicial Screening Committee governing the screening, selecting and nomination of candidates seeking election as Justices of the Supreme Court in New York's Second Judicial District, enacted under color of law, require candidates to execute a limited waiver of the statutory confidentiality of records maintained by the New York State attorney disciplinary and grievance committees (Judiciary Law § 90(10)) and the New York State Commission ("CJC")on Judicial Conduct (Judiciary Law § 45). That waiver permits the Judicial Screening Committee to obtain records that they would otherwise be barred, by statutes, from accessing. The defendants' own confidentiality Rules, provisions and assurances, mandated that they keep and maintain confidential all information, including records of any candidate secured from state agencies. Due to Plaintiff's exemplary professional career, as attorney and as judge, she was never the subject of any reprimand or sanction by any attorney grievance committee or the CJC.

66.    While others applied for nominations by the Judicial Screening Committee and endorsement by the KCDCC, apart from Plaintiff, no other applicant had confidential information about their application and the Judicial Screening Committee's process disclosed to the public and the media.

67.    While others incumbent judges applied for nominations by the Edelman Committee and endorsement by the KCDCC, apart from Plaintiff, no other incumbent applicant had information about their application and the Judicial Screening Committee's process disclosed to the public and the media.

68.    Defendant KCDCC is an unincorporated association serving as the Kings County Committee for the New York State Democratic Committee. Upon information and belief, the KCDCC maintains its principal place of business within the Eastern District of New York at 16 Court Street, Suite 1207, Brooklyn, NY 11241.

69.     The KCDCC is properly named as a party defendant pursuant to Fed. R. Civ. P. 17(b)(3)(A).

70.    At all relevant times, the KCDCC acted under color of law.

71.    At all relevant times, defendant Hon. Frank R. Seddio was the County Chair of the KCDCC. Upon information and belief, Mr. Seddio resides within the Eastern District of New York at 2333 East 69 Street, Brooklyn, NY 11234.

72.     Mr. Seddio is properly named as party defendant in his individual as well as official and representative capacity pursuant to Fed. R. Civ. P. 17(b)(3), (d) C.P.L.R. §§ 1023, 1025, and is sued individually, including as a conspirator in the violation of Plaintiff's constitutional rights, and as an official and representative.

73.     At all times herein, Mr. Seddio acted under color of law.

74.     Defendant Judicial Screening Committee is an unincorporated association serving as the "mandatory" judicial screening panel for defendant KCDCC. Upon information and belief, the Judicial Screening Committee maintains its principal place of business at the law offices of its chairperson, Defendant Martin W. Edelman, within the Southern District of New York at 61 Broadway, New York, NY 10006.

75.     At all relevant times, the Judicial Screening Committee acted under color of law.

76.     At all relevant times, defendant Martin W. Edelman was the Chairperson of the Judicial Screening Committee for the KCDCC. Upon information and belief, Mr. Edelman resides within the Southern District of New York within New York County. Mr. Edelman's principal place of business is within the Southern District of New York at 61 Broadway, New York, NY 10006.

77.     Mr. Edelman is properly named as party defendant in his individual as well as official and representative capacity pursuant to Fed. R. Civ. P. 17(b)(3), (d) C.P.L.R. §§ 1023, 1025, and is sued individually, including as a conspirator in the violation of plaintiff's constitutional rights, and as an official and representative.

78.     At all relevant times, Mr. Edelman acted under color of law.

79.     Upon information and belief, based upon publically accessible internet postings of defendant KCDCC, at all relevant times, the Judicial Screening Committee was comprised of the following individuals:

> Ethan Gerber, Esq.
> Michael V. Cibella, Esq.
> Lisa Schreibersdorf, Esq.
> Steven Bamundo, Esq.
> Kenneth J. Montgomery, Esq.
> Lisa Smith, Esq.
> Melissa E. Bonaldes, Esq.
> Carmen A. Pacheco, Esq.
> Scott Baron, Esq.
> Elaine Avery, Esq.
> Wayne C. Bodden, Esq.
> Gregory Cerchione, Esq.
> William T. Bellard, Esq.
> <u>Defendant</u> Martin W. Edelman, Esq.
> <u>Defendant</u> Steve Decker, Esq.
> Mark A. Longo, Esq.
> Helene E. Blank, Esq.
> <u>Defendant</u> Steven R. Finkelstein, Esq.
> E. Paul Stewart, Esq.
> Theodore Pavlounis, Esq.
> Kendra L. Hutchinson, Esq.
> Evan Goldberg, Esq.
> Anthony M. Deliso, Esq.
> <u>Defendant</u> Abayomi O. Ajaiyeoba, Esq..

*See*, Brooklyn Democratic Party, Judicial Screening, *available at*, http://www.brooklyn dems.com/judicial_screening, *last accessed* Aug. 24, 2016.

80.     At all relevant times, defendant Steven R. Finkelstein was an attorney admitted to practice law in the state of New York who served as counsel to the Kings

County Public Administrator. Simultaneously, Mr. Finkelstein also served as a member of the Judicial Screening Committee. In 2005, after the removal of Surrogate Michael Feinberg, Acting Surrogate Albert Tomei appointed Mr. Finkelstein as counsel to the Public Administrator. In 2006, defendant Seddio, who was then Surrogate, re-appointed Mr. Finkelstein as counsel to the Public Administrator. Mr. Finkelstein is sued individually, including as a conspirator in the violation of plaintiff's constitutional rights.

81.     At all relevant times, defendant Steve Decker was an attorney admitted to practice law in the state of New York. Mr. Decker served as a member of the Judicial Screening Committee and was appointed to that position as a representative of defendant Seddio. Mr. Decker was a member of the subcommittee of the Judicial Screening Committee assigned to the judicial screening of Plaintiff Mr. Decker is sued individually, including as a conspirator in the violation of plaintiff's constitutional rights.

82.     At all relevant times, defendant Abayomi O. Ajaiyeoba was an attorney admitted to practice law in the state of New York who served as a member of the Judicial Screening Committee. Ms. Ajaiyeoba was a member of the subcommittee of the Judicial Screening Committee assigned to the judicial screening of Plaintiff. Ms. Ajaiyeoba is sued individually, including as a conspirator in the violation of plaintiff's constitutional rights.

83.     At all relevant times, each of the individual defendants was an attorney, duly admitted to practice law in the courts of the state of New York.

84.     The defendants themselves promulgated the mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee.

85.     The defendants were all aware of the mandatory, non-discretionary

Rules and Procedures of the KCDCC and the Judicial Screening Committee.

86.     The defendants were all aware that they were acting under color of law.

87.     The defendants were all aware that they were acting under color of law when

they breached, violated and disregarded mandatory, non-discretionary Rules and Procedures

of the KCDCC and the Judicial Screening Committee.

88.     The defendants were all aware that they in acting under color of law when

they breached, violated and disregarded mandatory, non-discretionary Rules and Procedures

of the KCDCC and the Judicial Screening Committee, so as to harm the Plaintiff, they were

depriving the Plaintiff of her rights as afforded to her under the Constitutions of the United

States and the state of New York .

89.     Defendants John and Jane Does ## 1-20 are fictitiously named as their

identities are not yet known. These John and Jane Does are intended to represent persons

who had access to confidential records and//or the confidential process of defendant

Judicial Screening Committee for the KCDCC, pertaining to plaintiff, who disclosed such

materials outside of the committee to defendant Seddio, defendant KCDCC, defendant

KCDCC's media consultant George Artz, members of the public and/or the media.

## IX.    Jurisdiction and Venue

90.     The Court has jurisdiction of the subject matter of this action pursuant to 28

U.S.C. §§ 1331, 1343(a)(3), (4), 1367(a), 2201, 2202; 42 U.S.C. §§ 1983, 1985, 1988;

Fed. R. Civ. P. 65.

48

91.     Venue of this action is properly in this district, pursuant to 28 U.S.C. § 1391(b)(1), on the grounds that any defendant resides within the Eastern District of New York and all defendants are residents of the State of New York; 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in the Eastern District of New York.

**Allegations Pertinent to All Counts**

**X.     State Actors: KCDCC and Judicial Screening Committee**

92.     The Supreme Court of the State of New York is the court of general original jurisdiction, in law and equity, in the New York court system. NY Const art. VI, § 7(a).

93.     The New York State Constitution provides that "justices of the supreme court shall be chosen by the electors of the judicial district in which they are to serve. The terms of justices of the supreme court shall be fourteen years from and including the first day of January next after their election." NY Const art. VI, § 6(c).

94.     New York State is divided into thirteen judicial districts. Judiciary Law § 140.

95.     Until in or about 2009, Kings County and Richmond County were collectively the Second Judicial District. By legislative amendment in or about 2007, effective January 1, 2009, the Thirteenth Judicial District was established, which consists

of the County of Richmond. Judiciary Law § 140.  Kings County is the Second Judicial

District. *Id.*.

96.     New York law delegates authority for promulgating rules governing a

political party to the party committee, to wit:

> Each committee may prepare rules for governing the party within its political
> unit. Within ten days after the adoption of any rule or amendment thereto a
> certified copy thereof shall be filed by the state committee in the office of
> the state board of elections, and by the county committee in the office of the
> state board of elections, and in the office of the board of elections of the
> county. . . No rule or amendment thereof shall be effective until the filing
> thereof in the office of the state board of elections. Such rules shall continue
> to be the rules for the committee until they are amended or new rules
> adopted.

N.Y. Election Law § 2-114(1).

97.     New York law does not provide for primary elections for candidates

seeking to be elected justices of the Supreme Court. Instead, delegates are elected from

Assembly Districts located within a judicial district. These judicial delegates nominate and

vote for candidates to appear on the general election ballot as candidates for justice of the

Supreme Court. *See, e.g.*, N.Y.  Election Law §§ 6-124, 6-136(3).

98.     <u>N.Y. Election Law § 6-106</u>: New York delegates to the political party

Conventions to hold "Closed Primary" elections. Pursuant to N.Y. Election Law § 6-106,

"<u>Party nominations</u> for the <u>office of justice of the supreme court shall be made by the</u>

<u>judicial district convention</u>" (emphasis added).

99.     Such nominating conventions are also subject to the provisions of, *inter*

*alia*, N.Y. Election Law §§ 6-124, 6-126.

50

100.    New York state law provides broad and nearly unfettered power to political parties to control who they, and at what terms, nominate their slate of candidates to appear on the ballot for a vacancy on the Supreme Court in any judicial district. By virtue of such authority, when such a political party exercises such statutory power, it is acting under color of law. Similarly, KCDCC sharing its power with its mandatory-approval by the Judicial Screening Committee, also makes the Judicial Screening Committee a state actor.

101.    At all times herein mentioned, from Plaintiff's initial application for screening for re-appointment made on February 23, 2016, her May 4, 2016  subcommittee interview, her May 25, 2016 Judicial Screening Committee interview, her June 7, 2016 Judicial Screening Committee appeal, and thereafter, Plaintiff was entitled, exactly like her Comparators, to have her candidacy before defendant Judicial Screening Committee conducted in accordance with the Rules and Procedures enacted under color of law governing the screening, selecting and nomination of candidates seeking election as Justices of the Supreme Court in New York's Second Judicial District by defendants KCDCC and Judicial Screening Committee.

102.    As part of the defendants' judicial screening process, the defendants agree to maintain the strict confidentiality of the application and the screening process.

103.    The sub-committee, consisting of defendants Decker and Ajaiyeoba did not inform Plaintiff of all "particular areas of concern"as mandated by Judicial Screening Committee Rule 20. Such notice was not given orally nor was it given in writing.

51

104.    Defendant Edelman as chairperson of defendant Judicial Screening Committee did not inform Plaintiff of all "particular areas of concern" as mandated by Judicial Screening Committee Rule 20.

105.    Plaintiff was not provided any "written communication," or even any oral notice, which "detailed" any "areas of concern" as mandated by Judicial Screening Committee Rule 20.

106.    Plaintiff was not "informed that [] she bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues" as mandated by Judicial Screening Committee Rule 20.

107.    The applicable Rules of the Judicial Screening Committee permitted only two designations for applicants: "Qualified" or "Not qualified at this time." (Ex. 9 at Rule 9). The Rules further provide that only 5 candidates from the "found 'Qualified'" pool be reported out by the Judicial Screening Committee for each judicial vacancy. *Id.*.

108.    As an incumbent, Plaintiff was mandatorily entitled to be deemed "Qualified," even if seventy-five percent of a quorum of the Judicial Screening Committee determined not to report her out as "Recommended." (*Id.* at Rule 10). The defendants defalcated Plaintiff's mandatory vested "Qualified" rating as part of their vindictiveness and actual malice, in addition to violating the Rule 31.b bar to any reporting about her.

109.    Unfortunately, Kings County has a sordid history of illegal and corrupt behavior, aided by members of the KCDCC. This misconduct has not abated despite prior legislative and law enforcement investigations, censures, arrests, indictments and convictions.

110.    Refusing to permit political or social pressures to impact her decision making, Plaintiff always remained staunchly independent in her capacity as a judge.

