UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAURA LEE JACOBSON, :

                Plaintiff, :

       -against- :

KINGS COUNTY DEMOCRATIC COUNTY :
COMMITTEE;   JUDICIAL   SCREENING
COMMITTEE FOR THE DEMOCRATIC PARTY IN :
AND FOR KINGS COUNTY; FRANK R. SEDDIO
Individually and in His Official and Representative :
Capacity as County Chair of the Kings County
Democratic  County  Committee;  MARTIN  W. :
EDELMAN Individually and in His Official and
Representative Capacity as Chairperson of the Judicial :     16-CV-4809 (LDH) (RML)
Screening Committee for the Democratic Party in and
for Kings County; STEVEN R. FINKELSTEIN; STEVE :
DECKER; ABAYOMI O. AJAIYEOBA; and, JOHN
AND JANE DOES ## 1-20, so named as their identities :
are not yet known, intended to represent persons who
had access to confidential records of and/or confidential :
candidate-interview  by,  the  Judicial  Screening
Committee for the Democratic Party in and for Kings :
County pertaining to plaintiff, who disclosed such
materials outside of the committee to defendant Seddio, :
defendant Kings County Democratic County Committee,
defendant  Kings  County  Democratic  County :
Committee's media consultant George Artz, members of
the public and/or the media, :

             Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE AND FRANK R. SEDDIO'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendants Kings County Democratic*
*County Committee and Frank R. Seddio*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................1

PROCEDURAL BACKGROUND...........................................................................2

ARGUMENT ...........................................................................................................6

    I.    The Federal Claims Must Be Dismissed.........................................................6

        A.    Defendants KCDCC and Seddio Are Not State Actors ...................... 6

        B.    Jacobson Fails to Establish that She Is a "Class of One" .................10

        C.    Defendant Seddio Is Entitled to Qualified Immunity ........................15

        D.    Plaintiff's Claim for Injunctive Relief Is Moot..................................18

    II.    The Court Should Decline to Exercise Supplemental
        Jurisdiction Over the State Claims, or in the Alternative, the
        State Claims Must Be Dismissed ..................................................................19

        A.  Jacobson Fails to State a Claim for Violation of Her Equal
            Protection Rights Under the State Constitution Because
            Jacobson Is Not a Class of One...........................................................21

        B.  There Was No Contract Between Jacobson and the KCDCC
            and Seddio....................................................................................21

        C.  Jacobson Fails to State a Claim for Libel and Slander .........................23

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

*545 Halsey Lane Properties, LLC v. Town of Southampton*,
   39 F. Supp. 3d 326 (E.D.N.Y. 2014) ...................................................................... 13

*Bein v. County of Nassau*,
   118 A.D.3d 650 (2d Dept. 2014) ............................................................................ 21

*Blank v. Heineman*,
   771 F. Supp. 1013 (D. Neb. 1991) ........................................................................... 9

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) ............................................................................................... 20

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) ............................................................................ 23, 24

*Ciambriello v. County of Nassau*,
   292 F.3d 307 (2d Cir. 2002) ................................................................................... 14

*Clubside, Inc. v. Valentin*,
   468 F.3d 144 (2d Cir. 2006) ................................................................................... 11

*Conyers v. Rossides*,
   558 F.3d 137 (2d Cir. 2009) ................................................................................... 12

*DeMuria v. Hawkes*,
   328 F.3d 704 (2d Cir. 2003) ................................................................................... 18

*Engquist v. Oregon Dept. of Agric.*,
   553 U.S. 591 (2008) ................................................................................... 10, 11, 12

*Eu v. San Francisco County Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ................................................................................................. 7

*Fahey v. Darigan*,
   405 F. Supp. 1386 (D.R.I. 1975) ............................................................................. 8

*Ford v. Reynolds*,
   316 F.3d 351 (2d Cir. 2003) ................................................................................... 18

*Goldberg v. Sitomer, Sitomer & Porges*,
   97 A.D.2d 114 (1st Dep't 1983) ............................................................................ 23

*Hadges v. Yonkers Racing Corp.*,
  918 F.2d 1079 (2d Cir. 1990) ................................................................ 6

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ......................................................................... 15

*Harsco Corp. v. Sequi,*
  91 F.3d 337 (2d Cir. 1996) ................................................................ 21

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ..................................................................... 15, 16

*Husain v. Springer*,
  494 F.3d 108 (2d Cir. 2007) ............................................................ 17, 18

*Kolari v. New York-Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2006) .............................................................. 20

*Kurzon v. Democratic Natl. Comm.*,
  197 F. Supp. 3d 638 (S.D.N.Y. 2016) ...................................................... 22

*Lerman v Bd. of Elections in City of New York*,
  232 F.3d 135 (2d Cir. 2000) ............................................................... 9

*Leroy v. New York City Bd. of Elections*,
  793 F. Supp. 2d 533 (E.D.N.Y. 2011) ...................................................... 14

*Matusick v. Erie County Water Authority*,
  757 F.3d 31 (2d Cir. 2014) ............................................................... 16

*Max v. Republican Comm. Of Lancaster Cty.*,
  587 F.3d 198 (3d Cir. 2009) ............................................................... 8

*Montano v. Lefkowitz*,
  575 F.2d 378 (2d Cir. 1978) .............................................................. 10

*Morse v. University of Vermont*,
  973 F.2d 122 (2d Cir. 1992) .............................................................. 20

*Neuman v. Ocean Cty. Democratic Cty. Comm.*,
  No. 16-2701 (FLW), 2017 WL 396443 (D.N.J. Jan. 30, 2017) .................................. 8

*New York State Bd. of Elections v. Lopez Torres*,
  552 U.S. 196 (2008) .................................................................. 6, 7, 8, 17

*O'Bert v. Vargo*,
   331 F.3d 29 (2d Cir. 2003) ................................................................. 17

