

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of October, two thousand nineteen.

PRESENT:
  ROBERT A. KATZMANN,
    *Chief Judge*,
  RICHARD C. WESLEY,
  JOSEPH F. BIANCO,
    *Circuit Judges*.

---

LAURA LEE JACOBSON,

       *Plaintiff-Appellant*,

    v.                                              No. 18-3280

KINGS COUNTY DEMOCRATIC COUNTY COMMITTEE,
JUDICIAL SCREENING COMMITTEE FOR THE DEMOCRATIC
PARTY IN AND FOR KINGS COUNTY, FRANK R. SEDDIO,
Individually and in His Official and Representative Capacity as
County Chair of the Kings County Democratic County Committee,
MARTIN W. EDELMAN, Individually and in His Official and
Representative Capacity as Chairperson of the Judicial Screening
Committee for the Democratic Party in and for Kings County,
STEVEN R. FINKELSTEIN, STEVE DECKER, ABAYOMI O.
AJAIYEOBA,

       *Defendants-Appellees*.

MANDATE ISSUED ON 10/29/2019

John and Jane Does, Nos. 1-20, so named as their identities
are not yet known, intended to represent persons who has
access to confidential information and/or records of candidate
Jacobson's screening and results by Judicial Screening Committee
for the Democratic Party in and for Kings County pertaining
to plaintiff, who disclosed such materials outside of the Judicial
Screening Committee for the Democratic Party in and for Kings
County to Seddio, Kings County Democratic County Commitee,
Kings County Democratic County Committee's media consultant
George Artz, and inter alia, members of the public and the media,
including, the New York Post,

*Defendants.*

| For Plaintiff-Appellant Laura Lee Jacobson: | RAVI BATRA (TODD B. SHERMAN, *on the brief)*, The Law Firm of Ravi Batra, P.C., New York, NY. |
|---|---|
| For Defendants-Appellees Kings County Democratic County Committee and Frank R. Seddio: | EDWARD M. SPIRO, Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY. |
| For Defendants-Appellees Martin W. Edelman, Steven R. Finkelstein, Steve Decker, Abayomi O. Ajaiyeoba, and John and Jane Does, Nos. 1-20: | GEORGE F. CARPINELLO (TERESA A. MONROE, MARK A. SINGER, *on the brief*), Boies Schiller Flexner LLP, Albany, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Laura Lee Jacobson appeals a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*), dismissing her Amended Complaint against defendants-appellees Kings County Democratic County Committee, along with its Judicial Screening Committee ("JSC") and many of its employees and officials (collectively, the "KCDCC"). Jacobson alleges that the KCDCC violated some of the committee's rules governing

its endorsement process for the Second District judicial nominating convention, that these violations effectively prevented her from being considered for renomination to her position as a New York State Supreme Court Justice, and that the violations culminated in defamatory leaks to the *New York Post*. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the district court's grant of a motion to dismiss *de novo*; we accept as true all factual claims and draw all reasonable inferences in [the plaintiff's] favor." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 62 (2d Cir. 2019).[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached . . . or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that the party charged with the deprivation of a federal right "be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). "[A] private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the State." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). As the Supreme Court has long held, "those functions include . . . running elections." *Id.* at 1929. Hence, while a party "has a First Amendment right . . . to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform," that right is "circumscribed . . . when the State

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

gives the party a role in the election process—as New York has done here by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot." *New York State Board of Elections v. Lopez Torres*, 552 U.S. 196, 202-03 (2008) ("*Lopez Torres II*"); *see Montano v. Lefkowitz*, 575 F.2d 378, 383 & n.7 (2d Cir. 1978). Consistent with that rule, this Court has distinguished between a party's "conduct of its internal party affairs which have no direct relation to the electoral process" and "instances where committeemen perform public electoral functions (e.g., the nomination of candidates to fill vacancies or to run in special elections, or the giving [of] consent to candidacies by non-members of the party)." *Seergy v. Kings Cty. Republican Cty. Comm.*, 459 F.2d 308, 314 (2d Cir. 1972). In the former circumstance, the party acts as a private organization and is protected from constitutional scrutiny. *See id.* at 313-14. In the latter, the party is a state actor and certain constitutional duties—including those imposed by the Equal Protection Clause of the Fourteenth Amendment—apply to its actions. *See Lopez Torres v. New York State Bd. of Elections*, 462 F.3d 161, 186-87 (2d Cir. 2006) ("*Lopez Torres I*"), *rev'd on other grounds,* 552 U.S. 196 (2008); *Seergy*, 459 F.2d at 313-14.