111.    Such judicial independence did not sit well with the Kings County Democratic political machine. Indeed, the *New York Post* in its first article publishing in print and on the internet the defendants' improper disclosures included within its article concerning Plaintiff that "She fell out of favor with the powers that be," said one court source. "It's a clubhouse, and she's not a member in good standing." (Ex. 18).

112.    Rule 31.b Class of One - as "pay back" for Plaintiff's impartiality and independence, the defendants, while acting under color of law, broke their own mandatory, non-discretionary Rules and Procedures and violated the confidentiality of the judicial screening process with the vindictive and malicious intent of harming Plaintiff personally and professionally.

113.    The only people who could have valid access to judicial screening materials concerning Plaintiff were the members of the Judicial Screening Committee during the deliberative process. (Ex. 9 at Rule 13). Upon completion of the deliberative process, the defendants' rules only permit a single copy of the judicial screening materials to be maintained by the chairperson of the judicial screening committee.(*Id*. at Rule 30).

114.    Upon information and belief, the Judicial Screening Committee disregarded its own confidentiality rules mandating the collection and destruction of all confidential materials concerning screening candidates, including Plaintiff, and instead of only the chairperson maintaining a single copy, all or many copies were permitted to stay in multiple hands, free from mandatory destruction. (*Id*.).

115.    In accordance with the rules of the Judicial Screening Committee, and given Plaintiff's Rule 31.b withdrawal, the only person who could lawfully have had access to the confidential materials concerning the judicial screening of Plaintiff at the time of their improper and unconstitutional disclosure to the *New York Post* was defendant Edelman as chairperson of the Judicial Screening Committee. (*Id.*  at Rule 30). However, even defendant Edelman could not disclose confidential material. Yet, the New York Post cited multiple sources. (Exs. 18-19).

116.    Pursuant to the defendants' Rules, the only people who could lawfully ever have access to the determinations of defendant Judicial Screening Committee were the members of that committee, including defendants Edelman, Finkelstein, Decker and Ajaiyeoba. As to the Executive Committee of defendant KCDCC, including its chairperson defendant Seddio, they were entitled only to a written report of which candidates were found "Qualified," which were found "Not qualified at this time"and a list of candidates "recommended" for each judicial vacancy. But, unlike her Comparators, who also exercised their Rule 31.b right to withdraw to avoid any publication by Edelman to the KCDCC, the

Plaintiff, as a Class of One, had her confidential information improperly disclosed and published. (Ex. 8 at ¶ 2).

117.    The defendants falsely told the *New York Post* that Plaintiff had been found "Unqualified" by the Judicial Screening Committee - a designation that does not even exist. In addition, pursuant to Rule 10, Plaintiff was "Qualified" even if not "Recommended" if more than 75% of a quorum voted against her.

118.    Based on the false and misleading information maliciously and vindictively supplied by the defendants, acting under color of law, the *New York Post* reported in print and on the internet that the defendants had found Plaintiff "Unqualified." (Exs.18-19).

119.    Based on the information supplied by the defendants, acting under color of law, the *New York Post* reported in print and on the internet that:

    a.    Plaintiff was "disliked;"

    b.    Plaintiff "has a poor reputation;"

    c.    Plaintiff was considered "judicially mediocre;"

    d.    the Judicial Screening Committee "looked at [plaintiff's] track record, and they found an abnormal percentage of cases were overturned by higher courts;"[22]

    e.    Plaintiff "lacked" a "work ethic;"

---

[22]Plaintiff did not have an "abnormal percentage of cases [that] were overturned by higher courts." Nor was Plaintiff "reversed on appeal at least 57 times in the past decade." On the contrary, of the many thousands of orders that Plaintiff has issued "in the past decade" (since 2006), in the range of approximately 4000, only an infinitesimal amount were appealed, and only a fraction of those appeals resulted in reversals!

      f.     "It's that kind of work ethic — or lack thereof — that helped convince the county Democratic Party's Judicial Screening Committee last month that Jacobson is unqualified to run on the party line in November."

(Exs. 18-19).

120.    The defendants further falsely informed the *New York Post* that Judge Jacobson failed to come to work on July 14, 2016.

121.    Based on the information supplied by the defendants, acting under color of law, the *New York Post* reported in print and on the internet that and that she "only had three cases on her docket for the day but adjourned everything, sending out alerts to all the parties telling them not to bother showing up" (Ex. 19).

122.    This report was similarly false. Plaintiff did come to work on July 14, 2016 and had a single case calendared for that day. *Savane, et. al. v. Osei, et. al.*, Index No. 23894/2006.[23]

123.    In addition to these false statements, the defendants also divulged confidential information about the Judicial Screening Committee's processes with respect to Plaintiff to personnel with the *New York Post*.

---

[23]One of three law firms, that represented parties on the case, did not timely appear in court that day. After Plaintiff, and the other attorneys who did appear, waited for the missing attorney and unsuccessfully tried to reach that lawyer by phone, a re-trial date was set with the attorney's present agreeing to check with the missing attorney if there were any problems with the chosen date. Indeed, in the exercise of compassionate judicial discretion, in the truest desire for justice and resolution of disputes on the merits, Plaintiff did not enter judgment against the party whose counsel failed to appear without excuse or explanation, despite being authorized to do so. *See*, 22 NYCRR 202.27.

124.   The defendants assured Plaintiff that the contents of and proceedings about the Judicial Screening Committee questionnaire she completed were to remain completely and strictly confidential.

125.   Plaintiff relied to her detriment on such assurances of confidentiality.

126.   Despite their own rules requiring confidentiality in the judicial screening process, the Judicial Screening Committee and its member defendants, including Edelman, Finkelstein, Decker and Ajaiyeoba, acting under color of law, disclosed to other defendants, Seddio and KCDCC, and others that Plaintiff had a "lackadaisical attitude in filling out a required questionnaire."

127.   The defendants falsely informed personnel with the *New York Post* that Judge Jacobson had a "lackadaisical attitude in filling out a required questionnaire."

128.   Plaintiff did not have a "lackadaisical attitude in filling out a required questionnaire" and that representation by the defendants to the *New York Post* was false when made - and known to be false - hence <u>fraud upon the *New York Post*</u> to obtain non-attribution for quotes - which releases the *New York Post* from its contract of non-disclosure of source-identity.

129.   Even if the representations made by the defendants to the *New York Post* were true, which they are not, it is still a breach of the confidentiality of the process that the defendants assured Plaintiff and all other candidates for judicial screening, plus to Plaintiff pursuant to Rule 31.b.

130.    In violation of their own rules, while acting under color of law, the defendants provided confidential information pertaining to the screening of Plaintiff to one or more "sources" outside of the Judicial Screening Committee and the Executive Committee of the KCDCC, including personnel with the *New York Post*.

131.    Under color of law, the individual defendants provided confidential information pertaining to the screening of Plaintiff to George Artz and personnel with the *New York Post* intending that it would be published.

132.    Under color of law, the defendants provided confidential information pertaining to the screening of Plaintiff to George Artz and to personnel with the *New York Post* with the intention of harming Plaintiff. - and they succeeded in subjecting Plaintiff to massive professional and personal ridicule, humiliation and injury.

133.    Under color of law, the defendants provided confidential information pertaining to the screening of Plaintiff to George Artz and to personnel with the *New York Post* intending that the dissemination of such information would be harmful to Plaintiff's personal and professional reputation.

134.    In an effort to cause maximum exposure of the improperly disclosed confidential information and materials concerning Plaintiff and her judicial screening, the defendants, acting under color of law, individually and collectively released confidential information to George Artz and to the *New York Post* intending that it be published in print and on the internet.

135.    False, misleading and confidential information about Plaintiff that was obtained by the defendants under color of law as a result of the judicial screening process, and of which under color of law they assured Plaintiff of absolute confidentiality, was disseminated by the defendants to the *New York Post* so that they would publish same in print and on the internet. Such improper disclosures were made by the defendants acting under color of law.

136.    The *New York Post* did publish the false, misleading and confidential information about Plaintiff that the defendants disclosed to them (Exs. 18-19).

137.    The defendants treated Plaintiff differently than her Comparators, out of malice, vindictiveness and in retaliation

138.    Rule 10 Incumbent Judge "Class of One": The defendants treated Plaintiff differently than other similarly situated incumbent judges being screened by the Judicial Screening Committee for the nomination and endorsement of the KCDCC, out of malice, vindictiveness and in retaliation, in that only Plaintiff, as a Rule 10 "Class of One,"  was denied her mandatory "Qualified" rating pursuant to Rule 10, while her 2016 incumbent-Comparators, Hon Mark Partnow and Hon. Leon Ruchelsman, were granted their "Qualified" rating. Additional Comparators, known to the defendants, were all granted their incumbent Rule 10-Qualified rating.

139.   <u>Incumbent-Comparators</u>: The two other incumbent elected justices of the Supreme Court being screened by the Judicial Screening Committee in 2016 for the nomination and endorsement of the KCDCC were Hon. Mark Partnow and Hon. Leon Ruchelsman.

140.   The defendants treated Plaintiff differently than other similarly situated incumbent-elected-justices of the Supreme Court being screened by the Judicial Screening Committee for the nomination and endorsement of the KCDCC, out of malice, vindictiveness and in retaliation.

141.   Apart from Plaintiff, two other incumbent elected justices of the Supreme Court were being screened by the Judicial Screening Committee for the nomination and endorsement of the KCDCC: Hon. Mark Partnow and Hon. Leon Ruchelsman.

142.   <u>Rule 10 Incumbent-Comparator # 1</u>: Plaintiff is similarly situated to Hon. Mark Partnow as they have both served as elected Justices of the Supreme Court sitting in the Civil Term of Kings County since 2003 and they have similar experiences prior to serving as elected judges, including service as Court Attorneys to then sitting justices of the Supreme Court.

143.   <u>Rule 10 Incumbent-Comparator # 2</u>: Plaintiff is similarly situated to Hon. Leon Ruchelsman as they have both served as elected Justices of the Supreme Court sitting in the Civil Term of Kings County since 2003, they had both been elected to the Civil Court of the City of New York and they have similar experiences prior to serving as elected judges, including service as Court Attorneys to then sitting judges.

144.    Despite Plaintiff being identical to Judges Partnow and Ruchelsman, in all relevant respects, as an "incumbent" judge seeking her own office, pursuant to Rule 10, the defendants only violated the Rule 10 mandatory provision of a "Qualified" finding for Plaintiff and gave her a "Not qualified" rating that does not even exist in Rule 9 for anybody.

145.    The defendants' malice and vindictiveness was so extreme that they violated Rule 31.b and released confidential information about Plaintiff to the public and the media.

- Counsel to the Kings County Public Administrator Who Sits on the Screening Committee and Had His Fee Demands Reduced by Plaintiff - Poisoned the Screening Process

146.    Amongst her many responsibilities as Acting Surrogate, Plaintiff has to review, assess and make determinations about applications for counsel fees associated with matters pending in the Kings County Surrogate's Court.

147.    Included amongst the parties who would apply to the Surrogate's Court for counsel fees was counsel for the Kings County Public Administrator. *See, e.g.*, N.Y. Surrogate's Court Procedure Act Law §§ 1108, 1123(5), 2110, 2301, 2302; N.Y. Estate Powers & Trust Law § 11-1.1; 22 NYCRR 207.45.

148.    Steven R. Finkelstein, Esq. serves as counsel to the Kings County Public Administrator and had been re-appointed to that position in 2006 by defendant Seddio who was then Surrogate.

149.    Steven R. Finkelstein, Esq. serves on the Judicial Screening Committee as the designated representative of the 42nd, 58th and 60th Assembly Districts.

150.    In his capacity as counsel to the Public Administrator, Steven R. Finkelstein, Esq. frequently appeared before Plaintiff in her capacity as Acting Surrogate.

151.    In his capacity as counsel to the Public Administrator, Steven R. Finkelstein, Esq. proffered counsel fee demands that were determined to be excessive as he often sought the maximum fee when little or no work had been done. Plaintiff, in her capacity as Acting Surrogate, issued Orders reducing the counsel fees payable to Mr. Finkelstein in his capacity as counsel to the Public Administrator. (Ex. 6). These Orders include a mandate to refund fees collected in advance by former counsel to the Public Administrator, Louis Rosenthal.

152.    In retaliatory, malicious and vindictive retribution for Plaintiff's prior proper exercise of judicial discretion and independence in protecting the beneficiaries of decedents, Steven R. Finkelstein, Esq. abused his position on the Judicial Screening Committee and aided, abetted and conspired with defendants Seddio, Edelman, members of the KCDCC, members of the Judicial Screening Committee, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants in an effort to deprive Plaintiff of equal protection of the law and of mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee, in an effort to maliciously and vindictively inflict maximum personal and professional retaliatory harm to Plaintiff, and chill judicial independence of all other serving judges who don't "obey" political demands or whims.

153.    Because of Plaintiff's prior proper exercise of judicial discretion and independence, and refusal to "rubber stamp" attorney's fee applications submitted by Mr. Finkelstein in his capacity as counsel to the Public Administrator, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including KCDCC's media consultant George Artz, agreed to maliciously and vindictively destroy Plaintiff personally and professionally. This conspiracy was carried out by  performance of overt acts including:

      i.    violating the mandatory and non-discretionary Rules of the KCDCC;

      ii.    violating the mandatory and non-discretionary Rules and procedures of the Judicial Screening Committee; and,

      iii.    breaching the mandatory and non-discretionary strict confidentiality of the judicial screening process concerning Plaintiff and inflating the defamation falsely and fraudulently for maximum injury to Plaintiff.

154.    Because of Plaintiff's prior proper exercise of judicial discretion and independence, and refusal to "rubber stamp" attorney's fee applications submitted by Mr. Finkelstein in his capacity as counsel to the Public Administrator, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including KCDCC media consultant George Artz, did violate the mandatory and non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee.

155.    Because of Plaintiff's prior proper exercise of judicial discretion and independence, and refusal to "rubber stamp" attorney's fee applications submitted by Mr. Finkelstein in his capacity as counsel to the Public Administrator, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including KCDCC media consultant George Artz, did publically disseminate confidential information obtained from and about Plaintiff which information was obtained solely as a result of the judicial screening process.

- **Plaintiff Angered Edelman Years Prior, in Ruling Against Edelman in an Attorney's Fee Sharing Dispute, Before Edelman Became Chair of the Judicial Screening Committee**

156.    In or about 2005, Edelman appeared in Plaintiff's courtroom with motion counsel present, seeking an Order from Plaintiff to compel another attorney to pay Edelman's firm a "1/3 referral fee."

157.    Edelman alleged that he had "referred" a contingency case and upon a successful result in that case said referred-lawyer refused to pay Edelman "his 1/3 referral fee."

64

158. In assessing the matter, Plaintiff learned that Edelman had done no work on the case beyond the referral. Accordingly, Plaintiff ruled against Edelman and his firm's fee-sharing application.[24]

159. Some years thereafter, while teaching CLE courses, Plaintiff learned that Edelman was, years after-the-fact, still upset and complaining to *inter alia*, attorney Gary Pillersdorf, a dean of the personal injury bar, who was running the CLE courses, about her then-years old fee-sharing Denial Order.

160. In retaliatory, malicious and vindictive retribution for Plaintiff's prior proper exercise of judicial discretion and independence by strictly observing Disciplinary Rules and Cannons of Ethics, Edelman abused his position and authority on the Judicial Screening Committee and aided, abetted and conspired with defendants Seddio, members of the KCDCC, members of the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants in an effort to deprive Plaintiff of equal protection of the law and of mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee, in an effort to maliciously and vindictively inflict maximum personal and professional retaliatory harm to Plaintiff, and chill judicial independence of all other serving judges who don't "obey" political demands or whims.

---

[24]Currently, New York State Rules of Professional Conduct Rule 1.5(g). Previously, DR-2-107.

161.     Because of Plaintiff's prior proper exercise of judicial discretion and
independence, and refusal to "rubber stamp" attorney's fee applications submitted by
Edelman, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee,
Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants,
including KCDCC's media consultant George Artz, agreed to maliciously and vindictively
destroy Plaintiff personally and professionally. This conspiracy was carried out by
performance of overt acts including:

       i.     violating the mandatory and non-discretionary Rules of the KCDCC;

       ii.     violating the mandatory and non-discretionary Rules and procedures
of the Judicial Screening Committee; and,

       iii.     breaching the mandatory and non-discretionary strict confidentiality
of the judicial screening process concerning Plaintiff and inflating the defamation falsely
and fraudulently for maximum injury to Plaintiff.

162.     Because of Plaintiff's prior proper exercise of judicial discretion and
independence, and refusal to "rubber stamp" attorney's fee applications submitted by
Edelman, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee,
Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants,
including KCDCC media consultant George Artz, did violate the mandatory and non-
discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee.

163.    Because of Plaintiff's prior proper exercise of judicial discretion and Independence, and refusal to "rubber stamp" attorney's fee applications submitted by Edelman, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including KCDCC media consultant George Artz, did publically disseminate confidential information obtained from and about Plaintiff which information was obtained solely as a result of the judicial screening process.

> ● **Plaintiff Failed to Rule in Favor of a Party Represented by Defendant Seddio's Former Law Partner and Current Counsel to Defendant Seddio as County Chair of the KCDCC (Long Island College Hospital ["LICH"]; Frank V. Carone, Esq.)**

164.    On August 27, 2014, Plaintiff was assigned to hear emergency applications, Orders to Show Cause and *ex parte* applications in Kings County Supreme Court.

165.    One of the matters that was presented to Plaintiff was a proposed Order to Show Cause brought by The New York State Nurses Association seeking to, *inter alia*, enjoin the State University of New York ("SUNY") from taking actions inconsistent with a "Court-ordered Settlement Agreement entered on February 25, 2014."

166.    The underlying matter, captioned as *The New York State Nurses Association, et. al. v. New York State Department of Health, et. al.*, Index No. 5814/2013, involved, *inter alia*, contests to the sale of Long Island College Hospital ("LICH") and efforts to

ensure continued employment of nurses then employed at LICH and the continued provision of emergency medicine services which were being provided by LICH.

167.    Appearing for SUNY, in opposition to the relief sought, was Frank V. Carone, Esq. of Abrams, Fensterman, Fensterman, Eiseman, Formato, Ferrara & Wolf, LLP ("Abrams Fensterman").

168.    Mr. Carone was then  the law partner of defendant Seddio in the Professional Service Limited Liability Company Seddio & Carone PLLC. Upon information and belief, based upon the records of the New York State Department of State, Division of Corporations, that law practice was formed on May 30, 2008 and functioned through its dissolution on December 10, 2014. (Ex. 4).

169.    Both Mr. Carone and defendant Seddio reportedly took their practices and joined them with partnerships at Abrams Fensterman.

170.    Defendant Seddio stopped practicing law with Abrams Fensterman.

171.    In addition to his partnership with Abrams Fensterman, Mr. Carone also serves as Counsel to the County Chair of the KCDCC.

172.    Defendant Seddio is the County Chair of the KCDCC. Accordingly, Mr. Carone is defendant Seddio's counsel.

173.    Mr. Carone has also been, and may still be, the chairperson of the "Law Committee" of defendant KCDCC.

174.    After vigorous oral argument before Plaintiff on August 27, 2014,

wherein Mr. Carone insited that Plaintiff not enjoin SUNY, Plaintiff issued an Order With

Temporary Restraining Order solely to preserve the *status quo* for the brief period until

September 12, 2014. Mr. Carone agreed to the form of this Order, though not the result.

(Ex. 5).

175.    Subsequent to argument before Plaintiff, The New York State Nurses

Association apparently changed its position and sought relief not contemplated by the

papers considered by Plaintiff on August 27, 2014. Accordingly, on September 29, 2014,

Hon. Johnny Lee Baynes, the justice of the Supreme Court assigned to matter, issued an

Interim Order denying The New York State Nurses Association's application procedurally

and substantively. (Ex. 5). These filings with the Kings County Clerk also included

electronic mail communications between Mr. Carone and counsel for The New York State

Nurses Association. (*Id.*).

176.    Retaliatory, Vindictive and Malicious Deprivation of Plaintiff's Right to

"Equal Protection of Law"! In retribution for Plaintiff's prior proper exercise of judicial

discretion and independence which was inconsistent with the desires of Mr. Carone who is

defendant Seddio's counsel and was Seddio's law partner, defendants Edelman and Decker

abused their positions on the Judicial Screening Committee and defendant Seddio abused

his position as County Chair of the KCDCC and aided, abetted and conspired with members

of the Executive Committee of defendant KCDCC, members of the Judicial Screening

Committee, defendant Ajaiyeoba, defendants John and Jane Does and others not named as

defendants, including Mr. Carone, in an effort to deprive Plaintiff of "equal protection of the law" by violating mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee, in an effort to maliciously and vindictively inflict maximum personal and professional harm to Plaintiff.

177.    Because of Plaintiff's proper exercise of judicial discretion and independence, and refusal to judicially endorse Mr. Carone's opposition to maintaining the status quo of keeping a hospital emergency department open while keeping a discrete number of nurses employed, defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, John and Jane Does, members of the Executive Committee of defendant KCDCC, members of defendant Judicial Screening Committee and others not named as defendants agreed to maliciously and vindictively destroy Plaintiff personally and professionally by denying her equal protection of mandatory, non-discretionary Rules and Procedures of KCDCC and the Judicial Screening Committee. This conspiracy was carried out by performance of overt acts including:

       i.    violating the mandatory and non-discretionary Rules of the Kings County Democratic County Committee;

       ii.    violating the mandatory and non-discretionary Rules and procedures of the Judicial Screening Committee; and,

       iii.    breaching the mandatory and non-discretionary strict confidentiality of the judicial screening process concerning Plaintiff and inflating the defamation falsely and fraudulently for maximum injury to Plaintiff.

178.   Because of Plaintiff's prior proper exercise of judicial discretion and independence, and refusal to judicially endorse Mr. Carone's opposition to maintaining the *status quo* of keeping a hospital emergency department open while keeping a discrete number of nurses employed, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba ,John and Jane Does and others not named as defendants, including defendant KCDCC's media consultant George Artz,  did violate the mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee.

179.   Because of Plaintiff's prior proper exercise of judicial discretion and independence, and refusal to judicially endorse Mr. Carone's opposition to maintaining the then *status quo* of keeping a hospital emergency department open while keeping a discrete number of nurses employed, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba ,John and Jane Does and others not named as defendants, including defendant KCDCC's media consultant George Artz, did publically disseminate confidential information obtained from and about Plaintiff which information was obtained solely as a result of the "strictly confidential" judicial screening process.

- Plaintiff's Determinations in Foreclosure Actions Honored New York State Public Policy to Disincentivize Real Estate Foreclosures

180.   As part of Plaintiff's duties as a Justice of the Supreme Court, she was assigned a docket of residential foreclosure actions.

181.    Since the mortgage foreclosure crisis, New York State and its Office of Court Administration have taken affirmative positions trying to keep homeowners within their residences.

182.    For example, in 2008, the New York State legislature amended the N.Y. Civil Practice Law and Rules to include C.P.L.R. Rule 3408, entitled "Mandatory settlement conference in residential foreclosure actions."  These Rules require good faith negotiations by the lender and homeowner in residential foreclosure actions with a stated

> purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate.

C.P.L.R. Rule 3408(a). *See also*, 22 NYCRR 202.12-a.

183.    Additionally, New York State enacted other laws designed to protect homeowners in the mortgage foreclosure process. For instance, N.Y. Real Property Actions and Proceedings Law was amended in 2008 to add R.P.A.P.L. § 1404, which, in pertinent part, mandates certain specific notices that must be provided to a homeowner before the lender can take legal action against them. In 2006, the New York State legislature added  R.P.A.P.L. § 1403, which, in pertinent part also mandates specific notices be provided to a residential borrower in advance of foreclosure.

184.    Notably, as protection of homeowners has become paramount, New York State Appellate Courts have held that strict compliance with R.P.A.P.L. §§ 1403 and 1404 are conditions precedent to a lender bringing a residential foreclosure action.

185.    In addition to legislative action, the Rules of the Chief Judge of the state of New York require that attorneys prosecuting residential foreclosure actions file an affirmation as to the accuracy of the documents relied upon. *See, e,.g.*, 22 NYCRR 202.12-a(f); Chief Judge Admin. Ord. 584–10 (Oct. 20, 2010).

186.    Plaintiff's judicial service was always independent and apolitical, and honored the strong public policy against residential foreclosure.

187.    Mortgage lenders have provided significant financial support to the Kings County Democratic County Committee and its fundraising.

188.    Defendant Seddio has worked for and frequently represented lenders.

189.    In or about 2007, prior to forming Seddio & Carone PLLC with Mr. Carone, defendant Seddio was a Vice President at Wall Street Mortgage Bankers, Ltd. d/b/a Power Express.

190.    Power Express maintains its principal place of business at 1111 Marcus Avenue, Lake Success, New York - the same building where Abrams Fensterman's main offices are located.

191.    Defendant Seddio's counsel, Mr. Carone, is on the Advisory Board of the New York League of Independent Bankers and a member of the Board of Hanover Community Bank.

192.    Mr. Carone had also previously founded a mortgage lending bank which provided services in multiple states.

193.    Amongst the areas of practice that Abrams Fensterman holds Mr. Carone out as practicing is "Banking & Mortgage Compliance." Moreover, the profile on Mr. Carone published by Abrams Fensterman refers to his membership in "The American Association of Bank Directors." *See*, Abrams Fensterman, Frank V. Carone, Executive Partner, *available at* http://www.abramslaw.com/frank_carone_attorney_profile_id_1012, *last accessed* Aug. 25, 2016.

194.    Banks and lenders have significant influence over the KCDCC - which is directly at odds with New York State public policy enacted as laws or regulations.

195.    Based on the facts and law presented to her, some of Plaintiff's decisions on residential foreclosure actions have been for the homeowner, procedurally, substantively or both - to the annoyance of the Kings County Democratic Party leaders and their favored lenders. Upon information and belief, defendant Seddio has "appointed" one, or more, attorneys who specialized in bringing  foreclosure actions by banks and lenders to become "Law Clerk" or "Law Secretary" to Justices of the Supreme Court in Kings County Supreme Court dealing with foreclosure actions - including, Justice Sherman - whose mother, Roberta Sherman, was a co-District Leader with Frank Seddio of the Thomas Jefferson Democratic Club. Currently, Sue Ann Partnow, wife of Justice Partnow, is Frank Seddio's co-District Leader (each Assembly District has a male and female District Leader - as part of the New York State Democratic Party).

74

196.    In retribution for Plaintiff's proper exercise of judicial discretion and independence which was inconsistent with the desires of Mr. Seddio, Mr. Carone and mortgage lenders who are favored by and exercise influence over the KCDCC, defendants Edelman and Decker abused their positions on the Judicial Screening Committee and defendant Seddio abused his position as County Chair of the KCDCC and aided, abetted and conspired with Edelman, Decker, Finkelstein, Ajaiyeoba, John and Jane Does and others not named as defendants, including members of the Executive Committee of defendant KCDCC, members of the Judicial Screening Committee and  Mr. Carone, in an effort to deprive Plaintiff of "equal protection of the law" - mandatory, non-discretionary Rules and Procedures of the KCDCC and Judicial Screening Committee, in a malicious and vindictive effort to  inflict maximum personal and professional harm to Plaintiff - so as to chill every other judge serving in Kings County and elsewhere in New York to not exercise judicial independence.

197.    Because of Plaintiff's proper prior exercise of judicial discretion and independence, and refusal to "rubber stamp" approvals of residential mortgage foreclosures, as desired by Mr. Seddio, Mr. Carone and mortgage lenders who are favored by and exercise influence over the KCDCC, defendants Seddio, Edelman, KCDCC, the Judicial Screening Committee, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including members of the Executive Committee of the KCDCC and members of the Judicial Screening Committee agreed to:

        i.       violate the mandatory and non-discretionary Rules of the KCDCC;

ii.    violate the mandatory and non-discretionary Rules and procedures of the Judicial Screening Committee; and,

iii.    breach the mandatory and non-discretionary strict confidentiality of the judicial screening process concerning Plaintiff and inflating the defamation falsely and fraudulently for maximum injury to Plaintiff.

198.    These violations and breaches occurred against Plaintiff, as a "Class of One," while Plaintiff's Comparators got the maximum benefit of such Rules and Procedures. And, with respect to incumbency Rule 10, Plaintiff, again, as a discrete "Class of One" was denied compliance with mandatory, non-discretionary Rules and Procedures of KCDCC and the Judicial Screening Committee, while her Comparators, Justices Partnow and Ruchelsman, received the full and complete protection of all mandatory, non-discretionary Rules and Procedures.

199.    Because of Plaintiff's proper prior exercise of judicial discretion and independence, and refusal to "rubber stamp" approvals of residential mortgage foreclosures, as desired by Mr. Seddio, Mr. Carone and mortgage lenders who are favored by and exercise influence over the KCDCC, defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, John and Jane Does and others not named as defendants, including members of the Executive Committee of the KCDCC and members of the Judicial Screening Committee, did:

i.    violate the mandatory and non-discretionary Rules of the KCDCC;

76

ii.    violate the mandatory and non-discretionary Rules and procedures of

the Judicial Screening Committee; and,

iii.    breach the mandatory and non-discretionary strict confidentiality of

the judicial screening process concerning Plaintiff and inflating the defamation falsely and

fraudulently for maximum injury to Plaintiff.

### First Count

### Violation of Equal Protection of the Law
(Against All Defendants)

200.    Plaintiff repeats and re-alleges all of the allegations contained in the

preceding paragraphs as though they have been restated in full herein for the totality of the

First Count, Count 1-A -1-D.

201.    On February 23, 2016, Plaintiff applied to KCDCC and Hon. Frank R.

Seddio's Judicial Screening Committee, chaired by Manhattan attorney Martin R. Edelman

(Edelman), which Judicial Screening Committee is also known as the "Edelman

Committee," to be discretionarily[25] rated "Qualified" and being "Recommended" to

KCDCC. The Judicial Screening Committee's predicate "qualified" and "recommended" is

a mandatory condition precedent to KCDCC's Executive Committee considering and

---

[25]This lawsuit does not challenge the constitutional right of KCDCC, Judicial Screening Committee, or any of the other defendants, <u>not</u> to easily find her Qualified and Recommended, and then re-nominate her at the KCDCC's NYS Judicial Convention in September 2016 for a further term of 14 years as a Justice of NYS Supreme court. The late great Justice Scalia held eloquently upheld the right of [politicians] to be "stupid but constitutional." New York Magazine 10/6/2013. Also, see *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008),

approving anyone to be voted up by KCDCC's Executive Committee and be on KCDCC's slate of Nominees to be presented at the New York State Judicial Convention held in and for the 2nd Judicial District pursuant to state law. (*See, e.g.*, N.Y. Election Law § 6-124).

202.    On May 26, 2016, Plaintiff was informed *inter alia* by the Edelman Letter, dated May 26, 2016, (and which enclosed a 1-page copy of Rules 31(a)-(e)),  that the Judicial Screening Committee "has found you Not Qualified[26] and will not be recommending you for another term as Justice of the Supreme Court." Said Letter continued in ¶2 of her right to appeal, and in ¶3 "...you may avoid a negative publication if you withdraw your candidacy unequivacally and with prejudice. If you choose to exercise this option we will need to be informed in writing on or before Friday, June 3, 2016 by 5:00p.m." (Ex. 14).

203.    Plaintiff  Comparators, who are  identical for all relevant purposes to plaintiff:

a.    Applied to Judicial Screening Committee for consideration to be approved and recommended to KCDCC for nomination or re-nomination for Justice of the Supreme Court;

---

[26]In direct violation of Judicial Screening Committee Rules that required a lesser insult by including a temporal-limitation in the rejection: "Not qualified at this time"). The Letter, therefore, in violation of Rule 9, inflates the defamatory-injury to Plaintiff as part of the intentional vindictive actions by defendants.

b.      voted down by the Judicial Screening Committee as "Not Qualified At This Time" with or without an appeal;[27] and,

c.      withdrew their candidacies in writing in accordance with Rule 31.b ( "Candidate shall ... withdraw his/her candidacy unequivocally and with prejudice to avoid publication of the Committee's findings" per Judicial Screening Committee Rule 31(b), as amended January 23, 2012).

204.    The defendants, motivated by their malice, vindictiveness and in retaliation for Plaintiff's prior proper judicial actions and independence, violated mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee in an effort to maliciously and vindictively destroy, defame and injure Plaintiff, including:

a.      **Judicial Screening Committee Procedures** (Ex. 8):

i.      **Procedure 1**, mandating that the Judicial Screening Committee shall only find a candidate "Qualified" or "Not qualified at this time." The defendants, however, in violation of this Procedure reported that Plaintiff was found "Not qualified" and "Unqualified" - statuses that do not exist;

---

[27] Judicial Screening Committee Rule 9, as amended January 23, 2012, states: "The panel shall judge each candidate as either '*Qualified*' or '*Not qualified at this time*.' *Of the Qualified Candidates the Panel shall report out a limited pool of recommended candidates based on the total number of vacancies for that judicial office* (i.e ., Civil, Supreme). The total pool shall be five (5) individuals per vacancy for each type of judicial office. For the purposes of determining the size of the pool, incumbent's seats shall be included." (***Emphasis added***).

ii.      **Procedure 11**, mandating that no member of the KCDCC

Executive Committee may communicate with any member of the Judicial Screening

Committee regarding the candidacy of any applicant for judicial screening. However, on

May 19, 2016 defendant Seddio made it known to Plaintiff at the KCDCC dinner that he

had been in communication with the Judicial Screening Committee, and had knowledge of

Plaintiff's Sub-Committee interview, in violation of this Procedure;

iii.      **Procedure 13**, mandating uniformity in the application of

Rules by the Judicial Screening Committee "upon which all such evaluations shall be

based." However, with respect to Plaintiff, the defendants violated and breached Procedure

13 throughout the entirety of the judicial screening process by not evaluating her

application in accordance with those mandatory, non-discretionary Rules and Procedures;

b.      **Judicial Screening Committee Rules** (Ex. 9):

i.      **Rule 3**, mandating Recusals; however, defendants Edelman and

Finkelstein, who had grounds to recuse themselves failed to do so, and Edelman continued

to Chair Plaintiff's screening by the Judicial Screening Committee;

ii.      **Rule 9** and **Rule 22**, mandating that the only ratings that the

Judicial Screening Committee may issue are "Qualified" or "Not qualified at this time." The

defendants, however, in violation of this Rule reported that Plaintiff was rated "Not

qualified" and "Unqualified" - rating statuses that do not exist. Indeed, by his letter of May

26, 2016, Edelman specifically attests that Plaintiff was rated "Not qualified" (Ex. 14);

iii.     **Rule 10**, mandating that an incumbent judge shall be found "Qualified."  The defendants, however, in violation of this Rule reported that Plaintiff was rated "Not qualified" and "Unqualified" - rating statuses that do not exist. Indeed, by his letter of May 26, 2016, Edelman specifically attests that Plaintiff was rated "Not qualified" (Ex. 14), despite the mandate of Rule 10 which applied to Plaintiff as a then incumbent, duly elected, sitting Justice of the Supreme Court;

iv.     **Rule 13**, mandating that all proceedings and investigative reports of the Judicial Screening Committee "**shall be treated as strictly confidential**" (**emphasis in original**). However, the defendants violated and breached Rule 13 by impermissibly publishing and disseminating confidential information concerning Plaintiff to the KCDCC, members of the public and members of the press, including the *New York Post*;

v.     **Rule 16**, mandating that the Judicial Screening Committee Report to the Executive Committee of KCDCC may only report candidates as "Qualified" or "Not qualified at this time." The defendants, however, in violation of this Procedure reported that Plaintiff was found "Not qualified" and "Unqualified" - statuses that do not exist - and in disregard of the Rule 10 mandate that Plaintiff, as an incumbent Justice of the Supreme Court, be reported as "Qualified." In addition, given Plaintiff's Rule 31.b withdrawal, nothing was to be reported to anyone about the Plaintiff.

vi.     **Rule 17**, mandating strict confidentiality of the entire judicial screening process, and the destruction of documents. However, the defendants failed to

maintain strict confidentiality with respect to the Plaintiff's application and instead impermissibly published confidential information to the KCDCC, members of the public and members of the media, including the New York Post which published articles based on that confidential information both in print and online;

vii. **Rule 20**, mandating that if the investigating Sub-Committee has "areas of concern" they must give oral and written notice to the applicant concerning such "areas of concern." The defendants, however, failed to provide Plaintiff with such oral or written notice, despite the mandatory nature of the Rule, all to enable Plaintiff to be ambushed before the Judicial Screening Committee;

viii. **Rule 30**, mandating strict confidentiality of the entire judicial screening process, and the destruction of documents. However, the defendants failed to maintain strict confidentiality with respect to the Plaintiff's application and instead impermissibly published confidential information to the KCDCC, members of the public and members of the media, including the *New York Post* which published articles based on that confidential information both in print and online;

ix. **Rule 31.b**, mandating that an applicant who appeals a Judicial Screening Committee finding is entitled to two business days after the determination of the appeal to withdraw their application in exchange for a mandatory, non-discretionary avoidance of any publication of the Judicial Screening Committee's findings. The defendants, however, disregarded the Plaintiff's timely withdrawal, in compliance with the Rules, including as referenced by defendant Edelman, and published the findings of the

Judicial Screening Committee to the KCDCC, members of the public and members of the media, including the *New York Post* which published articles based on that confidential information both in print and online.

205.   Plaintiff constituted and constitutes a "class of one" within the meaning of the Equal Protection Clause of the 14th Amendment to the United States Constitution - as to the defendants' malicious, vindictive and retaliatory violations and breaches of mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee. All of such violations and breaches were done to injure Plaintiff, but were honored for all of her Comparators - per each one of the four "Class of One" claims.

<u>Count 1-A</u>.   The Defendants Deprived Plaintiff of Equal Protection by Violations and Breaches of Rule 31.b

206.   **Rule 31.b Comparators**. By releasing confidential information pertaining to the judicial screening process concerning Plaintiff, defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker,  Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated applicants, who, exactly like Plaintiff, exercised their Rule 31.b right to withdraw their Judicial Screening Committee application to avoid publication of any of the Judicial Screening Committee's findings, namely:

     i.      1. DS;

     ii.     2. MG;

     iii.    3. BW;

83

iv.     4. LS;

v.     5. JE;

vi.     6. RS; and,

vii.     7. AB.

207.     Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB had all applied to the Judicial Screening Committee for recommendation, nomination of and endorsement by defendant KCDCC for Justice of the Supreme Court.[28]

208.     Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB were all not found "Qualified" by the Judicial Screening Committee.

209.     Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB all exercised their rights in accordance with **Rule 31.b** to withdraw their application to avoid any reporting of the Judicial Screening Committee's findings and

---

[28]Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB:

    i.     all met the minimum non-discretionary statutory requirements to serve as a Justice of the Supreme Court;

    ii.     were all assigned to a Sub-Committee of the Judicial Screening Committee for further investigation and review, in accordance with the Rules and Procedures of the Judicial Screening Committee;

    iii.     all appeared before their respective Sub-Committee of the Judicial Screening Committee and were interviewed, in accordance with the Rules and Procedures of the Judicial Screening Committee;

    iv.     all appeared before the Judicial Screening Committee for an interview by defendant Edelman as Chair, Sub-Committee and Committee membership, after having appeared before their respective Sub-Committees.

determinations - and none of the Comparators confidential information was publicly released and none was reported to the Executive Committee of the KCDCC per Rule 16.

210.   Notwithstanding Plaintiff withdrawing her application, in accordance with Rule 31.b, the Judicial Screening Committee released its findings and determinations about Plaintiff to the Executive Committee of the KCDCC, the KCDCC, members of the public, and members of the media, including the *New York Post*.

211.   The Judicial Screening Committee did not report its findings and determinations about the Rule 31.b Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB to the Executive Committee of the KCDCC, and kept such information strictly confidential, as mandated by non-discretionary, mandatory governing Rules and Procedures.

212.   No rational person could regard the circumstances of Plaintiff's exercise of Rule 31.b to differ from those of Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB to justify the negative differential treatment of Plaintiff on the basis of any legitimate policy exercised under color of law.

213.   The similarity in circumstances and difference in treatment among Plaintiff, on the one hand, and Rule 31.b Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

<u>Count 1-B</u>.  The Defendants (Except Finkelstein) Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 20

214.    Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated candidates about whom the respective Sub-Committees had particular "areas of concern" and whom the defendants provided with Rule 20 notice of such particular "areas of concern."

215.    **Rule 20 Comparators**. By failing to provide Plaintiff with oral and written notice of particular "areas of concern" regarding her application, defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated applicants, who, the respective Sub-Committee had particular areas of concern, exactly like Plaintiff. Upon information and belief, the Plaintiff's Rule 20 Comparators are every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the respective Sub-Committee identified particular "areas of concern" with respect to their applications.

216.    Upon information and belief, each other Judicial Screening Committee applicant who had "areas of concern" identified by a Sub-Committee was provided with oral and written notice in accordance with Rule 20.

217.    Upon information and belief, the defendants provided the Rule 20 Comparators with

    i.      identification of "particular areas of concern";

    ii.     "written communication" that "detailed" any "areas of concern";

    iii.    an opportunity "to be prepared to address before the full Committee the areas of concern";

    iv.    Notice that they "may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues."

218.    Plaintiff was maliciously and vindictively treated differently than each of these Rule 20 Comparators in that with respect to the Plaintiff the defendants selectively violated and breached the mandatory, non-discretionary Judicial Screening Committee Rule 20, by failing to:

    i.      inform Plaintiff of "particular areas of concern";

    ii.     provide Plaintiff with "written communication" that "detailed" any "areas of concern";

    iii.    provide Plaintiff with an opportunity "to be prepared to address before the full Committee the areas of concern";

    iv.    "inform" Plaintiff that "she may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues."

219.    No rational person could regard the circumstances of Plaintiff' to differ from those of the Rule 20 Comparators as regards the application of the mandatory and non-discretionary notice and information provisions of Rule 20 so as to justify the negative differential treatment of Plaintiff on the basis of any legitimate policy exercised under color of law.

220.    The similarity in circumstances and difference in treatment among Plaintiff, on the one hand, and Rule 20 Comparators, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

<u>Count 1-C</u>.    The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 10; and/or

221.    **Rule 10 Comparators**: Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other identically situated incumbent Justices of the Supreme Court who were also applicants for consideration by the Judicial Screening Committee at the same time as Plaintiff:

i.      Hon. Mark Partnow;

ii.     Hon. Leon Ruchelsman.

222.    Plaintiff is identical to Justice Partnow and Ruchelsman in all material respects.

223.    Rule 10 mandated that any incumbent Justice of the Supreme Court be rated as "Qualified" by the Judicial Screening Committee.

88

224.    Exactly like Justices Partnow and Ruchelsman, Plaintiff was an incumbent Justice of the Supreme Court at the time of her application to and assessment by the Judicial Screening Committee.

225.    Justices Partnow and Ruchelsman were rated as "Qualified" from the outset of their respective 2016 Judicial Screening Committee applications, in accordance with Rule 10.

226.    Plaintiff was treated differently by the defendants, while acting under color of law, than her Rule 10 Comparators, Justices Partnow and Ruchelsman, in that Plaintiff was not deemed and rated "Qualified" as per the mandate of Rule 10, and, indeed, the Judicial Screening Committee improperly reported Plaintiff to be rated "Not Qualified" and "Unqualified" - rating statuses that do not even exist.

227.    No rational person could regard the circumstances of Plaintiff concerning the application of Rule 10, as a then sitting incumbent Justice of the Supreme Court, to differ from those of Justices Partnow and Ruchelsman to justify the negative differential treatment of plaintiff on the basis of a legitimate policy exercised under color of law.

228.    The similarity in circumstances and difference in treatment among plaintiff, on the one hand, and Justices Partnow and Ruchelsman, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

Count 1-D.    The Defendants Deprived Plaintiff of Equal
Protection by Violating and Breaching Rule 9

229.    Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman,

Finkelstein, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated

Plaintiff differently than all other applicants for consideration by the Judicial Screening

Committee. were also applicants for consideration by the Judicial Screening Committee.

230.    **Rule 9 Comparators**: The Plaintiff's Rule 9 Comparators are every other

applicant to appear before the Judicial Screening Committee during the period 2003

through 2016 whom the Judicial Screening Committee did not find "Qualified." The

Plaintiff is identical to every other applicant who was not found "Qualified" by the Judicial

Screening Committee as each such applicant cannot be "Recommended" for the nomination

or endorsement of the KCDCC for the judicial position they seek.

231.    Upon information and belief, every other applicant to appear before the

Judicial Screening Committee who was not found "Qualified" was rated "Not qualified at

this time" as mandated by, *inter alia*, Rule 9.

232.    There Rules and Procedures of the Judicial Screening Committee do not

permit any ratings other than "Qualified" and "Not qualified at this time."

233.    Plaintiff was the only applicant before the Judicial Screening Committee to

be reported as rated "Not qualified" and "Unqualified."

234.    Plaintiff was so reported notwithstanding the mandate of Rule 10 which

required that Plaintiff be deemed "Qualified."

235.    Plaintiff was treated differently by the defendants, while acting under color of law, than her Rule 9 Comparators, in that Plaintiff was not deemed and rated "Qualified" as per the mandate of Rule 10, and, indeed, the Judicial Screening Committee improperly further reported Plaintiff to be rated "Not Qualified" and "Unqualified" - rating statuses that do not even exist.

236.    No rational person could regard the circumstances of Plaintiff concerning the application of Rule 9, to differ from those of Plaintiff's Rule 9 Comparators to justify the negative differential treatment of plaintiff on the basis of a legitimate policy exercised under color of law.

237.    The similarity in circumstances and difference in treatment among plaintiff, on the one hand, and her Rule 9 Comparators, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

238.    The actions of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, were highly discriminatory, malicious, vindictive, unjust, improper and unconstitutional.

239.    The treatment of the plaintiff by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively was outrageous and shocking to the conscience.

240.    The conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, violated plaintiff's right to equal protection in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

241.    As a proximate result of the conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively and the violation of Plaintiff's constitutional rights, Plaintiff has been damaged.

242.    The amount of Plaintiff's damages is to be determined after trial, and should be in an amount not less than  $5,000,000.00 in compensatory damages, along with nominal damages of not less than $1.00.

243.    The outrageous and malicious conduct by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively , specifically intending to harm the plaintiff by a deprivation of her constitutional rights, further justifies an award of punitive damages to the plaintiff in the highest amount constitutionally permissible, as found by a fair, just and impartial jury.

244.    Plaintiff is also entitled to recover her attorneys' fees in this proceeding pursuant to 42 U.S.C. §1988.

**Second Count**

**Conspiracy to Violate Plaintiff's Equal Protection Rights**
**(Against All Defendants Except KCDCC and Judicial Screening Committee )**

245.    Plaintiff repeats and re-alleges all of the allegations contained in the

preceding paragraphs as though they have been restated in full herein.

246.    Plaintiff constituted and constitutes a "class of one" within the meaning of

the equal protection clause of the United States Constitution.[29]

247.    The non-discretionary, mandatory Rules and Procedures enacted by

defendants KCDCC and the Judicial Screening Committee, respectively, governing the

screening, selecting and nomination of candidates seeking election as Justices of the

Supreme Court in New York's Second Judicial District are enacted under color of law.

248.    At all times herein mentioned, Plaintiff was entitled to have her candidacy

before defendant Judicial Screening Committee for its recommendation and nomination

and endorsement by defendant KCDCC conducted in accordance with the Rules enacted

under color of law governing the screening, selecting and nomination of candidates seeking

election as Justices of the Supreme Court in New York's Second Judicial District by

defendants KCDCC and Judicial Screening Committee.

---

[29]*See* fn. 7, *supra*.

249. At all times herein mentioned, Plaintiff was entitled to have her candidacy before defendant Judicial Screening Committee conducted without unlawful and arbitrary interference and deprivation by the defendants, including with non-compliance by the defendants with mandatory, non-discretionary Rules and Procedures.

250. In accordance with the mandatory, non-discretionary Rules and Procedures enacted by defendants KCDCC and Judicial Screening Committee, respectively, governing the screening, selection and nomination of candidates seeking election as Justices of the Supreme Court in New York's Second Judicial District, on or about February 23, 2016, Plaintiff submitted her confidential questionnaire in support of her candidacy as an incumbent elected Justice of the Supreme Court.

251. On or about and between February 23, 2016 and Plaintiff's May 4, 2016 interview with defendant Ajaiyeoba, later joined by defendant Decker, sitting as a subcommittee of the Judicial Screening Committee, defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, and John/Jane Does, acting under color of law, along with Mr. Carone, and others whose identities are as yet unknown, agreed among themselves and with other individuals to deny Plaintiff her entitlement to their compliance with non-discretionary, mandatory Rules and Procedures, in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution.

252. On or about and between February 23, 2016 and Plaintiff's May 25, 2016 full Judicial Screening Committee interview, defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, and John/Jane Does, acting under color of law, along with Mr. Carone, and

94

others whose identities are as yet unknown, <u>agreed</u> among themselves and with other

individuals to act in concert in order to deprive Plaintiff of her right to equal protection of

the law as guaranteed by the Fourteenth Amendment to the United States Constitution by

treating Plaintiff differently than all other persons identical to the Plaintiff in all relevant

respects.[30] Such agreements included agreements to:

   i.  treat Plaintiff differently than all other applicants to the Judicial

Screening Committee seeking nomination and endorsement for upcoming judicial

vacancies in New York's Second Judicial District;

   ii.  violate, breach and disregard the mandatory, non-discretionary Rules

and Procedures enacted by defendants KCDCC and Judicial Screening Committee

governing the screening of applicants candidates seeking nomination and endorsement as

Justices of the Supreme Court in New York's Second Judicial District, with respect to their

handling, processing and consideration of only the Plaintiff's application;

   iii.  fabricate "<u>particular areas of concern</u>" about Plaintiff's application;

   iv.  not inform Plaintiff of "<u>particular areas of concern</u>" about her

application;

   v.  not provide Plaintiff with "written communication" that "detailed" any

"areas of concern"about her application;

---

[30] *Id.*.

95

vi.      not provide Plaintiff with an opportunity "to be prepared to address before the full Committee the areas of concern" about her application;

vii.      not "inform" Plaintiff that "she may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues" of concern about her application.

253.      On or about and between February 23, 2016 and July 13, 2016, defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, and John/Jane Does, acting under color of law, along with Mr. Carone, and others whose identities are as yet unknown, <u>agreed</u> among themselves and with other individuals to act in concert in order to deprive Plaintiff of her right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution by treating Plaintiff differently than all other persons identical to the Plaintiff in all relevant respects.[31] Such agreements included agreements to:

i.      release confidential information pertaining to the judicial screening process concerning Plaintiff to the KCDCC, members of the public and members of the media;

ii.      release confidential information pertaining to the judicial screening process concerning Plaintiff to personnel with the *New York Post*.

---

[31]*Id..*

96

254.    In furtherance of the conspiracy, on or about and between February 23, 2016 and July 16, 2016 defendants Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba, and John/ Jane Does, acting under color of law, engaged in and facilitated numerous overt acts, including, without limitation, violating the mandatory, non-discretionary Judicial Screening Committee Rules and Procedures[32] by:

i.    failing to inform Plaintiff of "particular areas of concern," in violation of Rule 20;

ii.    failing to provide Plaintiff with "written communication" that "detailed" any "areas of concern," in violation of Rule 20;

iii.    failing to provide Plaintiff with an opportunity "to be prepared to address before the full Committee the areas of concern," in violation of Rule 20;

---

[32]Such mandatory, non-discretionary Rules and Procedures included, without limitation:

i.    **Rule 9**, mandating that the only ratings that the Judicial Screening Committee may issue are "Qualified" or "Not qualified at this time;"

ii.    **Rule 10**, mandating that an incumbent judge shall be found "Qualified;"

iii.    **Rule 20**, mandating that if the investigating Sub-Committee has "areas of concern" they must give oral and written notice to the applicant concerning such "areas of concern;"

iv.    **Rule 31.b**, mandating that an applicant who appeals a Judicial Screening Committee finding is entitled to two business days after the determination of the appeal to withdraw their application in exchange for a mandatory, non-discretionary avoidance of any publication of the Judicial Screening Committee's findings.

97

iv.     failing to "inform" Plaintiff that "she may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues," in violation of Rule 20;

v.     disclosing confidential information pertaining to the judicial screening process concerning Plaintiff to the KCDCC, in violation of Rule 17, Rule 30 and Rule 31.b;

vi.     disclosing confidential information pertaining to the judicial screening process concerning Plaintiff to members of the public, in violation of Rule 17, Rule 30 and Rule 31.b;

vii.     disclosing confidential information pertaining to the judicial screening process concerning Plaintiff to members of the media, including the *New York Post*, in violation of Rule 17, Rule 30 and Rule 31.b;

viii. reporting a rating of "Not qualified" and/or "unqualified" with respect to Plaintiff, in violation of Rule 9 and Procedure 1;

ix.     failing to deem and find Plaintiff "Qualified" at the outset and throughout the judicial screening process, in violation of Rule 10;

255.   Plaintiff was treated differently by Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, than other similarly situated applicants to the Judicial Screening Committee, who were identical to Plaintiff in all relevant respects.[33]

256.   No rational person could regard the circumstances of Plaintiff to differ from those of her Comparators[34] concerning the defendants' failure to comply with the mandatory, non-discretionary Rules and Procedures with respect to the Plaintiff so as to justify the negative differential treatment of Plaintiff on the basis of any legitimate policy exercised under color of law.

257.   The similarity in circumstances and difference in treatment among plaintiff, on the one hand, and her Comparators,[35] on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

258.   The actions of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, were highly discriminatory, malicious, vindictive, unjust, improper and unconstitutional.

259.   The treatment of the plaintiff by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively was outrageous and shocking to the conscience.

---

[33]*See* fn. 7, *supra*.

[34]*Id.*.

[35]*Id.*.

260.    The agreement to deprive Plaintiff of equal protection by violating, breaching and disregarding mandatory, non-discretionary Rules and Procedures was malicious, vindictive, retaliatory, retributive and was for the personal benefit of defendants Seddio, Edelman, Decker and Finkelstein, as well as for the personal benefit of Mr. Carone, his law firm, mortgage lenders supporting and exercising influence over the KCDCC, and others whose identities are as yet unknown.

261.    The agreement to deprive Plaintiff of equal protection was intended to maliciously harm Plaintiff.

262.    The defendants acted in their individual, official  and representative capacities when agreeing to deprive Plaintiff of equal protection.

263.    The defendants acted in their individual, official  and representative capacities when depriving Plaintiff of equal protection.

264.    The conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, violated plaintiff's right to equal protection in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

265.    As a proximate result of the conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, and the violation of Plaintiff's constitutional rights, Plaintiff has been damaged.

266.    As a proximate result of the agreements and conduct of defendants Kings County Democratic County Committee, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, along with Mr. Carone, his law firm, mortgage lenders supporting and exercising influence over the KCDCC, members of the Executive Committee of the KCDCC, members of the Judicial Screening Committee and others whose identities are as yet unknown, Plaintiff was deprived of her constitutional right to equal protection by the defendants' intentional violation, breach and disregard of mandatory, non-discretionary Rules and Procedures, under color of law.

267.    As a proximate result of the agreements and conduct of defendants Kings County Democratic County Committee, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, along with Mr. Carone, his law firm, mortgage lenders supporting and exercising influence over the KCDCC, members of the Executive Committee of the KCDCC, members of the Judicial Screening Committee and others whose identities are as yet unknown, Plaintiff has been damaged.

268.    The amount of Plaintiff's damages is to be determined after trial, and should be in an amount not less than  $5,000,000.00 in compensatory damages, along with nominal damages of not less than $1.00.

269.    The outrageous and malicious conduct by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively , specifically intending to harm the plaintiff by a deprivation of her constitutional rights, further justifies an award of punitive damages to the

plaintiff in the highest amount constitutionally permissible, as found by a fair, just and

impartial jury.

270.    Plaintiff is also entitled to recover her attorneys' fees in this proceeding

pursuant to 42 U.S.C. §1988.

### Third Count

#### Injunctive Relief
#### Due to Continuing Irreparable Harm to the Plaintiff:
(Against All Defendants)

(A) Mandate Defendants to find Plaintiff "Qualified" as was Mandatory,
pursuant to Rule 10, given her applicant status as an Incumbent Justice of the
Supreme Court, and vacate and nullify Defendants' reported findings of "Not
qualified" and "Unqualified" which also violate Rule 9;

(B) Prohibit Defendants from Continuing to Irreparably Harm Plaintiff by
Stating False, Defamatory and Fabricated Judicial Screening Committee
Findings, such as "Not Qualified" and "Unqualified";

(C) Prohibit Edelman, Decker and any other person who is Not a Resident of
Kings County Or who Does Not maintain their Law Practice of Employment
in Kings County from being a Member of the Judicial Screening Committee,
as mandated by the Judicial Screening Committee Mandatory, Non-
Discretionary  Residency Requirement Codified as Procedure 7;

(D) Enjoining defendants from Continuing to Carry Out Constitutionally
Infirm Practices, in Violation and Breach of KCDCC and the Judicial
Screening Committee's own Non-Discretionary, Mandatory Rules and
Procedures

271.    The Plaintiff repeats, reiterates, and  re-alleges each and every allegation

stated in the preceding paragraphs as if set forth in full herein.

272.    The defendants have and continue to disclose confidential information

about the judicial screening of Plaintiff, in violation of their own Rules and procedures.

273.   The defendants have used and continue to use their disclosure of confidential information concerning the judicial screening of Plaintiff to violate and deprive Plaintiff of rights afforded to her under the Constitutions of the United States and the State of New York.

274.   The defendants' failure to observe and follow their own stated mandatory, non-discretionary Rules and Procedures has, and continues to, irreparably injure and damage Plaintiff.

275.   The Judicial Screening Committee includes people that, as a matter of mandatory, non-discretionary Procedure, enacted under color of law, may not sit as voting members of the Judicial Screening Committee, and ought be barred.

276.   Defendant Edelman is not a resident of Kings County, nor is his law practice located in Kings County.

277.   Defendant Decker is not a resident of Kings County, nor is his law practice located in Kings County.

278.   The mandatory, non-discretionary Judicial Screening Committee Procedures, enacted under color of law, require all members of the Committee to live and/or maintain their office in Kings County. (Ex. 8 ¶ 7).

279.   The defendants have shown that they view compliance with their own non-discretionary, mandatory Rules and Procedures to be subject to their own malicious and vindictive whim and personal benefit.

280.    The defendants used their malicious and vindictive disregard of their own mandatory, non-discretionary Rules and Procedures, to harm Plaintiff.

281.    The defendants have and undoubtably will continue to use the  malicious and vindictive non-compliance and non-enforcement of their own Rules and Procedures, enacted under color of law, to deprive Plaintiff and other applicants their state and federal constitutional rights.

282.    This is an ongoing controversy which affects not merely the Plaintiff, but has likely affected third parties in the past, and will undoubtedly affect third parties in the future.

283.    As such there is an actual controversy over which this Court possesses jurisdiction.

284.     In view of the forgoing, the plaintiff seeks permanent injunctive relief:

i.    Mandating the Judicial Screening Committee to find Plaintiff "Qualified" as was mandatory, pursuant to Rule 10, given her applicant status as an Incumbent Justice of the Supreme Court, and vacate and nullify Defendants' reported findings of "Not qualified" and "Unqualified" - which also violate Rule 9;

ii.    Prohibiting the Defendants from continuing to irreparably harm Plaintiff by stating false, defamatory and fabricated Judicial Screening Committee findings, such as "Not Qualified" and "Unqualified," which also violates Rules 9 and 10;

iii.    Prohibiting Edelman, Decker and any other person who is not a resident of Kings County or who does not maintain their Law Practice or Employment in Kings County from being a member of the Judicial Screening Committee, as mandated by the Judicial Screening Committee Mandatory, Non-Discretionary Residency Requirement Codified as Procedure 7;

iv.    Enjoining defendants KCDCC and Judicial Screening Committee from continuing to carry out the constitutionally infirm practices described herein; and,

vi.    For such other and further relief as this court may deem just and proper to prevent unlawful destruction or chilling of necessary judicial independence within our separated powers regime and denial of constitutional rights.

**State Law Based Counts**

**Fourth Count**

**Violation of Equal Protection Under Article I, § 11
of the New York State Constitution**
(Against All Defendants)

285.   Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs as though they have been restated in full herein for the totality of the Fourth Count, Count 4-A -4-D.

286.   On February 23, 2016, Plaintiff applied to KCDCC and the Judicial Screening Committee, to be discretionary rated "Qualified" and being "Recommended" to KCDCC. (Ex. 12). The Judicial Screening Committee's predicate "Qualified" and "recommended" is a mandatory condition precedent to KCDCC's Executive Committee

105

considering and approving anyone to be voted up by KCDCC's Executive Committee and be on KCDCC's slate of Nominees to be presented at the New York State Judicial Convention held in and for the 2nd Judicial District pursuant to state law. (*See, e.g.*, N.Y. Election Law § 6-124).

287.    On May 26, 2016 Plaintiff was informed *inter alia* by the Edelman Letter, dated May 26, 2016, (and which enclosed a 1-page copy of Rules 31(a)-(e)),  that the Judicial Screening Committee "has found you Not Qualified and will not be recommending you for another term as Justice of the Supreme Court." Said Letter continued in ¶2 of her right to appeal, and in ¶3 "...you may avoid a negative publication if you withdraw your candidacy unequivocally and with prejudice. If you choose to exercise this option we will need to be informed in writing on or before Friday, June 3, 2016 by 5:00p.m." (Ex. 14).

288.    Plaintiff Rule 31.b Comparators, who are  identical for all relevant purposes to plaintiff:

a.    Applied to Judicial Screening Committee for consideration to be approved and recommended to KCDCC for nomination or re-nomination for Justice of the Supreme Court;

106

b.      voted down by the Judicial Screening Committee as "Not Qualified At This Time" with or without an appeal;[36] and,

c.      withdrew their candidacies in writing in accordance with Rule 31.b ("Candidate shall ... withdraw his/her candidacy unequivocally and with prejudice to avoid publication of the Committee's findings" per Judicial Screening Committee Rule 31.b, as amended January 23, 2012)( Ex.. 9 at Rule 9).

289.    The defendants, motivated by their malice, vindictiveness and in retaliation for Plaintiff's prior proper judicial actions and independence, violated mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee in an effort to maliciously and vindictively destroy, defame and injure Plaintiff, including:

a.      **Judicial Screening Committee Procedures (imposed by KCDCC)** (Ex. 8):

i.      **Procedure 1**, mandating that the Judicial Screening Committee shall only find a candidate "Qualified" or "Not qualified at this time." The defendants, however, in violation of this Procedure reported that Plaintiff was found "Not qualified" and "Unqualified" - statuses that do not exist;

---

[36]Judicial Screening Committee Rule 9, as amended January 23, 2012, states: "The panel shall judge each candidate as either '***Qualified***' or '***Not qualified at this time***.' *Of the Qualified Candidates the Panel shall report out a limited pool of recommended candidates based on the total number of vacancies for that judicial office* (i.e ., Civil, Supreme). The total pool shall be five (5) individuals per vacancy for each type of judicial office. For the purposes of determining the size of the pool, incumbent's seats shall be included." (Ex. 9 at Rule 9) (***Emphasis added)***.

ii.    **Procedure 11**, mandating that no member of the KCDCC

Executive Committee may communicate with any member of the Judicial Screening

Committee regarding the candidacy of any applicant for judicial screening. However, on

May 19, 2016 defendant Seddio made it known to Plaintiff at the KCDCC dinner that he

had been in communication with the Judicial Screening Committee, and had knowledge of

Plaintiff's Sub-Committee interview, in violation of this Procedure;

iii.    **Procedure 13**, mandating uniformity in the application of

Rules by the Judicial Screening Committee "upon which all such evaluations shall be

based." However, with respect to Plaintiff, the defendants violated and breached Procedure

13 throughout the entirety of the judicial screening process by not evaluating her

application in accordance with those mandatory, non-discretionary Rules and Procedures;

b.    **Judicial Screening Committee Rules** (Ex. 9):

i.    **Rule 3**, mandating Recusals; however, defendants Edelman and

Finkelstein, who had grounds to recuse themselves failed to do so, and Edelman continued

to Chair Plaintiff's screening by the Judicial Screening Committee;

ii.    **Rule 9** and **Rule 22**, mandating that the only ratings that the

Judicial Screening Committee may issue are "Qualified" or "Not qualified at this time." The

defendants, however, in violation of this Rule reported that Plaintiff was rated "Not

qualified" and "Unqualified" - rating statuses that do not exist. Indeed, by his letter of May

26, 2016, Edelman specifically attests that Plaintiff was rated "Not qualified" (Ex. 14);

108

      iii.   **Rule 10**, mandating that an incumbent judge shall be found "Qualified."  The defendants, however, in violation of this Rule reported that Plaintiff was rated "Not qualified" and "Unqualified" - rating statuses that do not exist. Indeed, by his letter of May 26, 2016, Edelman specifically attests that Plaintiff was rated "Not qualified" (Ex. 14) despite the mandate of Rule 10 which applied to Plaintiff as a then incumbent, duly elected, sitting Justice of the Supreme Court;

      iv.   **Rule 13**, mandating that all proceedings and investigative reports of the Judicial Screening Committee "**shall be treated as strictly confidential**" (**emphasis in original**). However, the defendants violated and breached Rule 13 by impermissibly publishing and disseminating confidential information concerning Plaintiff to the KCDCC, members of the public and members of the press, including the *New York Post*;

      v.   **Rule 16**, mandating that the Judicial Screening Committee Report to the Executive Committee of KCDCC may only report candidates as "Qualified" or "Not qualified at this time." The defendants, however, in violation of this Procedure reported that Plaintiff was found "Not qualified" and "Unqualified" - statuses that do not exist - and in disregard of the Rule 10 mandate that Plaintiff, as an incumbent Justice of the Supreme Court, be reported as "Qualified";

      vi.   **Rule 17**, mandating strict confidentiality of the entire judicial screening process, and the destruction of documents. However, the defendants failed to maintain strict confidentiality with respect to the Plaintiff's application and instead

impermissibly published confidential information to the KCDCC, members of the public and members of the media, including the New York Post which published articles based on that confidential information both in print and online;

vii.    **Rule 20**, mandating that if the investigating Sub-Committee has "areas of concern" they must give oral and written notice to the applicant concerning such "areas of concern." The defendants, however, failed to provide Plaintiff with such oral or written notice, despite the mandatory nature of the Rule, all to enable Plaintiff to be ambushed before the Judicial Screening Committee;

viii.   **Rule 30**, mandating strict confidentiality of the entire judicial screening process, and the destruction of documents. However, the defendants failed to maintain strict confidentiality with respect to the Plaintiff's application and instead impermissibly published confidential information to the KCDCC, members of the public and members of the media, including the *New York Post* which published articles based on that confidential information both in print and online;

ix.     **Rule 31.b**, mandating that an applicant who appeals a Judicial Screening Committee finding is entitled to two business days after the determination of the appeal to withdraw their application in exchange for a mandatory, non-discretionary avoidance of any publication of the Judicial Screening Committee's findings. The defendants, however, disregarded the Plaintiff's timely withdrawal, in compliance with Rule 31.b, including as repeatedly referenced in his May 26th and June 8th Letters by defendant Edelman, and published the findings of the Judicial Screening Committee to the

110

KCDCC, members of the public and members of the media, including the *New York Post* which published articles based on that confidential information both in print and online.

290.    Plaintiff constituted and constitutes a "class of one" within the meaning of the Equal Protection Clause of Article 1, § 11 of the New York State Constitution - as to the defendants' malicious, vindictive and retaliatory violations and breaches of mandatory, non-discretionary Rules and Procedures of the KCDCC and the Judicial Screening Committee. All of such violations and breaches were done to injure Plaintiff, but were honored for all of her Comparators.

> Count 4-A.    The Defendants Deprived Plaintiff of Equal
>                Protection by Violations and Breaches of <u>Rule
>                31.b</u>

291.    **Rule 31.b Comparators**. By releasing confidential information pertaining to the judicial screening process concerning Plaintiff, defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker,  Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated applicants, who, exactly like Plaintiff, exercised their Rule 31.b right to withdraw their Judicial Screening Committee application to avoid publication of any of the Judicial Screening Committee's findings, namely:

    i.      1. DS;

    ii.     2. MG;

    iii.    3. BW;

    iv.     4. LS;

v.      5. JE;

vi.     6. RS; and,

vii.    7. AB.

292.    Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS

and 7. AB had all applied to the Judicial Screening Committee for recommendation,

nomination of and endorsement by defendant KCDCC for Justice of the Supreme Court.[37]

293.    Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS

and 7. AB were all not found "Qualified" by the Judicial Screening Committee.

294.    Exactly like Plaintiff, Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS

and 7. AB all exercised their rights in accordance with **Rule 31.b** to withdraw their

application to avoid any reporting of the Judicial Screening Committee's findings and

determinations - and none of the Comparators confidential information was publicly

released and none was reported to the Executive Committee of the KCDCC per Rule 16.

295.    Notwithstanding Plaintiff withdrawing her application, in accordance with

Rule 31.b, the Judicial Screening Committee released its findings and determinations about

Plaintiff to the Executive Committee of the KCDCC, the KCDCC, members of the public,

and members of the media, including the *New York Post*.

---

[37]*See* Fn. 28, *supra*.

296.    The Judicial Screening Committee did not report its findings and determinations about the Rule 31.b Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB to the Executive Committee of the KCDCC, and kept such information strictly confidential, as mandated by non-discretionary, mandatory governing Rules and Procedures.

297.    No rational person could regard the circumstances of Plaintiff's exercise of Rule 31.b to differ from those of Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB to justify the negative differential treatment of Plaintiff on the basis of any legitimate policy exercised under color of law.

298.    The similarity in circumstances and difference in treatment among Plaintiff, on the one hand, and Rule 31.b Comparators 1. DS; 2. MG; 3. BW; 4. LS; 5. JE; 6. RS and 7. AB, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

Count 4-B.    The Defendants (Except Finkelstein) Deprived Plaintiff of Equal Protection by Violating and Breaching Rule 20

299.    Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated candidates about whom the respective Sub-Committees had particular "areas of concern" and whom the defendants provided with Rule 20 notice of such particular "areas of concern."

300.   **Rule 20 Comparators**. By failing to provide Plaintiff with oral and written notice of particular "areas of concern" regarding her application, defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other similarly situated applicants, who, the respective Sub-Committee had particular areas of concern, exactly like Plaintiff. Upon information and belief, the Plaintiff's Rule 20 Comparators are every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the respective Sub-Committee identified particular "areas of concern" with respect to their applications.

301.   Upon information and belief, each other Judicial Screening Committee applicant who had "areas of concern" identified by a Sub-Committee was provided with oral and written notice in accordance with Rule 20.

302.   Upon information and belief, the defendants provided the Rule 20 Comparators with

     i.     identification of "particular areas of concern";

     ii.     "written communication" that "detailed" any "areas of concern";

     iii.     an opportunity "to be prepared to address before the full Committee the areas of concern";

     iv.     Notice that they "may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues."

114

303.    Plaintiff was maliciously and vindictively treated differently than each of these Rule 20 Comparators in that with respect to the Plaintiff the defendants selectively violated and breached the mandatory, non-discretionary Judicial Screening Committee Rule 20, by failing to:

   i.  inform Plaintiff of "particular areas of concern";

   ii.  provide Plaintiff with "written communication" that "detailed" any "areas of concern";

   iii.  provide Plaintiff with an opportunity "to be prepared to address before the full Committee the areas of concern";

   iv.  "inform" Plaintiff that "she may bring to the interview of the full committee any materials that the candidate believes may be relevant to the issues."

304.    No rational person could regard the circumstances of Plaintiff' to differ from those of the Rule 20 Comparators as regards the application of the mandatory and non-discretionary notice and information provisions of Rule 20 so as to justify the negative differential treatment of Plaintiff on the basis of any legitimate policy exercised under color of law.

305.    The similarity in circumstances and difference in treatment among Plaintiff, on the one hand, and Rule 20 Comparators, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

Count 4-C.   The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching <u>Rule 10</u>; and/or

306.   **Rule 10 Comparators**: Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than other identically situated incumbent Justices of the Supreme Court who were also applicants for consideration by the Judicial Screening Committee at the same time as Plaintiff:

    i.      Hon. Mark Partnow;

    ii.     Hon. Leon Ruchelsman.

307.   Plaintiff is identical to Justice Partnow and Ruchelsman in all material respects.

308.   Rule 10 mandated that any incumbent Justice of the Supreme Court be rated as "Qualified" by the Judicial Screening Committee.

309.   Exactly like Justices Partnow and Ruchelsman, Plaintiff was an incumbent Justice of the Supreme Court at the time of her application to and assessment by the Judicial Screening Committee.

310.   Justices Partnow and Ruchelsman were rated as "Qualified" from the outset of their respective 2016 Judicial Screening Committee applications, in accordance with Rule 10.

311.    Plaintiff was treated differently by the defendants, while acting under color of law, than her Rule 10 Comparators, Justices Partnow and Ruchelsman, in that Plaintiff was not deemed and rated "Qualified" as per the mandate of Rule 10, and, indeed, the Judicial Screening Committee improperly reported Plaintiff to be rated "Not Qualified" and "Unqualified" - rating statuses that do not even exist.

312.    No rational person could regard the circumstances of Plaintiff concerning the application of Rule 10, as a then sitting incumbent Justice of the Supreme Court, to differ from those of Justices Partnow and Ruchelsman to justify the negative differential treatment of plaintiff on the basis of a legitimate policy exercised under color of law.

313.    The similarity in circumstances and difference in treatment among plaintiff, on the one hand, and Justices Partnow and Ruchelsman, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

Count 4-D.    The Defendants Deprived Plaintiff of Equal Protection by Violating and Breaching <u>Rule 9</u>

314.    Defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, while acting under color of law, treated Plaintiff differently than all other applicants for consideration by the Judicial Screening Committee. were also applicants for consideration by the Judicial Screening Committee.

315.    **Rule 9 Comparators**: The Plaintiff's Rule 9 Comparators are every other applicant to appear before the Judicial Screening Committee during the period 2003 through 2016 whom the Judicial Screening Committee did not find "Qualified." The

117

Plaintiff is identical to every other applicant who was not found "Qualified" by the Judicial Screening Committee as each such applicant cannot be "Recommended" for the nomination or endorsement of the KCDCC for the judicial position they seek.

316.   Upon information and belief, every other applicant to appear before the Judicial Screening Committee who was not found "Qualified" was rated "Not qualified at this time" as mandated by, *inter alia*, Rule 9.

317.   There Rules and Procedures of the Judicial Screening Committee do not permit any ratings other than "Qualified" and "Not qualified at this time."

318.   Plaintiff was the only applicant before the Judicial Screening Committee to be reported as rated "Not qualified" and "Unqualified."

319.   Plaintiff was so reported notwithstanding the mandate of Rule 10 which required that Plaintiff be deemed "Qualified."

320.   Plaintiff was treated differently by the defendants, while acting under color of law, than her Rule 9 Comparators, in that Plaintiff was not deemed and rated "Qualified" as per the mandate of Rule 10, and, indeed, the Judicial Screening Committee improperly reported Plaintiff to be rated "Not Qualified" and "Unqualified" - rating statuses that do not even exist in Rule 9.

321.   No rational person could regard the circumstances of Plaintiff concerning the application of Rule 9, to differ from those of Plaintiff's Rule 9 Comparators to justify the negative differential treatment of plaintiff on the basis of a legitimate policy exercised under color of law.

322.    The similarity in circumstances and difference in treatment among plaintiff, on the one hand, and her Rule 9 Comparators, on the other hand, are sufficient to exclude the possibility that the defendants acted on the basis of mistake.

323.    The actions of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, were highly discriminatory, malicious, vindictive, unjust, improper and unconstitutional.

324.    The treatment of the plaintiff by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively was outrageous and shocking to the conscience.

325.    The conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively, violated plaintiff's right to equal protection in violation Article 1, § 11 of the New York State Constitution.

326.    As a proximate result of the conduct of defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, individually and collectively and the violation of Plaintiff's constitutional rights, Plaintiff has been damaged.

327.    The amount of Plaintiff's damages is to be determined after trial, and should be in an amount not less than  $5,000,000.00 in compensatory damages, along with nominal damages of not less than $1.00.

119

328.    The outrageous and malicious conduct by defendants KCDCC, Judicial

Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane

Does, individually and collectively , specifically intending to harm the plaintiff by a

deprivation of her constitutional rights, further justifies an award of punitive damages to the

plaintiff in the highest amount constitutionally permissible, as found by a fair, just and

impartial jury.

### Fifth Count

**Breach of Contract/Implied Contract**: **Rule 31.b Bargained For Non-Publication**
(Against All Defendants)

329.    The Plaintiff repeats, reiterates, and  re-alleges each and every allegation

stated in the preceding paragraphs as if set forth in full herein.

330.    The very first page of the Judicial Screening Committee questionnaire

specifically provides "Please be advised that <u>all</u> information provided will be kept strictly

confidential." (Ex. 11) (<u>emphasis in original</u>).

331.    The Rules enacted by defendants KCDCC and Judicial Screening Committee

governing the screening, selection and nomination of candidates seeking election as

Justices of the Supreme Court in New York's Second Judicial District provide, in pertinent

part, that:

> i.    "**Except for the Report to the Executive Committee of the
> Democratic Party, all proceedings before the panel and all investigative
> reports shall be treated as strictly confidential**. Any inquiries concerning such
> proceedings or reports shall be referred to the Chair of this Committee. In the event
> that a member violates this provision, the Chair must discharge that member from
> any further deliberations of the panel."

Ex. 9 at <u>Rule 13</u> (**emphasis in original**);

   ii. "The appeal shall be heard within two (2) weeks of the candidate's notice of appeal. The candidate shall be informed within **four** business days of the appearance before the panel. ***The candidate shall then be given an additional two business days to withdraw his/her candidacy unequivocally and with prejudice to avoid publication of the Committee's findings***."

*Id.* at <u>Rule 31.b</u> (**emphasis in orginal**) (***emphasis added***).

332. Edelman, twice by letters dated May 26, 2016 and June 8, 2016, invited Plaintiff to exercise her Rule 31.b right of withdrawal of her application in exchange for the Judicial Screening Committee maintenance of strict and absolute confidentiality of Plaintiff's application and information about the Plaintiff, such that there would be no disclosure to any person or entity, including no report of the Judicial Screening Committee's findings to the Executive Committee of the KCDCC as otherwise required by Rule 16.

333. Plaintiff timely exercised her Rule 31.b right on June 10, 2016, and the defendants still violated and breached their bargained for absolute bar to breaching confidentiality.

334. The defendants assured all candidates for screening for potential recommendation by the Judicial Screening Committee and nomination and endorsement by the KCDCC, including Plaintiff, that all information about their candidacy and the screening process would be kept confidential - especially after Plaintiff exercised her Rule 31.b right on June 16, 2016.

335.    Plaintiff relied on the defendants' written and regulatory assurances of strict and absolute confidentiality in withdrawing her candidacy pursuant to Rule 31.b.

336.    Plaintiff was in compliance with all of the Rules and procedures of the Judicial Screening Committee and KCDCC as pertained to her as a candidate for screening.

337.    The defendants were obligated by their assurances to keep confidential all information they obtained concerning Plaintiff's candidacy for potential recommendation by the Judicial Screening Committee and nomination and endorsement by the KCDCC.

338.    The defendants were obligated by the mandatory, non-discretionary Rules of the Judicial Screening Committee and the KCDCC to keep confidential all information they obtained concerning the screening of Plaintiff.

340.    The defendants failed to maintain all information they obtained concerning the screening of Plaintiff as confidential.

341.    The defendants violated Rule 10 - as incumbent judges are to be deemed and found "Qualified" from the outset of the application throughout the screening process.

342.    The defendants violated Rule 9 by reporting a finding of Plaintiff as "Not qualified" and "Unqualified."

343.    The defendants intentionally disclosed information about the screening of Plaintiff that they were obliged to keep confidential.

344.    The defendants intentionally disclosed information about the screening of Plaintiff that they assured Plaintiff would be kept confidential.

122

345.    The defendants were bound by their contractual obligations to the Plaintiff. The defendants provided Plaintiff with the offer/option to withdraw her application in accordance with Rule 31.b and in exchange the defendants would not publish or disseminate any information about the Judicial Screening Committee's findings concerning the Plaintiff. The Plaintiff accepted the offer and completely performed in accordance with the defendants' terms. The defendants' failures to comply with their bargained for assurances of strict and complete confidentiality concerning the Plaintiff's application to the Judicial Screening Committee are a breach of contract by the defendants by which the Plaintiff has been and continues to be damaged.

346.    As a proximate result of the unauthorized disclosure by defendants Kings County Democratic County Committee, Judicial Screening Committee, Seddio, Edelman, Finkelstein,  Ajaiyeoba, Finkelstein and John/Jane Does of confidential information pertaining to her judicial screening, Plaintiff has been damaged.

347.    The amount of plaintiff's damages is to be determined after trial, and should be in an amount not less than  $5,000,000.00 in compensatory damages, along with nominal damages of not less than $1.00.

348.    The outrageous and malicious conduct by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, specifically intending to harm the plaintiff by a deprivation of her constitutional rights, further justifies an award of punitive damages to the plaintiff in the highest amount constitutionally permissible, as found by a fair, just and impartial jury.

**Sixth Count**

**Libel and Slander**
(Against All Defendants)

349.    The Plaintiff repeats, reiterates, and  re-alleges each and every allegation stated in the preceding paragraphs as if set forth in full herein.

350.    The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff had been found "Unqualified" by the Judicial Screening Committee - a designation that does not even exist, when, by mandatory, non-discretionary Rule 10, Plaintiff, as an incumbent Justice of the Supreme Court was "Qualified."

351.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet that the defendants had found Plaintiff "Unqualified."(Exs. 18-19).

352.     The defendants falsely told or conveyed to personnel with the *New York Post* that Plaintiff is "not the brightest bulb in the courthouse to begin with," when Decker told everyone in the appeal interview on June 7, 2016 that Plaintiff is "one of the brightest judges on the bench. . ."

353.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet, of and concerning Plaintiff, that "She's not the brightest bulb in the courthouse to begin with" (Ex. 18).

354.    Defendant Decker had personally told Plaintiff that she is "probably the brightest Judge in the Kings County Supreme Courthouse. . ."

124

355.    The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff was "disliked."

356.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet that Plaintiff was "disliked." (Ex.  18).

357.    The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff "has a poor reputation."

358.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet that Plaintiff was "has a poor reputation."  (Ex.  18).

359.    The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff "is "considered judicially mediocre."

360.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet that Plaintiff was "is "considered judicially mediocre."  (Ex. 18).

361.    Because of Plaintiff's intellect, legal acumen and judicial abilities, the Administrative Judges overseeing the Courts of New York State have relied upon Plaintiff's judicial skills, knowledge and ability, and have therefore appointed her as Acting Surrogate.

362.    The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that, of and concerning Plaintiff, "an abnormal percentage of cases were overturned by higher courts."

363.    Based on the statements of the defendants, the *New York Post* reported in print and on the internet that , of and concerning Plaintiff,"they looked at her track record, and they found an abnormal percentage of cases were overturned by higher courts."(Ex. 18).

125

364.   Plaintiff did not have an "abnormal percentage of cases [that] were overturned by higher courts." On the contrary, of the many thousands of orders that Plaintiff has issued" in the past decade" (since 2006), only small amount were even appealed, and only a fraction of those appeals resulted in reversals.

365.   The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff "lacked" a "work ethic."

366.   Based on the statements of the defendants, the *New York Post* reported in print and on the internet that "It's that kind of work ethic — or lack thereof — that helped convince the county Democratic Party's Judicial Screening Committee last month that Jacobson is unqualified to run on the party line in November." (Ex. 19).

367.   Plaintiff's work ethic is so strong that she takes work home where she, *inter alia*, reviews pleadings and motion papers, performs legal research and writes decisions from outside the courthouse on personal time.

368.   The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that "Plaintiff failed to come to work on July 14, 2016."

369.   Based on the statements of the defendants, the *New York Post* reported in print and on the internet, of and concerning Plaintiff, that she "only had three cases on her docket for the day but adjourned everything, sending out alerts to all the parties telling them not to bother showing up." (Ex. 19).

126

370.     Plaintiff did come to work on July 14, 2016 and had a single case calendared for that day. *Savane, et. al. v. Osei, et. al.*, Index No. 23894/2006. One of three law firms that represented parties on the case did not appear in court by counsel that day. After Plaintiff, and the other attorneys who did appear, waited for the missing attorney and unsuccessfully tried to reach that lawyer by phone, the case was adjourned. Indeed, in the exercise of judicial discretion, in the truest desire for justice and resolution of disputes on the merits, Plaintiff did not enter judgment against the party whose counsel failed to appear without excuse or explanation, despite being authorized to do so. *See*, 22 NYCRR 202.27.

371.     The defendants falsely told or caused to be conveyed to personnel with the *New York Post* that Plaintiff had a "lackadaisical attitude in filling out a required questionnaire."

372.     Based on the statements of the defendants, the *New York Post* reported in print and on the internet that Plaintiff had a "lackadaisical attitude in filling out a required questionnaire." (Ex. 19).

373.     Plaintiff did not have"lackadaisical attitude" about completing the Judicial Screening Committee questionnaire, or about any part of the screening process.

374.     Plaintiff made efforts to ensure that the information provided to the Judicial Screening Committee was accurate and supplemented her submissions when necessary.

127

375.    The defendants' statements to the *New York Post*, were individually and collectively  false when made and the defendants knew that they were false at the time of their publication to the *New York Post* and re-publication by the *New York Post*.

376.    The defendants made these false statements about Plaintiff to the *New York Post* intending that they would be published in print and on the internet.

377.    The defendants made these false statements about Plaintiff to the *New York Post* intending that they would be widely disseminated.

378.    The defendants made these false statements about Plaintiff to the *New York Post* with the intention of harming Plaintiff.

379.    The defendants made these false statements about Plaintiff to the *New York Post* intending that the dissemination of such information would be harmful to Plaintiff's personal and professional reputation.

380.    The *New York Post* published and re-published the false, misleading and confidential information about Plaintiff that the defendants disclosed to them (Exs.18-19).

381.    The mandatory, non-discretionary Rules and Procedures of defendants Judicial Screening Committee and KCDCC even prohibited the disclosure of information of and concerning Plaintiff outside of the Judicial Screening Committee.

382.    The false statements of and concerning Plaintiff that were made by the defendants to the *New York Post* were made with actual malice.

383.    The false statements of and concerning Plaintiff that were made by the defendants to the *New York Post* were made recklessly, with gross disregard of the truth and mandatory, non-discretionary Rule 10 incumbency and Rule 31.b bars to publication.

384.    The false statements of and concerning Plaintiff that were made by the defendants to the *New York Post* were made with gross negligence.

385.    The false statements of and concerning Plaintiff that were made by the defendants to the *New York Post* were made with negligence.

386.    As a result of the false statements published by the defendants, Judge Jacobson's personal reputation has been damaged.

387.    As a result of the false statements published by the defendants, Judge Jacobson's professional reputation has been damaged, and, hence is slander *per se*, and to the extent that any writings, including e-mails, were sent by defendants and/or George Artz, is libel *per se*.

388.    As a result of the false statements published by the defendants, Plaintiff now has fewer job opportunities after completion of her judicial service.

389.     As a result of the false statements published by the defendants, Judge Jacobson now has lower income potential after completion of her judicial service.

390.    As a proximate result of the false statements made by defendants Kings County Democratic County Committee, Judicial Screening Committee, Seddio, Edelman, Finkelstein,  Ajaiyeoba, Finkelstein and John/Jane Does to the *New York Post*, of and concerning Plaintiff, Plaintiff has been damaged.

391.    The amount of plaintiff's damages is to be determined after trial, and should be in an amount not less than  $5,000,000.00 in compensatory damages, along with nominal damages of not less than $1.00.

392.    The outrageous and malicious conduct by defendants KCDCC, Judicial Screening Committee, Seddio, Edelman, Finkelstein, Decker, Ajaiyeoba and John/Jane Does, specifically intending to harm the plaintiff by a deprivation of her constitutional rights, further justifies an award of punitive damages to the plaintiff in the highest amount constitutionally permissible, as found by a fair, just and impartial jury.

### Prayer for Relief

**WHEREFORE**, Plaintiff Laura Lee Jacobson prays for judgment in her favor on each of the counts the following:

A.    a fair and reasonable amount of compensatory damages of not less than $5,000,000.00;

B.    punitive damages in the maximum amount constitutionally permissible, but not less than $20,000,000.00;

C.    permanent injunctive relief;

D.    attorneys fees as and for prosecuting the instant case;

E.    costs and disbursements;

F.    interest in the greatest amount permitted by governing law; and,

G.    all additional relief as may appear just and proper to the Court to

protect judicial independence from being destroyed or chilled, such that the separated

powers regime remains operational in fact.

Dated: New York, New York
       March 21, 2017

Respectfully submitted,
**THE LAW FIRM OF RAVI BATRA, P.C.**
*Attorneys for Plaintiff Laura Lee Jacobson*

Ravi Batra, Esq. (RB 4299)
142 Lexington Avenue
New York, NY 10016
(212) 545-1993
Cell: (914) 882-6382
E-Mail: ravibatralaw@aol.com
        ravi@ravibatralaw.com

Jacobson 844\032117FAC

131