*Organization for a Better Austin v. Keefe*,
   402 U.S. 415 (1971) ......................................................................... 19

*Ponterio v. Kaye*,
   328 Fed. Appx 671 (2d Cir. 2009) ..................................................... 11, 12

*Procunier v. Navarette*,
   434 U.S. 555 (1978) ......................................................................... 15

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (1977) ...................................................................... 24

*Ruston v. Town Bd. for Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010) ............................................................... 18

*Schwartz v. Mayor's Comm. on Judiciary of City of New York*,
   816 F.2d 54 (2d Cir. 1987) ............................................................... 12

*Schwegel v. Chiaramonte*,
   4 A.D.3d 519 (2d Dep't 2004) .......................................................... 23

*Singer v. Fulton Cty. Sheriff*,
   63 F.3d 110 (2d Cir. 1995) ............................................................... 15

*Snyder v. Third Dep't Judicial Screening Comm.*,
   18 A.D.3d 1100 (3d Dep't 2005) ........................................................ 9

*Stolow v. Greg Manning Auctions Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y. 2003) ................................................ 22

*Strunk v. U.S. House of Representatives*,
   24 Fed. Appx 21 (2d Cir. 2001) ........................................................ 18

*Tiraco v. New York State Bd. of Elections*,
   963 F. Supp. 2d 184 (E.D.N.Y. 2013) ................................................ 14

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ......................................................................... 20

*Village of Willowbrook v. Olech*,
   528 U.S. 562 (2000) ................................................................. 13, 16, 17

*Yassky v. Kings County Democratic Cty. Committee*,
  259 F. Supp. 2d 210 (E.D.N.Y. 2003) ....................................................................................... 9

## **Rules, Statutes, and Authorities**

**Page(s)**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

28 U.S.C. § 1367(c)(3) ............................................................................................................ 19

28 U.S.C. § 1983 ...................................................................................................................... 11

42 U.S.C. § 1983 ................................................................................................................... 2, 6

N.Y. Elec. Law § 6-106 (2017) ................................................................................................ 6

Defendants Kings County Democratic County Committee ("KCDCC") and Frank R. Seddio ("Seddio") submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff Laura Lee Jacobson ("Jacobson") fails to state any claim under federal law upon which relief can be granted and because the Court otherwise lacks subject matter jurisdiction.

## PRELIMINARY STATEMENT

Jacobson was an elected justice of the Supreme Court of the State of New York, Kings County, with a fourteen-year term of office from January 1, 2002 through December 31, 2016. In early 2016, Jacobson sought the endorsement of the Executive Committee of the KCDCC (the "Executive Committee") in her effort to win reelection as a Justice of the New York Supreme Court. According to its internal rules, the Executive Committee will only endorse judicial candidates found qualified by the Judicial Screening Committee ("Screening Committee").[1] After interviews with Jacobson and research into her references, the Screening Committee did not recommend Jacobson for reelection.  Following this rejection by the Screening Committee, Jacobson pursued an unsuccessful appeal and later withdrew her candidacy for the New York Supreme Court "unequivocally and with prejudice." (*See* Ex. 1, Jacobson 6/10/16 Ltr.).[2] Following the withdrawal of her candidacy, unfavorable news articles appeared in the local press, which prompted Jacobson to bring this action.

The crux of Jacobson's Amended Complaint centers on her claims that defendants violated her federal and state equal protection rights by allegedly disclosing confidential

---

[1] The Screening Committee consists of volunteer lawyers drawn from diverse bar associations, legal services organizations, and a law school.

[2] Exhibits referenced in this memorandum of law are annexed to the accompanying Declaration of Edward M. Spiro, dated October 6, 2017.

information about her candidacy—specifically, that she was found "not qualified." Additionally, Jacobson alleges, without any factual proof whatsoever, that members of the KCDCC and Screening Committee made defamatory statements about her candidacy, including her decision to withdraw her candidacy, to the *New York Post*, which later published these statements.

Even assuming that all of Jacobson's allegations are true for the purpose of this motion to dismiss, Jacobson still fails to assert any cognizable federal or state claims. Jacobson fails to state a claim for violation of her federal equal protection rights because (i) the KCDCC and Seddio are not state actors pursuant to 42 U.S.C. § 1983, (ii) Jacobson does not adequately plead that she is a "class of one," and (iii) Seddio is otherwise entitled to qualified immunity. Moreover, Jacobson's claims for injunctive relief have been rendered moot.

Importantly, should this Court dismiss all of Jacobson's federal claims, then this Court should decline to exercise supplemental jurisdiction over the remaining state claims as there is no diversity jurisdiction.  However, if the Court were to decide the state claims, they must similarly be dismissed as Jacobson fails to adequately plead that her state equal protection rights were violated, that the KCDCC and Seddio breached a contract with her, or that the KCDCC and Seddio engaged in libel or slander.

## **PROCEDURAL BACKGROUND**

On August 26, 2016, Jacobson commenced the instant action. The Complaint included a total of eight claims against the defendants, with four claims based on federal law and the remainder based on state law. For her federal claims, Jacobson alleged that she was a "class of one" because the defendants violated her equal protection rights by: (1) allegedly releasing her confidential information pertaining to the judicial screening process but not the confidential information of "similarly situated" incumbent judges seeking endorsement or other "similarly

situated" candidates for endorsement; (2) allegedly selectively violating their own internal committee rules concerning her candidacy but not the candidacy of "similarly situated" incumbent judges or other candidates seeking endorsement; and (3) conspiring to violate their own internal rules to deny her for recommendation and re-nomination as an incumbent judge.  In addition to seeking damages, Jacobson sought injunctive relief to disband the Screening Committee and enjoin the KCDCC from continuing its practice of endorsing candidates who are recommended by the Screening Committee.

Jacobson's Complaint also alleged state constitutional claims that mirrored her "class of one" federal equal protection claims.  Jacobson additionally alleged that the defendants (i) breached an implied contract with Jacobson to keep her confidential information from being released; and (ii) committed libel and slander by allegedly releasing Jacobson's confidential information and by allegedly making defamatory statements to the *New York Post*.

On September 30, 2016, all defendants submitted pre-motion letters to the Honorable LaShann DeArcy Hall in anticipation of filing motions to dismiss on the basis that Jacobson's Complaint failed to state a claim upon which relief could be granted.  Judge DeArcy Hall held a pre-motion conference on January 19, 2017. (*See* Ex. 2, 1/19/17 Pre-Mot. Conf. Tr.). Judge DeArcy Hall noted during oral argument that based on the Complaint "[t]here is no class of one, and based on allegations that exist here right now, the likelihood that the Court would find a class of one, well, it's unlikely, I'll put it that way." (*Id.* at 47:24-48:2).  In lieu of setting a briefing schedule for the motions to dismiss, Judge DeArcy Hall granted Jacobson's request to amend the Complaint.

On March 21, 2017, Jacobson served an Amended Complaint. (*See* Ex. 3, Amended Complaint). The Amended Complaint alleges three claims under federal law.

<u>First</u>, Jacobson alleges that she is a "class of one" because her federal equal protection rights were violated with the release of her confidential information when compared to four categories of comparators, namely, (a) "Rule 31.b Comparators" consisting of other candidates who were voted down by the Screening Committee and withdrew their candidacy, (b) "Rule 20 Comparators" consisting of candidates whom the Screening Committee notified of areas of concern for their candidacy, (c) "Rule 10 Comparators" consisting of candidates who were incumbent judges and found "qualified" by the Screening Committee, and (d) "Rule 9 Comparators" consisting of candidates who were found "not qualified at this time" or not found "qualified" as opposed to Jacobson who was found "not qualified."

<u>Second</u>, Jacobson alleges that she is a "class of one" because the individual defendants conspired to violate Jacobson's equal protection rights by violating their own internal rules and by denying her for recommendation and re-nomination as an incumbent judge.

<u>Third</u>, Jacobson seeks injunctive relief against the defendants in order to (i) mandate that the defendants find Jacobson "qualified," (ii) prohibit defendants from stating false, defamatory and fabricated Screening Committee findings such as "not qualified" and "unqualified," (iii) prohibit several individual defendants from being members of the Screening Committee, and (iv) enjoin defendants from continuing to carry out unconstitutional practices in violation of their own rules.

The Amended Complaint also attempts to allege three state law claims, largely derivative of her federal claims.

First, Jacobson alleges she is a "class of one" because her state equal protection rights were violated with the release of her confidential information when compared to (a) "Rule 31.b Comparators," (b) "Rule 20 Comparators," (c) "Rule 10 Comparators," and (d) "Rule 9 Comparators."

Second, Jacobson asserts that defendants breached an implied contract with Jacobson to keep her confidential information from being released.

Third, Jacobson contends that defendants committed libel and slander by releasing Jacobson's confidential information and making alleged defamatory statements to the *New York Post*.

Following service of the Amended Complaint, all defendants submitted pre-motion letters on May 4, 2017 in anticipation of filing motions to dismiss the Amended Complaint. On August 3, 2017, the parties appeared for a pre-motion conference. (*See* Ex. 4, 8/3/17 Pre-Mot. Conf. Tr.). During the lengthy argument, Judge DeArcy Hall addressed the threshold issue of whether any state action was alleged, stating that "the default is that we start off with saying that we don't have state actors . . . ." (*Id.* at 6:23-24). Noting that the "only authority that [Jacobson has] put in front [of] me upon which I am to draw the conclusion that as a matter of law I can deem the defendants to have been state actors are cases that involved ballot access," Judge DeArcy Hall emphasized that the parties were "all in agreement . . . that this is not a ballot access case." (*Id.* at 8:12-18). On the "class of one" argument, Judge DeArcy Hall stated that "we all can agree that the standard, the bar to be able to be deemed as a class of one is particularly high . . . ." (*Id.* at 21:11-17). For Jacobson to meet this high burden, she "must find comparators that are identical in all relevant respects." (*Id.*). At the conclusion of the oral argument, Judge DeArcy Hall set a briefing schedule for defendants' motions to dismiss.

5

## ARGUMENT

**I.      The Federal Claims Must Be Dismissed**

Despite having amended her original Complaint, Jacobson still fails to allege any federal claim upon which relief can be granted in her Amended Complaint. Specifically, Jacobson fails to state a claim for violation of her equal protection rights because (i) the KCDCC and Seddio are not state actors, (ii) Jacobson does not adequately plead that she is a "class of one," and (iii) Seddio is otherwise entitled to qualified immunity.  Furthermore, Jacobson's claim for injunctive relief has been rendered moot.

**A. Defendants KCDCC and Seddio Are Not State Actors**

To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that she suffered a violation of a constitutional right and that the violation was committed under color of state law.  *See Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079 (2d Cir. 1990). Here, defendants KCDCC and Frank Seddio are not state actors because the alleged violations of the KCDCC's own internal rules were not committed under color of state law—in fact, the KCDCC's endorsement of a candidate is permissible pursuant to the defendants' constitutional associational rights as articulated in *New York State Board of Elections v. Lopez Torres*, 552 U.S. 196 (2008).

An individual, including an incumbent judge, seeking election as a Justice of the New York Supreme Court can pursue two paths—the candidate can seek the nomination of a political party or the candidate can petition to get on the ballot. For those candidates seeking the nomination of the Democratic Party, it is necessary to obtain the nomination at the Judicial Convention.  The Democratic Party nomination for Supreme Court Justice is determined by a vote of delegates at the party's Judicial Convention, as proscribed by state law.  N.Y. Elec. Law § 6-106 (2017).  Prior to the convention, Democratic Party voters elect convention delegates

6

through a representative primary process.  Notably, the elected delegates are not pledged to any candidate.  The candidates winning the vote of the elected delegates at the Judicial Convention will appear on the general election ballot as the Democratic Party's endorsed judicial candidates.

In Kings County, candidates typically seek the endorsement of the Executive Committee in the hope of prevailing at the Judicial Convention.  In order to get the Executive Committee's endorsement, it is necessary to submit an application to the Kings County Democratic Party's Screening Committee seeking a finding of "highly qualified" or "qualified." The internal rules of the KCDCC prevent the Executive Committee from endorsing a candidate found not qualified.  However, all candidates can pursue the Democratic Party nomination at the Judicial Convention.  Candidates lacking the Executive Committee's endorsement can still be placed into nomination at the Judicial Convention, which could result in their selection by the convention delegates.  *See Lopez Torres,* 552 U.S. at 201.

An alternative route to election as a Supreme Court justice is to bypass the convention process entirely, instead submitting a nominating petition with accompanying signatures to be eligible for the general election ballot.  This approach allows an incumbent judge to obtain ballot access without the recommendation of the Executive Committee.

As articulated in *Lopez Torres*, the Democratic Party's judicial election process does not violate the U.S. Constitution.  Party leaders have constitutional association rights to nominate candidates of their own choosing,[3] especially because an endorsement by a committee such as

---

[3] *See Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989) ("Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association.. . . Freedom of association means not only that an individual voter has the right to associate with the political party of her choice . . . but also that a political party has a right to . . . identify the people who constitute the association . . . and to select a . . . standard bearer who best represents the party's ideologies and preferences.") (quotations omitted).

the Executive Committee does not guarantee election and a candidate for election can have

access to the ballot by other means.  As the Supreme Court in *Lopez Torres* reasoned:

> No New York law compels election of the leadership's slate—or,
> for that matter, compels the delegates elected on the leadership's
> slate to vote the way the leadership desires. And no state law
> prohibits an unsupported candidate from attending the convention
> and seeking to persuade the delegates to support her. Our cases
> invalidating ballot-access requirements have focused on the
> requirements themselves, and not on the manner in which political
> actors function under those requirements.

*Lopez Torres*, 552 U.S. at 205.  Jacobson's rejection by the Screening Committee and failure to

get an endorsement from the Executive Committee also do not arise to a violation of her equal

protection rights. *See Fahey v. Darigan*, 405 F. Supp. 1386, 1391 (D.R.I. 1975) ("Equal

Protection Clause is not implicated in the mere endorsement of a candidate as the party's pick to

succeed in a primary election.").

Importantly, Jacobson's counsel concedes this is not a ballot access case.  (*See* Ex. 2,

1/19/17 Tr. at 22:13-18 ("That's not what this case is about . . . It's not about ballot access,

absolutely not.")).  Jacobson was not denied access to the ballot, since prior to her withdrawing

her candidacy *with prejudice*, she could have obtained the Democratic Party nomination through

other means without the endorsement of the Executive Committee.  The KCDCC's endorsement

process does not constitute state action as it governs only the Democratic Party's intra-party

endorsement, not a judicial candidate's access to the general election ballot.  *See Max v.

Republican Comm. of Lancaster Cty.*, 587 F.3d 198, 200 (3d Cir. 2009) (finding political party's

endorsement of a candidate was not state action and citing other decisions that "also declined to

elevate internal party issues to a constitutional level"); *see also Neuman v. Ocean Cty.

Democratic Cty. Comm.*, No. 16-2701 (FLW), 2017 WL 396443, at *7 (D.N.J. Jan. 30, 2017)

(dismissing candidate's Section 1983 claim because political party's failure to endorse candidate

did not constitute state action, as plaintiff's allegations were "confined to the [party's] internal candidate-selection process"); *Blank v. Heineman,* 771 F. Supp. 1013, 1018 (D. Neb. 1991) (dismissing suit alleging that plaintiffs were wrongfully removed as officers of state political party and noting that "[c]ourts generally and consistently have been reluctant to interfere with the internal operations of a political party"); *Snyder v. Third Dep't Judicial Screening Comm.*, 18 A.D.3d 1100, 1101 (3d Dep't 2005) (finding judicial screening committee that submitted subjective rankings of candidates to governor were not performing a "government function" and therefore not subject to FOIL).

Moreover, the cases Jacobson relies upon in support of her allegations of state action are all distinguishable because those cases involved ballot access, which is concededly not the case here. (*See* Ex. 2, 1/19/17 Tr. at 22:13-18).  Jacobson erroneously relies upon *Yassky v. Kings County Democratic County Committee*, 259 F. Supp. 2d 210 (E.D.N.Y. 2003) in support of her argument that the KCDCC and Seddio are state actors. In *Yassky*, Judge Gershon found that the KCDCC was a state actor solely because it enacted a rule which effectively reinstated a previously invalidated Election Law provision.[4]  The *Yassky* court reasoned that "although political parties themselves have certain First Amendment associational rights . . . those rights do not allow the political parties to engage in conduct, *directly related to ballot access*, that would be unconstitutional if done by the State." *Id.* at 216 (emphasis added). Thus, the KCDCC was only deemed to be a state actor in *Yassky* because it enacted a rule restricting ballot access that was virtually identical to a law previously found to be unconstitutional. There are no such similarities here, as Jacobson concedes this is not a case about ballot access, and indeed,

---

[4] *See Lerman v Bd. of Elections in City of New York*, 232 F.3d 135, 145 (2d Cir. 2000) (invalidating petition witness residency requirement as an unconstitutional burden on First Amendment-protected political speech and association rights).

Jacobson had multiple avenues to obtain access to the ballot, which she ultimately declined to exercise.

*Montano v. Lefkowitz*, 575 F.2d 378, 383-84 (2d Cir. 1978), also relied upon by Plaintiff, is similarly a ballot access case. The Second Circuit in *Montano* stated "[w]e join with 'most commentators' and 'many lower courts' in holding that *when the state grants political parties the right to nominate candidates and then gives those nominees special access to the ballot . . . the parties' procedures constitute state action.*" *Id.* at 383 n.7 (emphasis added). Unlike *Montano,* neither candidates recommended by the Screening Committee nor those endorsed by the Executive Committee receive "special access to the ballot," as the candidates receiving the Democratic Party endorsement are chosen by the elected Judicial Convention delegates, not the KCDCC. The Second Circuit's holding that a party's procedures constitute state action in *Montano* is limited to cases that involve ballot access, making the holding inapplicable here.

It follows that Jacobson fails to state a claim upon which relief can be granted because neither the KCDCC nor Seddio are state actors.

**B. Jacobson Fails to Establish that She Is a "Class of One"**

Nonetheless, even if defendants are found to be state actors, Jacobson would still not succeed in her "class of one" equal protection argument because the Supreme Court has held that a "class of one" theory does not apply in the public employment context. *See Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 603 (2008).

Generally, to succeed on a "class of one" claim, a plaintiff must establish that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are

sufficient to exclude the possibility that the defendants acted on the basis of a mistake."

*Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006). In other words, a plaintiff asserting

a class of one equal protection claim must adequately plead that any differential treatment was

without a rational basis.

However, the Supreme Court in *Engquist* explicitly held that a "class of one" claim will

not lie where the conduct at issue involves "discretionary decision-making based on a vast array

of subjective, individualized assessments" such as public employment. *Engquist*, 553 U.S. at

603. The Supreme Court reasoned that "such cases treating like individuals differently is an

accepted consequence of the discretion granted to governmental officials. This principle applies

most clearly in the employment context, where decisions are often subjective and individualized,

resting on a wide array of factors that are difficult to articulate and quantify." *Id*.[5]

As a result, the "class of one" theory of equal protection does not apply in the public

employment context. Jacobson, as a judge and public employee, is precluded from asserting such

a claim. Like the plaintiff in *Engquist*, Jacobson is not asserting that she was found "not

qualified" because she is a member of a suspect or identified class (such as race, sex, national

origin), but that the defendants allegedly "maliciously, intentionally, vindictively and/or in

retaliation" disclosed the negative findings of the Screening Committee to the *New York Post*.

*See also Ponterio v. Kaye*, 328 Fed. Appx 671 (2d Cir. 2009) ("class of one" theory of equal

protection does not apply in the public employment context).

In *Ponterio*, the plaintiff, a retired New York State Supreme Court Justice, brought an

action under 28 U.S.C. § 1983, including an allegation that he was denied equal protection of the

---

[5] Indeed, the task of evaluating judges is by its nature a highly subjective inquiry, as each judge differs in her judicial temperament, courtroom management skills, quality of written decisions, reversal rate on appeal, and skills at trial.

law.  Ponterio's claim related to his denial of certification for continued service as a retired

justice after reaching the mandatory retirement age of 70.  The Second Circuit affirmed the lower

court's dismissal of the equal protection claim, finding that defendants had "very nearly

unfettered discretion" in determining whether to grant or deny the applications for certification

of retired state judges, and that *Engquist* otherwise barred Ponterio's equal protection claim in

the public employment context.  *Id.* at 673.

Jacobson argues that *Ponterio* should not apply because that case did not involve political

parties. (*See* Ex. 4, 8/3/17 Tr. at 39:19-22). Nonetheless, the proposition that judges do not have

a property right to their jobs as public employees still stands. *See Conyers v. Rossides*, 558 F.3d

137, 152 (2d Cir. 2009) ("Because Conyers, like Engquist, does not assert an employment-

related equal protection claim arising out of his membership in any particular group, but rather a

claim based upon a general allegation that an agency 'treated a[ ] [prospective] employee

differently from others for a bad reason, or for no reason at all,' . . . his equal protection claim

cannot survive defendant's motion to dismiss."); *see also Schwartz v. Mayor's Comm. on*

*Judiciary of City of New York*, 816 F.2d 54, 57 (2d Cir. 1987) (New York family court judge had

no constitutionally protected right in being reappointed to the bench after her initial appointment

expired; judges seeking reappointment were subject to same discretionary standards as

candidates seeking judicial appointment for the first time, and fact that many, or even most,

incumbent judges had been reappointed could not operate to raise judge's "subjective

expectation" to constitutionally protected right, especially when doing so would contradict

relevant statutes and rules.).  Moreover, Jacobson conceded that she has no property interest in

being reelected during oral argument at the pre-motion conference on January 19, 2017.[6]  Given

that Jacobson has no basis to assert a "class of one" claim based upon the Screening Committee's

denial of a "qualified" recommendation, she also cannot assert a "class of one" claim based upon

the procedures employed in processing her application.

The "class of one" theory typically protects against a state actor's "irrational and wholly

arbitrary" demands on a plaintiff's real property rights. *See Vill. of Willowbrook v. Olech,* 528

U.S. 562, 565 (2000). Plaintiff's argument to extend the "class of one" protections to cover

purely procedural issues is unsupported by the cases cited in her pre-motion letter. (*See* Dkt. No.

33). For example, Jacobson repeatedly invokes *Village of Willowbrook v. Olech*, where the

plaintiff's allegation that the defendant municipality intentionally demanded a 33-foot easement

to connect her property to the water supply, in contrast to the 15-foot easement required of other,

comparable property owners, was sufficient to state a "class of one" equal protection claim.

Similarly, in *545 Halsey Lane Properties, LLC v. Town of Southampton*, 39 F. Supp. 3d 326

(E.D.N.Y. 2014), the court upheld a "class of one" claim regarding the enforcement of zoning

regulations, where plaintiffs argued that the municipal board's rejection of plaintiff's application

to build a structure on their property was in contrast to the board's allowance of similar

structures for other property owners.  In each of these cases, the "class of one" claims challenge

an arbitrary decision made by a state actor, not the function of *how* the decision was made.

By contrast, most of Jacobson's allegations here challenge the manner in which the

Screening Committee functioned, not the outcome of the decision process.  Jacobson cites no

authority supporting her argument that equal protection rights should be extended to cover the

functioning of a state actor in making a given decision.  Jacobson's argument that the equal

---

[6] Specifically, Jacobson's counsel stated "just to clarify certain things, Justice Jacobson has no property interest to be re-nominated to the bench." (Ex. 2, 1/19/17 Tr. at 20:7-9.)

protection clause's constitutional protections should be afforded to purely procedural grievances, such as how the Screening Committee reviewed her application, trivializes the "class of one" doctrine. Plaintiff's attempt to raise purely procedural issues as a "class of one" claim should be rejected.

Jacobson additionally fails to prove how she is a "class of one" when her alleged treatment is compared to the four categories of comparators identified in the Amended Complaint. Jacobson must demonstrate that the classes of comparators are "prima facie identical in all relevant respects." *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184 (E.D.N.Y. 2013); *see also Leroy v. New York City Bd. of Elections*, 793 F. Supp. 2d 533 (E.D.N.Y. 2011). However, for three groups of comparators, under Rule 9, Rule 20, and Rule 31.b, Jacobson fails to identify a single sitting judge found "not recommended" by the Screening Committee. Although Jacobson does identify two judges as comparators for her Rule 10 argument, she fails to allege any details about those judges to demonstrate that their judicial records and temperament were "prima facia identical in all relevant respects" to Jacobson. Without more than bare conclusory statements asserting the similarity of comparators, Jacobson has failed to sufficiently plead a "class of one" equal protection claim.

Finally, as Jacobson has failed to allege that her constitutional rights were actually violated, her claim alleging a conspiracy under Section 1983 must also fail. Federal courts traditionally impose a heightened pleading standard for Section 1983 conspiracy claims on the theory that these claims are easy to plead but difficult to prove. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed"). However, a conspiracy claim will only lie when

the plaintiff has already proven a violation of her constitutional rights. *See Singer v. Fulton Cty.*

*Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  As Jacobson fails to state an actionable violation of her

equal protection rights as a "class of one," her conspiracy claim must also be dismissed.

### C.  Defendant Seddio Is Entitled To Qualified Immunity

Alternatively, even if this Court determines that Seddio was functioning as a state actor,

Seddio is still entitled to qualified immunity. Even assuming that all of Jacobson's allegations

are true for the purpose of this motion to dismiss, her allegations in the Amended Complaint do

not support the contention that Seddio had notice that his actions violated clearly established

statutory or constitutional rights.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) ("[W]e

conclude today that bare allegations of malice should not suffice to subject government officials

either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that

government officials performing discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate *clearly established statutory or*

*constitutional rights of which a reasonable person would have known.*") (emphasis added); *see*

*also Procunier v. Navarette*, 434 U.S. 555, 565 (1978) ("As a matter of law, therefore, there was

no basis for rejecting the immunity defense on the ground that petitioners knew or should have

known that their alleged conduct violated a constitutional right. Because they could not

reasonably have been expected to be aware of a constitutional right that had not yet been

declared, petitioners did not act with such disregard for the established law that their conduct

cannot reasonably be characterized as being in good faith.") (quotations omitted).

The threshold inquiry in a qualified immunity analysis is whether plaintiff's allegations,

if true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002). From

there, a court must analyze if the actions violated "clearly established statutory or constitutional

rights of which a reasonable person would have known." *Id.* at 739. The Second Circuit in *Matusick v. Erie County Water Authority*, 757 F.3d 31, 60 (2d Cir. 2014) identified the following factors to consider in determining whether a constitutional right is "clearly established": "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful."

Here, there is no clearly established law that Jacobson could refer to in support of her contention that defendants were put on notice that Seddio's actions were unconstitutional or a violation of her rights. In fact, Jacobson's counsel conceded that there is limited jurisprudence in this area of election law, stating that "there's a dearth - - there's not many cases, not qualified immunity, I'm talking about the class of one because they're not easy to get to . . . I'm just saying it's relevant to the dearth of jurisprudence in certain areas." (*See* Ex. 4, 8/3/17 Tr. at 47:22-25; 48:10-11). This concession recognizes the lack of legal authority on this topic that could have possibly put Seddio on notice of the alleged unconstitutional nature of his supposed acts.

Moreover, Jacobson inaccurately relies upon *Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000) in support of her contention that qualified immunity should not apply in cases where there "is a prior history between the participants in the caption" and "intentional malicious allegations of the defendants being the motivating factor [for actions taken]." (*See* Ex. 4, 8/3/17 Tr. at 41:3-13).  *Olech* is inapposite for several reasons.  First, and most importantly, the Supreme Court's decision in *Olech* does not address qualified immunity, as the claim was brought against a municipality rather than an individual. Second, *Olech* falls outside of the public

employment context, thus its holding is inapplicable to the present case. Third, the Supreme

Court never analyzed the respondent's subjective motivation behind the difference in treatment

for the plaintiffs. Contrary to Jacobson's assertion, the Supreme Court specifically stated it was

not addressing the lower court's reliance on "subjective ill will" in allowing a class of one claim.

*See Olech*, 528 U.S. at 565.  Nor could "subjective ill will" be shown in this case, as the Supreme

Court's decision in *Lopez Torres* upholding the very judicial convention at issue here would lead

defendants to believe they had nearly unfettered discretion in screening candidates and deciding

which candidates to support.  *See Lopez Torres*, 552 U.S. at 205 (noting that "cases invalidating

ballot-access requirements have focused on requirements themselves, and not on the manner in

which political actors function under those requirements."). Therefore, Jacobson's reliance on

*Olech* to assert that a prior history between the parties may impact the applicability of qualified

immunity is mistaken.

Jacobson also relies upon *Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) to

support her argument that qualified immunity should not apply.  At oral argument, Jacobson's

attorney claimed to quote *Husain* for the proposition that dismissal on the grounds of qualified

immunity requires the court to find that "no reasonable jury could find that the defendant's

conduct was unreasonable."[7]  However, the Second Circuit cites no such standard.  The *Husain*

decision instead cites *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003), which states that

"[s]ummary judgment should not be granted on the basis of a qualified immunity defense . . .

unless the defendant shows that no reasonable jury, viewing the evidence in the light most

favorable to the Plaintiff, could conclude that the defendant's actions were objectively

---

[7] *See* Ex.4, 8/3/17 Tr. at 41:15-21 (". . . [I]f I could, I just want to give you the exact quote, Your Honor, forgive me. *Husain v. Springer*, a Second Circuit case, 494 F.3d 108 at 133: 'To dismiss on qualified immunity grounds, the court must find as a matter of law that it is beyond doubt that no reasonable jury could find that the defendant's conduct was unreasonable.'")

unreasonable *in light of clearly established law*." (emphasis added; quotations omitted).  In *Husain*, the court determined that the defendant's conduct was prohibited by federal law, but the Court denied summary judgment because there was a material issue of fact on whether the president's belief that his actions were lawful was objectively unreasonable.  Here, given the lack of clearly established law, no reasonable jury could conclude that the KCDCC and Seddio's actions were objectively unreasonable such that qualified immunity would not apply.[8]

### D.  Plaintiff's Claim for Injunctive Relief Is Moot

While the Amended Complaint seeks broad injunctive measures against all the defendants, Jacobson is not entitled to any such relief. Specifically, Jacobson seeks an order (i) mandating that defendants find Jacobson "qualified," (ii) prohibiting defendants from making false statements of the Screening Committee findings such as "not qualified" and "unqualified," (iii) prohibiting several individual defendants from serving on the Screening Committee, and (iv) enjoining further violations of the Screening Committee's rules.

Jacobson's request to be found "qualified" by the Screening Committee has been rendered moot, as she has already withdrawn her candidacy from consideration *with prejudice*. As such, Jacobson's claim for injunctive relief should be dismissed. *See generally Strunk v. U.S. House of Representatives*, 24 Fed. App'x 21 (2d Cir. 2001) (voter's request for injunctive relief challenging New York's method of selecting presidential electors was moot because presidential electors were already seated and the President and Vice-President had already been elected); *see also Ford v. Reynolds*, 316 F.3d 351 (2d Cir. 2003) (injunctive relief sought by students to

---

[8] Moreover, *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003), cited by Jacobson at the pre-motion conference in support of her argument against the application of qualified immunity (*See* Ex. 4, 8/3/17 Tr. at 45:16-17), similarly does not address the issue of qualified immunity.  Indeed, that decision was rendered obsolete according to the Second Circuit's decision in *Ruston v. Town Board for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010), which determined that the *DeMuria* court applied the incorrect pleading standard for a "class of one" equal protection claim. *Ruston*, 610 F.3d at 59 (holding that the Supreme Court's decision in *Iqbal* mandated that "class of one" claims must similarly identify other similarly situated comparators with particularity).

prevent public college from taking any further disciplinary action against them had become moot because each named student graduated from college without suffering any further disciplinary action and there was no allegation that any students still attending college were at risk of disciplinary action arising out of same event).[9]

Additionally, Jacobson's request for an injunction that would prohibit defendants from making statements about the Screening Committee's findings would be struck down as a violation of defendants' First Amendment rights.  An injunction, "so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 418 (1971) (further noting that, in evaluating an injunction, "courts do not concern themselves with the truth or validity of the publication").  Jacobson's request for an injunction prohibiting defendants' speech should therefore be denied.

## II.     The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Claims, or in the Alternative, the State Claims Must Be Dismissed

Should the Court dismiss all of Jacobson's federal claims, then the Court should decline to exercise supplemental jurisdiction over the remaining state claims.  Upon the dismissal of federal claims, the district court has statutory authority and discretion to dismiss any pendant state claims.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which is has original jurisdiction.")  Here, without Jacobson's federal claims, there is no diversity jurisdiction that would warrant the assertion of supplemental jurisdiction.

---

[9] Because Jacobson is no longer a candidate, her request to prohibit several individual defendants from serving on the Screening Committee is similarly moot.

When a district court's discretion is triggered under Section 1367(c)(3), "it balances the traditional values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see id.* ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.")

Each of the four factors counsel in favor of declining to exercise supplemental jurisdiction over Jacobson's state law claims. First, judicial economy favors declining supplemental jurisdiction, as this case has not progressed past the pleadings stage. Additionally, Jacobson would not suffer any inconvenience or prejudice by litigating her state law claims in state court. Finally, comity weighs in favor of having Jacobson pursue her state law claims in state court, where those claims "will be afforded a 'surer-footed reading of applicable law.'" *Kolari,* 455 F.3d at 123-24 (quoting *Gibbs*, 383 U.S. at 726); *see also Morse v. Univ. of Vermont,* 973 F.2d 122, 127-28 (2d Cir. 1992) ("Consequently, it may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim, particularly where the state cause of action that remains for decision in federal court involves novel questions of state law.") As such, this Court should decline to exercise supplemental jurisdiction over the remaining state claims.

However, should the Court elect to retain supplemental jurisdiction over Jacobson's claims based on New York State law, the state claims must also be dismissed for failure to state claims upon which relief can be granted. Specifically, Jacobson has failed to adequately plead

that her state equal protection rights were violated, that the KCDCC and Seddio breached a contract with her, or that the KCDCC and Seddio engaged in libel or slander.

**A.  Jacobson Fails to State a Claim for Violation of Her Equal Protection Rights Under the State Constitution Because Jacobson Is Not a "Class of One"**

As with the federal claims, Jacobson similarly fails to state a claim for violation of her equal protection rights under the New York State Constitution. Jacobson fails to assert that she has a "class of one" equal protection claim under state law because New York law also precludes public employees from bringing equal protection claims.  *See Bein v. Cty. of Nassau*, 118 A.D.3d 650 (2d Dep't 2014) (finding public employee could not bring equal protection claim based on "class of one" theory). For the reasons set forth regarding Jacobson's federal "class of one" claim, it follows that the claim alleging a violation of her equal protection rights under the New York State Constitution should similarly be dismissed.

**B.  There Was No Contract Between Jacobson and the KCDCC and Seddio**

To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Harsco Corp. v. Sequi,* 91 F.3d 337, 348 (2d Cir. 1996).

In her Amended Complaint, Jacobson asserts that there was an implied contract between her and the Screening Committee concerning the confidentiality of Jacobson's application and the Screening Committee's findings concerning her candidacy. However, as a preliminary issue, Jacobson's breach of contract claim against the KCDCC and Seddio fails as a matter of law because the Amended Complaint fails even to assert that Jacobson had a contract with the KCDCC or Seddio.

21

Additionally, the Screening Committee's rules do not create enforceable contract rights as to Jacobson.  Courts have held that an organization's rules do not create contract rights for parties who are not members of the organization.  *See Stolow v. Greg Manning Auctions Inc.,* 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003) ("bylaws of an unincorporated association express the terms of a contract which define privileges secured and the duties assumed by those who have become members. A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws.")  Jacobson is not a member of either the Screening Committee or the KCDCC, and therefore has no standing to assert a breach of contract based upon an alleged breach of the Screening Committee or KCDCC rules.

The proposition that a political party's internal rules could form a binding contract has similarly been rejected.  *See Kurzon v. Democratic Natl. Comm.*, 197 F. Supp. 3d 638, 644 (S.D.N.Y. 2016) (plaintiff could not establish that political party's national charter or state plan could be construed as enforceable contracts).  In *Kurzon*, the court rejected plaintiff's argument that the process used by the Democratic National Committee and the New York State Democratic Committee to select a nominee for President of the United States at its national convention, particularly the use of unpledged superdelegates, constituted a breach of contract, noting that the defendant provided no authority that the internal rules could be construed as enforceable contracts. Similarly here, Jacobson provides no authority whatsoever for the proposition that she had an enforceable contract (let alone any contract) between her and the KCDCC and Seddio.  As such, Jacobson's claim for breach of contract must be dismissed.

### C.  Jacobson Fails To State A Claim For Libel And Slander

In New York, a plaintiff must establish five elements to recover in libel: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *See Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014) ("On closer inspection, the first element of these five is actually composed of multiple parts: there must be (A) a writing, it must be (B) defamatory, it must be (C) factual—that is, not opinion—and it must be (D) about the plaintiff, not just a general statement."). Only factual statements are actionable as defamation or libel because derogatory statements which may be categorized as "opinion" as opposed to "fact" are completely legal. *Chau*, 771 F.3d at 127.

Jacobson fails to identify with particularity who made the statements to the *New York Post* that form the basis of her claim for libel or slander.  The Amended Complaint merely states the conclusory and factually unsupported allegations that "defendants . . . disclosed confidential information about Plaintiff to reporters" (Ex. 3, Am. Compl. ¶ 57), yet Jacobson fails to identify with particularity which defendant allegedly made the statements.  Jacobson's conclusory statements fail to identify which, if any, defendants made, or directed these statements to be made, and therefore cannot form a prima facie claim for libel or slander. *See Schwegel v. Chiaramonte*, 4 A.D.3d 519, 521 (2d Dep't 2004) (finding slander counterclaim insufficient as a matter of law when it "failed to identify the source as either plaintiff," among other deficiencies); *see also Goldberg v. Sitomer, Sitomer & Porges*, 97 A.D.2d 114, 117 (1st Dep't 1983) (affirming dismissal of libel claim for failure to meet CPLR § 3013 requirement that "statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions [and] occurrences, . . . intended to be proved . . .").

Additionally, the statements cited by Jacobson are not actionable because they are merely statements of opinion.  According to the Amended Complaint, Jacobson alleges that defendants made a series of defamatory statements to the *New York Post*, including that Jacobson was: "not the brightest bulb in the courthouse to begin with," "disliked," "has a poor reputation," "considered judicially mediocre," and "lacked a work ethic." Yet each of these alleged statements are based on opinion, not on fact, and are therefore not actionable as either libel or slander. *See Chau*, 771 F.3d at 127.  Indeed, under New York law, "[t]he expression of opinion, even in the form of pejorative rhetoric, relating to fitness for judicial office or to performance while in judicial office, is safeguarded" and cannot form the basis of a claim for libel or slander. *See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380-81 (1977) (finding plaintiff, a state judge, "may not recover from defendants for simply expressing their opinion of his judicial performance, no matter how unreasonable, extreme or erroneous these opinions might be.") Accordingly, Jacobson's claim for libel or slander similarly warrants dismissal.

## CONCLUSION

For the reasons set forth above, defendants Kings County Democratic County Committee and Frank R. Seddio's motion to dismiss should be granted in its entirety.

Dated: New York, New York
     October 6, 2017

                    MORVILLO ABRAMOWITZ GRAND
                    IASON & ANELLO, P.C.

                    By: _____
                          Edward M. Spiro
                    565 Fifth Avenue
                    New York, New York 10017
                    (212) 856-9600
                    espiro@maglaw.com

                    *Attorneys for Defendants Kings County Democratic*
                    *County Committee and Frank R. Seddio*