This Court already determined—and the Supreme Court agreed, *see Lopez Torres II*, 552 U.S. at 202-03—that both "the delegate primary election and subsequent nominating convention" are "integral parts of the State's election machinery" subject to constitutional scrutiny, *Lopez Torres I*, 462 F.3d at 186-87. The question this case presents is whether the KCDCC's endorsement process, which precedes and is not legally connected to the nominating convention, also constitutes state action. We, like the district court, conclude that Jacobson has not alleged facts to show that the KCDCC or the JSC is a state actor.

The Supreme Court has determined that the state action label attaches to "state-regulated elections or elections conducted by organizations which in practice produce the uncontested choice

4

of public officials." *Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978); *see also Cal. Democratic Party v. Jones*, 530 U.S. 567, 573 (2000) (stating that "when a State prescribes an election process that gives a special role to political parties," the discriminatory acts of the parties or "organizations that are part and parcel of the parties" become state action).

The KCDCC's endorsement procedure is not a *de jure* part of the state-regulated nomination process. The endorsements are not directly tied to ballot access, like the signature requirements for primary petitions that party organizations promulgated in *Rockefeller v. Powers*, 74 F.3d 1367, 1374 (2d Cir. 1995), and *Yassky v. Kings County Democratic County Committee*, 259 F. Supp. 2d 210, 216 (E.D.N.Y. 2003). Nor do they involve a party committee itself electing public officials or allowing non-party-members to run in the party's primary, as was discussed in *Seergy*, 459 F.2d at 314, *Montano*, 575 F.2d at 383, *Fortune v. Kings County Democratic County Committee*, 598 F. Supp. 761, 764-65 (E.D.N.Y. 1984) (three-judge court), *Bal v. Manhattan Democratic Party*, No. 16-CV-2416, 2018 WL 6528766, at *2, *5 (S.D.N.Y. Dec. 12, 2018), and *Kehoe v. Casadei*, No. 6:11-CV-0408, 2011 WL 5008044, at *2 (N.D.N.Y. Oct. 20, 2011). Likewise, state law does not link the KCDCC's endorsement process to the ultimate choice of nominees at the Second District nominating convention. The KCDCC does not choose the delegates to the convention: "The delegates elected in [judicial district] primaries are uncommitted; the primary ballot does not specify the judicial nominee whom they will support." *Lopez Torres II*, 552 U.S. at 200. And "[n]o New York law compels election of the [party] leadership's slate." *Id.* at 205.

Jacobson's principal claim is that the JSC violated internal JSC rules that gave her the "right to be treated equally with all of her Comparators." Am. Compl. ¶ 3. To allege that the JSC engages in state action, however, Jacobson must allege that the JSC performs a public electoral

5

function connected to state law, rather than a function related to the internal management and business of the KCDCC. *See Seergy*, 459 F.2d at 314.

Jacobson's complaint offers only conclusory allegations that the JSC's screening process performs a public electoral function. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But, the JSC's recommendation is one of the many ways the KCDCC chooses to select which candidates the Executive Committee will support at the judicial nominating convention. The Amended Complaint concedes that the JSC functions to prevent the KCDCC's Executive Committee from endorsing a candidate who the JSC determines is not qualified. Jacobson makes no allegation that the screening process is akin to the selection of a candidate to fill a vacant position or run in a special election. *See Seergy*, 459 F.2d at 314. Instead the screening process functions solely to assist the KCDCC in "structur[ing] their internal party processes and to select the candidate of the party's choosing." *Lopez Torres II*, 552 U.S. at 203. Because the JSC's screening process is not a public electoral function, the Amended Complaint fails to allege the JSC engaged in state action, even read in the light most favorable to Jacobson. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 584 (2007).

Jacobson also asserts that the district court erred in denying her leave to amend and asks that she be allowed to amend her complaint to cure any deficiencies in her current one. Since the district court based its denial of leave to amend on futility, we review that decision *de novo*. *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 769 (2d Cir. 2016). Here, Jacobson provided no proposed second amended complaint and did not indicate, either before the district court or on appeal, what she might add to a new complaint to overcome the state action-related defects found in the current one. "A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of

6

plaintiff's counsel to make a showing that the complaint's defects can be cured." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam). Jacobson has also had the advantages of multiple pre-motion conferences and a prior opportunity to amend her complaint. In these circumstances, we conclude that the district court did not err in denying leave to amend.

We have considered all of Jacobson's contentions on appeal and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit